Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
**KAZEROUNI LAW GROUP, APC**
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Alan Gudino, Esq. (SBN: 326738)
alan@kazlg.com
**KAZEROUNI LAW GROUP, APC**
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
Ryan Odom

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ryan Odom, Individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>v.<br><br> ECA Marketing, Inc.,<br><br>               Defendant. | Case No.: 5:20-cv-00851-JGB-SHK<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>Date:     June 7, 2021<br>Time:    9:00 AM<br>Ctrm:   1<br><br>Hon. Jesus G. Bernal |

# TABLE OF CONTENTS

**Page No.**

I.   INTRODUCTION ..................................................................................1

II.  FACTUAL BACKGROUND.............................................................2

III. THE SETTLEMENT .........................................................................3

    A.   The Settlement Class................................................................3

    B.   Settlement Relief......................................................................4

    C.   Class Notice ............................................................................5

        1.   Email Notice ..................................................................6

        2.   Mail Notice ....................................................................6

        3.   Settlement Website and Toll-Free Number.......................7

        4.   CAFA Notice .................................................................8

    D.   Settlement Claims Process.........................................................8

    E.   Opportunity to Opt-Out and Object ..........................................8

    F.   Scope of Release .....................................................................9

    G.   Termination of Settlement .......................................................10

    H.   Payment of Notice and Administrative Costs ...........................10

    I.   Class Representative's Application for Service Award............................10

    J.   Class Counsel's Application of Attorneys' Fees and Costs......................10

IV.  THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS TO IMPLEMENT THE SETTLEMENT AGREEMENT .................10

    A.   Numerosity...........................................................................11

    B.   Commonality.........................................................................11

C.  Typicality ....................................................................................12

D.  Adequacy of Representation .......................................................13

E.  Common Questions Sufficiently Predominate............................14

F.  Superiority of Class Action .........................................................15

G.  Standard For Preliminary Approval of Class Action Settlement.............17

    1.  Public Policy Favors Settlement .......................................18

    2.  Conclusion of Fact and Law Are Not Necessary at This Stage ........18

    3.  Counsels' Judgment Should Hold Considerable Weight .................18

    4.  The Court Should Preliminarily Approve the Settlement .................19

V.  CONCLUSION .....................................................................................29

# TABLE OF AUTHORITIES

**Cases**                                                                                **Page No.**

*Abdeljalil v. Gen. Elec. Capital Corp.*,

    306 F.R.D. 303 (S.D. Cal. 2015)....................................................................4, 12

*Ades v. Omni Hotels Mgmt. Corp.*,

    No. 2:13-cv-02468, 2014 U.S. Dist. LEXIS 129689

    (C.D. Cal. Sept. 8, 2014)...........................................................................12, 13

*Ahmed v. HSBC Bank USA*,

    No. ED CV 15-2057 FMO (SPx), 2019 U.S. Dist. LEXIS 104401

    (C.D. Cal. June 21, 2019)............................................................................7, 14

*Amchem Products, Inc. v. Windsor*,

    521 U.S. 591 (1997) .........................................................................................11

*Amini, et al. v. Heart Savers, LLC*,

    2016 WL 10621698 ( C.D. Cal. Oct. 17, 2016) .................................................12

*Barani v. Wells Fargo Bank, N.A.*,

    2014 U.S. Dist. LEXIS 49838 (S.D. Cal. Apr. 9, 2014) .............................14, 15

*Barrett v. Wesley Fin. Grp., LLC*,

    2015 U.S. Dist. LEXIS 189410 (S.D. Cal. 2015) .............................................17

*Bayat v. Bank of the W.*,

    No. C-13-2376 EMC, 2015 U.S. Dist. LEXIS 50416

    (N.D. Cal. Apr. 15, 2015)...........................................................................23, 24

*Boyd v. Bechtel Corp.*,

    485 F. Supp. 610 (N.D. Cal. 1979) ..................................................................19

*Cabiness v. Educ. Fin. Sols., LLC*,

    No. 16-cv-01109-JST, 2019 U.S. Dist. LEXIS 50817

    (N.D. Cal. Mar. 26, 2019) ................................................................................24

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*,

    917 F.2d 1171 (9th Cir. 1990)..........................................................................13

*Caldera v. American Medical Collection Agency*,

    320 F.R.D. 513 (C.D. Cal. 2017) ......................................................................12

*Caplan v. Budget Van Lines*,

    No. 2:20-CV-130 JCM (VCF), 2020 U.S. Dist. LEXIS 136865

    (D. Nev. July 31, 2020) ........................................................................................4

*Class Plaintiffs v. City of Seattle*,

    955 F.2d 1268 (9th Cir. 1992) ..........................................................................18

*Costelo v. Chertoff*,

    258 F.R.D. 600 (C.D. Cal. 2009) ........................................................................4

*Cotter v. Checkers Drive-In Rests., Inc.*,

    No. 8:19-cv-01386-VMC-CPT, 2020 U.S. Dist. LEXIS 121223

    (M.D. Fla. June 30, 2020) ..................................................................................14

*Denning, Inc. v. Capital Alliance Grp.*,

    310 F.R.D. 614 (S.D. Cal. 2015) ........................................................................4

*Dunk v. Ford Motor Co.*,

    48 Cal. App. 4th 1794 (1996) ...........................................................................19

*Eisen v. Carlisle & Jacquelin*,

    417 U.S. 156 (1974) ............................................................................................7

*Forcellati v. Hyland's Inc.*,

    No. 12-cv-1983, 2014 U.S. Dist. LEXIS 50600

    (C.D. Cal. Apr. 9, 2014) ....................................................................................23

*Franklin v. Kaypro Corp.*,

    884 F.2d 1222 (9th Cir. 1989) ..........................................................................18

*Hanlon v. Chrysler Corp.*,

    150 F.3d 1011 (9th Cir. Cal. 1998) ............................................................*passim*

*Harper v. Credit Control Services, Inc.*,

    863 F. Supp. 2d 125 (D. Mass., 2012) .............................................................22

*Harris v. Palm Springs Alpine Estates, Inc.*,

    329 F.2d 909 (9th Cir. 1964) ..................................................................11

*Hartranft v. TVI, Inc.*,

    No. SACV 15-01081-CJC-DFM, 2019 U.S. Dist. LEXIS 222619

    (C.D. Cal. Oct. 21, 2019) ..................................................................24

*In re Capital One Tel. Consumer Prot. Act Litig. (In re Capital One)*,

    No. 12 C 10064, 80 F. Supp. 3d 781, 2015 U.S. Dist. LEXIS 17120

    (N.D. Ill. Feb 12, 2015) ..................................................................24

*In re Chicken Antitrust Litig.*,

    560 F. Supp. 957 (N.D. Cal. 1980) ..................................................19

*In re Mego Fin. Corp. Sec. Litig.*,

    213 F.3d 454 (9th Cir. 2000) ..........................................................20

*In re Pac Enters. Sec. Litig.*,

    47 F.3d 373 (9th Cir. 1995) ............................................................25

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,

    163 F.R.D. 200 (S.D.N.Y. 1995) ....................................................18

*In re Wireless Facilities, Inc. Sec. Litig. II*,

    253 F.R.D. 607 (S.D. Cal. 2008) ........................................10, 13, 19

*Jairam v. Colourpop Cosmetics, LLC*,

    2020 WL 5848620 (S.D. Fla. Oct. 1, 2020) ....................................24

*Kirkorian v. Borelli*,

    695 F. Supp. 446 (N.D. Cal. 1988) ................................................18

*Klein v. Commerce Energy, Inc.*,

    256 F. Supp. 3d 563 (W.D. Pa. 2017) ............................................22

*Kline v. Dymatize Enters., LLC*,

    2016 U.S. Dist. LEXIS 142774 (S.D. Cal. Oct. 13, 2016) ..............14

*Knutson v. Schwan's Home Serv.*,

    No. 3:12-cv-0964-GPC-DHB, 2013 U.S. Dist. LEXIS 127032

    (S.D. Cal. Sep. 5, 2013) ...................................................................................16

*Larson v. Harman-Mgmt Corp.*,

    No. 1:16-cv-219-DAD-SKO, 2019 WL 7038399

    (E.D. Cal. Dec. 20, 2019) ................................................................................20

*Linney v. Cellular Alaska P'ship*,

    151 F.3d 1234 (9th Cir. 1998).........................................................................23

*Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*,

    244 F.3d 1152 (9th Cir. 2001)............................................................15, 16, 17

*Makaron v. Enagic USA, Inc.*,

    324 F.R.D. 228 (C.D. Cal. 2018) ....................................................................12

*Manuel v. Wells Fargo Bank, N.A.*,

    No. 3:14-cv-238 (DJN), 2016 U.S. Dist. LEXIS 33708

    (E.D. Va. Mar. 15, 2016)....................................................................................7

*McCurley v. Royal Seas Cruises, Inc.*,

    331 F.R.D. 142 (S.D. Cal. 2019) .....................................................................14

*Medeiros v. HSBC Card Servs.*,

    No. CV 15-09093 JVS (AFMx), 2017 U.S. Dist. LEXIS 178484

    (C.D. Cal. Oct. 23, 2017) .................................................................................25

*Meyer v. Portfolio Recovery Assocs., LLC*,

    707 F.3d 1036 (9th Cir. Cal. 2012) .................................................................12

*Molski v. Gleich*,

    318 F.3d 937 (9th Cir. 2003)...........................................................................10

*Morrison v. Clear Mgmt. Sols.*,

    No. 1:17-cv-51, 2019 U.S. Dist. LEXIS 3070

    (D. Utah Jan. 4, 2019) ......................................................................................14

*Moser v. Health Ins. Innovations, Inc.,*
    No. 17-cv-1127-WQH-KSC, 2019 U.S. Dist. LEXIS 132790
    (S.D. Cal. Aug. 2, 2019)....................................................................15

*Mullane v. Central Hanover Bank & Trust Co.,*
    339 U.S. 306 (1950) ........................................................................27

*Nat'l Rural Telcoms. Coop. v. Directv, Inc.,*
    2003 U.S. Dist. LEXIS 25375 (C.D. Cal. Jan. 5, 2003)....................20

*Nat'l Rural Telecoms Corp. v. DirectTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004)..............................................21, 25

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004) ...................................................19

*Officers for Justice v. Civil Serv. Comm'n of the City and City of San Francisco,*
    688 F.2d 615 (9th Cir. 1982)......................................................18, 21

*Parsons v. Ryan,*
    754 F.3d 657 (9th Cir. 2014)............................................................12

*Perez v. Rash Curtis & Assocs.,*
    No. 16-cv- 03396-YGR (N.D. Cal. Apr. 4, 2019).............................21

*Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.,*
    323 F. Supp. 364 (E.D. Pa. 1970) ....................................................18

*Romero v. Producers Dairy Foods, Inc.,*
    235 F.R.D. 474 (E.D. Cal. 2006) ......................................................7

*Satterfield v. Simon & Schuster, Inc.,*
    569 F.3d 946 (9th Cir. 2009)..............................................................4

*Saunders v. Dyck O'Neal, Inc.,*
    319 F. Supp. 3d 907 (W.D. Mich. 2018)............................................4

*Silber v. Mabon,*
    18 F.3d 1449 (9th Cir. 1994).............................................................27

*Silver v. Pa. Higher Educ. Assist. Agency*,

    2020 LEXIS 22857 (N.D. Cal. Feb. 7, 2020)........................................14

*Staton v. Boeing Co.*,

    327 F.3d 938 (9th Cir. 2003)...............................................................13

*Stemple v. QC Holdings, Inc.*,

    Case No. 12–cv–01997–BAS(WVG) 2014 WL 4409817

    (S.D. Cal. Sept. 5, 2014).....................................................................12

*Stern v. DoCircle, Inc.*,

    2014 WL 486262 (C.D. Cal. Jan. 29, 2014) .......................................12

*Texas v. American Blastfax, Inc.*,

    164 F. Supp. 2d 892 (W.D. Tex. 2001)...............................................21

*Torrisi v. Tucson Elec. Power Co.*,

    8 F.3d 1370 (9th Cir. 1993)................................................................20

*Valentino v. Carter-Wallace*,

    97 F.3d 1227 (9th Cir. 1996)..............................................................16

*Van Bronkhorst v. Safeco Corp.*,

    529 F.2d 943 (9th Cir. 1976)..............................................................18

*Van Patten v. Vertical Fitness Grp., LLC*,

    No. 12cv1614-LAB (MDD), 2013 U.S. Dist. LEXIS 189845

    (S.D. Cal. Nov. 8, 2013).....................................................................16

*Vasquez v. Coast Valley Roofing, Inc.*,

    266 F.R.D. 482 (E.D. Cal. 2010).................................................22, 26

*Wakefield v. Visalus, Inc.*,

    No. 3:15-cv-1857- SI, 2020 U.S. Dist. LEXIS 146959

    (D. Or. Aug. 14, 2020) .......................................................................20

*Wal-Mart Stores, Inc. v. Dukes*,

    131 S. Ct. 2541 (2011) .......................................................................11

*West Va. v. Chas. Pfizer & Co.*,

   440 F.2d 1079 (2d Cir. 1971).................................................................18

*Williams v. Bluestem Brands, Inc.*,

   2019 WL 1450090 (M.D. Fla. Apr. 2, 2019) .......................................24

*Zincser v. Accufix Research Institute, Inc.*,

   253 F.3d 1188 (9th Cir. 2001).............................................................15

**<u>Other Authorities</u>**

4 Herbert B. Newberg, Newberg on Class Actions § 11.25 et seq., and § 13.64

   (4th ed. 2002 and Supp. 2004) ............................................................17

Fed. Judicial Ctr., Manual for Complex Litigation ("Manual"), § 21.633 ...............11

Manual for Complex Litigation (Fourth)

   (Fed. Judicial Center 2004) ("Manual") § 21.632 .............................18

Newberg & Conte, Newberg on Class Actions § 11.41 .........................................19

**<u>Rules</u>**

Fed. R. Civ. P. 23 ...............................................................................*passim*

# I. INTRODUCTION

Plaintiff Ryan Odom ("Plaintiff") submits this unopposed motion for preliminary approval of a proposed class action settlement (the "Action") with defendant ECA Marketing, Inc. ("Defendant" or "ECA"). The terms of the proposed class action settlement are set forth in the Settlement Agreement ("Agreement"), which is filed concurrently with this motion as Exhibit 1 to the Declaration of Abbas Kazerounian.

As detailed below, the Settlement Class contains approximately 182,124 persons who did not consent to but nevertheless received a pre-recorded voice message through a ringless marketing voicemail sent by Defendant between April 21, 2016 and April 21, 2020. (*See* Agreement, Ex. 1 to Kazerounian Decl., §§ 2.31 & 3.1.) Under the Agreement, Defendant will pay $990,000 into a non-reversionary Common Fund to settle the Action and obtain a release of all Released Claims in favor of the Released Parties. (*Id.* § 4.2.) The Common Fund will be used to send settlement checks to the individuals who submit a claim, after payment of notice and claims administration expenses, attorneys' fees and litigation costs, and any service award to the Plaintiff ("Net Settlement Amount"). (*Id.* § 4.2.3.)

Although Plaintiff believes in the merits of his claims, Plaintiff and his counsel have determined that the proposed settlement is in the best interest of the Settlement Class, because it provides a significant benefit to each of its members. (Kazerounian Decl. ¶ 9; Odom Decl. ¶ 7.) Plaintiff believes that the settlement is appropriate given the contested issues involved, the risks, the uncertainty, and the costs required to continue to prosecute the Action. (Odom Decl. ¶ 8.) For its part, Defendant denies Plaintiff's allegations and believes it has meritorious defenses to the claims in this Action. (*See* Agreement § 1.4.) But Defendant also believes that it is prudent to settle the Action in accordance with the negotiated terms in the Agreement. (*Id.*)

Accordingly, Plaintiff moves this Court for an order certifying the class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure—for settlement

purposes only. Plaintiff specifically requests that the Court: 1) preliminarily approves the proposed settlement; 2) appoints CPT Group, Inc. ("CPT") as the Settlement Administrator; 3) directs the dissemination of class notice; 4) appoints Plaintiff as the Class Representative; 5) approves Plaintiff's attorneys as Class Counsel; and 6) schedules a Final Approval Hearing in this matter.

## II.  FACTUAL BACKGROUND

On March 8, 2020, ECA called[1] Plaintiff's cell phone using a ringless call to advertise its financial products. (Compl. ¶ 17, ECF No. 1.) Even though it did not connect with Plaintiff, ECA still left a pre-recorded voice message on Plaintiff's cell phone directing him to http://pozfaststart.com, a website where Plaintiff could download a copy of David McKnight's, "The Power of Zero." (*Id.*) ECA's message to Plaintiff was not for an emergency purpose (*id.* ¶ 20); Plaintiff never asked ECA about its services (*id.* ¶ 16); and Plaintiff never authorized ECA to place pre-recorded calls to his cell phone (*id.*).

As a result, on April 21, 2020, Plaintiff filed a class action complaint against ECA, alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq. (*Id.* ¶¶ 1-56.) More specifically, Plaintiff asserted two causes of action against ECA for its placing advertising calls to Plaintiff and others like him without their prior express consent, including: 1) negligently violating the TCPA; and 2) willfully and/or knowingly violating the TCPA. (*Id.* ¶¶ 47-54.) ECA had never obtained any type of prior express consent from Plaintiff to call him on his cell phone, a cell phone for which Plaintiff is the sole user. (*Id.* ¶¶ 15, 19.) And given that the generic message consisted of a robotic advertisement, Plaintiff believed that ECA had a policy and regular practice of placing calls to consumers' cell phones using a pre-recorded voice without any prior express consent—written or otherwise. (*Id.* ¶ 21.)

---

[1] Defendant contends that the call was placed by leaving a ringless voicemail with a pre-recorded voice message. (*See* Agreement § 2.31.)

Shortly after Plaintiff filed the Complaint, ECA filed its Motion to Dismiss (ECF No. 16), which the Court later denied (ECF No. 26). Afterward, the parties agreed that having informal discussions in an attempt to resolve this matter could benefit all sides. (Kazerounian Decl. ¶ 11.) The parties therefore began actively discussing this case informally, exchanging confidential information, and addressing the merits and the risks on both sides should this case proceed to trial. (*Id.* ¶ 12.) After their initial discussions, the parties scheduled and attended an arm's-length full-day mediation with the Honorable Suzanne H. Segal, an experienced mediator who dedicated an entire day on October 22, 2020 to help the parties resolve the matter. (*See* Kazerounian Decl. ¶ 14; Stipulation to Stay the Case Pending Mediation, ECF No. 31.) Thereafter, the parties spent five months extensively negotiating the terms of the long form settlement agreement. (Kazerounian Decl. ¶ 16.)

Based upon their investigations, analysis and discovery, including a confirmatory declaration obtained after mediation, the parties have agreed to settle the claims in this Action on a nationwide basis under the terms and conditions memorialized in the Agreement. (*See* Agreement.)

## III. THE SETTLEMENT

### A. <u>The Settlement Class</u>

The Settlement Class is defined as:

> All persons within the United States who received any call or ringless voicemail from Defendant or its agent/s and/or employee/s to said person's cellular telephone made through the use of any automatic telephone dialing system or prerecorded voice between April 21, 2016 through and including April 21, 2020.

The Class consists of approximately 182,124 persons, a number derived from discovery conducted after mediation which included ECA's investigation and the assistance of an outside data analysis vendor. (Joe Walton Spillman Dep., Ex. 2 to Kazerounian Decl., at 10:16-23; 11:7-19.) "The Court is bound to class definitions

provided in the complaint and, absent an amended complaint, will not consider certification beyond it." *Costelo v. Chertoff*, 258 F.R.D. 600, 604-05 (C.D. Cal. 2009). "The primary exception to this principle is when a plaintiff proposes a new class definition that is narrower than the class definition originally proposed, and does not involve a new claim for relief." *Bee, Denning, Inc. v. Capital Alliance Grp.*, 310 F.R.D. 614, 621 (S.D. Cal. 2015) (citing *Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 306 (S.D. Cal. 2015)).

Here, the Class definition differs only in the sense that it now includes "ringless voicemail," which does not change the scope of the class sought in the Complaint. This alteration is simply meant to clarify that the calls placed by Defendant resulted in a ringless voicemail with the same pre-recorded message Plaintiff received. *See, e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (text messages and calls are "calls" for the purposes of the TCPA); *Caplan v. Budget Van Lines*, No. 2:20-CV-130 JCM (VCF), 2020 U.S. Dist. LEXIS 136865, at *7 (D. Nev. July 31, 2020) (holding that ringless voicemails are calls under the TCPA); *Saunders v. Dyck O'Neal, Inc.*, 319 F. Supp. 3d 907, 911 (W.D. Mich. 2018) (holding that ringless voicemails are "calls" for the purposes of the TCPA). Therefore, although the current definition clarifies the nature of the calls made by Defendant (*i.e.*, ringless voicemails), the Class definition does not differ from the definition included in the Complaint. (*See* Compl. ¶ 38.)

## B. <u>Settlement Relief</u>

ECA has agreed to pay an all-in, non-reversionary fund of $990,000 (the "Common Fund") as full and complete consideration for the Settlement. (Agreement § 4.2.) The Common Fund shall also be used to pay: (i) settlement checks; (ii) a service award to Plaintiff; (iii) the attorneys' fees and litigation costs; (iv) administrative costs; and (v) taxes due in connection with the Settlement—prior to the distribution to the Class. (*Id.* § 4.2.3.) The amount remaining after deducting (ii) through (v) above (the "Net Settlement Fund") shall be used to pay valid claims

submitted by the Class Members. (*Id.*)

Settlement Class Members who submit a valid claim form shall receive a *pro rata* distribution. (*Id.*) If all estimated putative class members were to submit a claim, their estimated recovery would be approximately $3.51;[2] if 10% of the putative class members were to submit a claim, their estimated recovery would be approximately $35. Additionally, ECA discontinued its practice of making similar ringless calls with a prerecorded message.

If any amount remains in the Net Settlement Fund after payment of items (i) through (v) above, and, if after a 180-day period for cashing checks has lapsed, the Settlement Administrator will provide the estimate of conducting a second distribution to the class members. (*Id.* § 4.2.6.) If the second distribution is feasible and cost efficient, the Settlement Administrator will distribute a second round of checks to the class members. (*Id.*)

After this second distribution (or if such distribution is not feasible), the Settlement Administrator shall make a *cy pres* distribution of unclaimed funds to a nonprofit organization, as approved by the Court, with a total value that equals the amount remaining in the Net Settlement Fund. (*Id.*) The parties recommend that the Public Law Center be the potential *cy pres* recipient of any unclaimed funds. (*Id.*)

## C. **Class Notice**

Notice to the Settlement Class Members will be provided by mail and/or email. (*Id.* § 6.) Subject to Court approval, the parties propose that CPT act as Settlement Administrator. (*Id.* § 2.30.) The Settlement Administrator's duties shall include but are not limited to: (i) setting up the Settlement Website where Class Members can, among other things, fill out a Claim and view the Agreement; (ii) setting up a toll-free number to receive calls related to the Settlement; (iii) implementing Class

---

[2] $990,000 (Common Fund) - $247,500 (attorneys' fees and litigation costs) - ~$100,000 (notice and claims administration) - $2,500 (service awards) = $640,000. $640,000 / 182,124 (class members) = ~$3.51

KAZEROUNI
LAW GROUP, APC

Notice; (iv) determining valid claims; (v) distributing the settlement awards; (vi) maintaining proper records of the settlement administration; (vii) providing information to all counsel; and (vii) sending out the notices. (*Id.* §§ 5.3, 6.1-6.7, 7.1-7.6.)

### 1. Email Notice

After the Court enters its order granting this Motion for Preliminary Approval ("Order"), but no later than two business days after the entry of the Order, ECA shall provide a list to the Settlement Administrator with all available names, addresses, and/or email addresses for the Class Members. (*Id.* § 6.2.) ECA has the telephone numbers for all Class Members, the last known email addresses for approximately 60% of the Class, and the last known physical addresses for the remaining 40% (except five potential class members). (*Id.* §§ 6.1, 6.2; Spillman Dep. 22:14–23:9.)

Within 30 calendar days after the entry of the Order, CPT shall email the notice (Exhibit B to the Agreement) to the identified email addresses provided by ECA. (Agreement § 6.5.1.) Should any email "bounce," CPT shall mail the notice (as described within section 6.5) to such individuals after performing a reverse phone look-up and/or skip tracing search of the addresses. (*Id.* § 6.3.)

### 2. Mail Notice

The Settlement Administrator shall also mail the direct mail notice (Exhibit A to the Agreement) to the identified Class Members' last known addresses (of the remaining 40% of the class). (*Id.* § 6.5.) For the missing five individuals, the Settlement Administrator will conduct a reverse look-up and/or skip tracing search of the addresses. (*Id.* § 6.3; Julie Green Decl. ¶ 10.)

In the event that a Class Notice is returned as undeliverable with a forwarding address, the Settlement Administrator shall re-mail the Class Notice to the indicated forwarding address provided by the U.S. Postal Service. (Agreement § 6.5.4; Green Decl. ¶ 10.) If no forwarding address was provided by the U.S. Postal Service, or the mailing to the forwarding address is returned as undeliverable, the Settlement

Administrator shall obtain an address from LexisNexis and mail the Class Notice to that updated address. (Green Decl. ¶ 10.) If the Settlement Administrator's attempts at notice by mail are unsuccessful and/or a member of the Settlement Class otherwise fails to submit a claim or excludes him or herself from the Settlement Class, as contemplated in the Agreement, the members of the Settlement Class shall automatically be deemed Settlement Class Members whose rights and claims with respect to the issues raised in the Complaint are determined by the Court's Final Order approving the settlement and the Judgment, and by any other rulings in the Action. (*Id.* § 7.)

This direct notice plan satisfies due process for the settlement because it is designed to inform all putative class members of the lawsuit through U.S. mail and email. *See Ahmed v. HSBC Bank USA*, No. ED CV 15-2057 FMO (SPx), 2019 U.S. Dist. LEXIS 104401, at *41 (C.D. Cal. June 21, 2019) (approving mail and email notice because they sufficiently comply with due process); *Manuel v. Wells Fargo Bank, N.A.*, No. 3:14-cv-238 (DJN), 2016 U.S. Dist. LEXIS 33708, at *13 (E.D. Va. Mar. 15, 2016) (approving notice by direct mail and email, notice on the settlement website, and a toll-free phone number for inquiries); *Romero v. Producers Dairy Foods, Inc*., 235 F.R.D. 474, 492-93 (E.D. Cal. 2006) ("First class mail is ordinarily sufficient to notify class members who have been identified").[3]

### 3. Settlement Website and Toll-Free Number

No later than the posting of the Mail Notice, the Settlement Administrator shall ensure that the Settlement Website is active and able to accept online claims, and that a toll-free number is available for receiving calls related to the Settlement. (Agreement §§ 2.21, 5.1, 6.7; Green Decl. ¶ 13.) The Settlement Website will contain, among other things, the Long-Form Notice, the Agreement, the Second Amended

---

[3] Rule 23(c)(2) of the Federal Rules of Civil Procedure provides that "individual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (quoting Fed. R. Civ. P. 23(c)(2)).

Complaint, a Claim Form that can be downloaded, the ability to make a claim online, and any additional relevant documents as later determined. (Agreement § 2.8.3; Green Decl. ¶ 12.)

### 4. *CAFA Notice*

Defendant shall be responsible for timely serving the Class Action Fairness Act ("CAFA") notice required by 28 U.S.C. § 1715. (Agreement § 3.3.2.)

### D. <u>Settlement Claims Process</u>

To receive monetary compensation from this settlement, Settlement Class Members must submit a valid claim. (*Id.* §§ 2.2, 4.2.4.) To file a valid claim, a Class Member must timely submit either: (i) an online Claim Form within the Settlement Website utilizing an e-signature format (and providing the required information (such as telephone number on which they were contacted by ECA) identifying the Class Member); or (ii) by mailing the same form, with the filled out required information no later than the settlement deadline. (*Id.* § 7.1.) Each Class Member must certify that (i) they received a call from ECA on the number they provided; (ii) they were the subscriber/user of the cell phone number; and (c) they did not consent to receive such calls. (Electronic Claim Form, Exhibit D to Agreement.) The deadline to submit the form shall be no later than 100 days after the Order ("Claims Deadline"). (Agreement §§ 2.11.5, 7.2.) Only Class Members who submit Valid Claims shall be entitled to an Individual Settlement Amount. (*Id.* § 2.4.) The Settlement Administrator shall be responsible for determining the validity of all Claims. (*Id.* § 2.2; Green Decl. ¶ 16.)

### E. <u>Opportunity to Opt-Out and Object</u>

Settlement Class Members will have the right to opt out of the Settlement or to object to its terms. (*Id.* § 11.) The deadline for doing both is 100 days after entry of the Preliminary Approval Order. (*Id.* at §§ 2.11.3, 2.11.4.)

Settlement Class Members who wish to opt out of the Settlement may do so by mailing a personally signed letter by U.S. mail to the Settlement Administrator, stating unequivocally that he/she wishes to be excluded from the Settlement. (*Id.* § 11.1.) Such request must be made in accordance with the terms in the Class Notice. (*Id.*) Class Members will be requested but not required to provide a reason for the request. (*Id.*)

Furthermore, any Settlement Class Member, who is not seeking to opt out, may object to the Settlement by mailing his or her objections to the Settlement Administrator. (*Id.* § 12.) The written objection must include: (a) the name, address, and telephone number of the Settlement Class Member objecting and, if different, the cellular telephone number at which the Settlement Class Member was called by ECA during the Settlement Class Period; (b) a statement of each objection; (c) if represented by counsel, a written brief detailing the specific reasons, if any, for each objection, including any legal and factual support the objector wishes to bring to the Court's attention and any evidence the objector wishes to introduce in support of the objection(s);  and (d) a statement of whether the Settlement Class Member objecting intends to appear at the Final Approval Hearing, either with or without counsel. (*Id.* § 12.2.1.)

**F.  Scope of Release**

In exchange for the relief described above, all Settlement Class Members, other than those who exclude themselves from the Settlement, relinquish all class claims against the Released Parties, which arise out of this Action, or are related to the claims asserted in the Action, including any and all claims relating to the intercepting, monitoring and/or recording of telephone calls or other communications, and any and all claims to the fullest extent that the law permits, as long as they "relate to or arise out of ECA's use of equipment or methods to contact or attempt to contact Settlement Class Members by telephone during the Settlement Class Period." (*Id.* § 10.) Class Members also waive the provisions of Section 1542 of the Cal. Civil Code. (*Id.* § 10.3.)

### G. **Termination of Settlement**

The Agreement will be terminable in the event of various occurrences, including but not limited to receipt of more than 3,642 requests for exclusion. (*Id.* § 11.4.)[4]

### H. **Payment of Notice and Administrative Costs**

The Agreement provides that all costs of the Notice Program and Claims Program, which are estimated to be approximately $100,000 (Green Decl. ¶ 19), are to be paid out of the Common Fund (*id.* § 4.2).

### I. **Class Representative's Application for Service Award**

The Agreement contemplates that Class Counsel will request a service award not to exceed $2,500 for the named Plaintiff. (*Id.* § 16.2.)

### J. **Class Counsel's Application of Attorneys' Fees and Costs**

The Agreement contemplates that Class Counsel shall be entitled to apply to the Court for an award of attorneys' fees and litigation costs to be paid from the Common Fund. (*Id.* § 16.1.) Plaintiff's counsel will not request more than 25% of the Common Fund as attorneys' fees and costs combined. (*Id.*)

## IV. THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS TO IMPLEMENT THE SETTLEMENT AGREEMENT

The Court should certify the proposed class, because the parties wish to settle the matter and have stipulated to the defined class. "Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes." *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008); *see also Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003). Like any other class certification decision, certification of a class for settlement purposes requires a determination that the requirements of Rule 23(a) and at least one of the

---

[4] The parties have also entered into a Supplemental Agreement with regards to ECA's right to terminate the Settlement Agreement. The Supplemental Agreement will not be filed with the Court, but the parties have agreed to disclose the terms of the Supplemental Agreement, should the Court require it, *in camera*.

subsections of Rule 23(b) are met. *Id.*; Fed. Judicial Ctr., Manual for Complex Litigation ("Manual"), § 21.633. Certification of a settlement class is appropriate here because the Action meets the requirements of Rule 23(a) and Rule 23(b)(3).

**A. <u>Numerosity</u>**

Class certification under Rule 23(a)(1) is appropriate where a class is so "numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. Cal. 1998). "Impracticability does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class.'" *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted). Here, numerosity is satisfied because ECA's own records indicate that there are approximately 182,124 Settlement Class Members who were contacted by ECA during the Class Period (April 26, 2016–April 26, 2020). (Spillman Dep. 10:7-19; Agreement § 2.31.) Accordingly, the potential members of the Class are so numerous that joinder of all the members of the Class is impracticable.

**B. <u>Commonality</u>**

A class has sufficient commonality "if there are questions of fact and law which are common to the class." Fed. R. Civ. P. 23(a)(2); *see also Hanlon*, 150 F.3d at 1019. ("The existence of shared legal issues with divergent legal factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). This means that the class members' claims "must depend on a common contention . . . of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* This requirement is satisfied here.

There are questions of law and fact common to Plaintiff and to the Class that predominate over any questions affecting only individual members of the Class. As alleged in the Complaint, these common questions of law and fact include: (i) whether ECA placed a telemarketing call (via a ringless voicemail) to the putative class members on their cellular telephones; (ii) whether said calls contained a pre-recorded voice message; and (ii) whether ECA failed to obtain written consent from the putative class members prior to making such calls. (Compl. ¶ 42.) Under these circumstances, the commonality requirement is satisfied for purposes of certifying a settlement class, because the truth or falsity of these questions will affect all class members equally. *See Ades v. Omni Hotels Mgmt. Corp.*, No. 2:13-cv-02468, 2014 U.S. Dist. LEXIS 129689, at *35 (C.D. Cal. Sept. 8, 2014) (finding commonality present and stating, "there is no indication that individual consent issues will overwhelm issues plaintiffs have shown to be resolvable through class-wide proof.").

Moreover, virtually identical common issues have been certified in a number of TCPA cases throughout the Ninth Circuit. *See, e.g.*, *Amini, et al. v. Heart Savers, LLC*, 2016 WL 10621698 ( C.D. Cal. Oct. 17, 2016); *Caldera v. American Medical Collection Agency*, 320 F.R.D. 513 (C.D. Cal. 2017); *Makaron v. Enagic USA, Inc.*, 324 F.R.D. 228 (C.D. Cal. 2018); *Stern v. DoCircle, Inc.*, 2014 WL 486262 (C.D. Cal. Jan. 29, 2014); *Abdeljalil v. General Elec. Capital Corp.*, 306 F.R.D. 303, 308-09 (S.D. Cal. 2015); *Stemple v. QC Holdings, Inc.*, Case No. 12–cv–01997–BAS(WVG) 2014 WL 4409817 (S.D. Cal. Sept. 5, 2014); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. Cal. 2012). Thus, commonality is established here.

### C. <u>Typicality</u>

Courts consistently find that the typicality prerequisite is met if the claims arise from a common course of conduct, though "they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014); *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175

(9th Cir. 1990) (citation omitted), *amended* 937 F.2d 465 (9th Cir. 1991) (holding that typicality is shown where claims "share common issue of law or fact . . . and are 'sufficiently parallel to insure a vigorous and full presentation of all claims for relief.'").

In this case, Plaintiff's claims are typical of the claims of the Settlement Class Members because they arise from a nearly identical factual basis. As alleged in the Complaint, Plaintiff, like members of the proposed Class, received a pre-recorded voicemail on his cellular telephone number from ECA. (Compl. ¶ 17; Odom Decl. ¶ 3; *see also* Spillman Dep. 7:17-23.) Like the other class members, Plaintiff had no prior relationship with ECA. (Odom Decl. ¶ 5.) And ECA did not have written consent from Plaintiff or the putative class to make the calls. (*Id.* ¶ 6.) Thus, Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent Settlement Class Members. (*See generally* Compl.) Plaintiff's claims are therefore typical of the claims of the Settlement Class. *See Ades*, 2014 U.S. Dist. LEXIS 129689 at *26.

**D. <u>Adequacy of Representation</u>**

Adequacy of representation is met when "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In order to adequately protect the interest of the class, the named plaintiff(s) and their counsel must: (1) not have any conflicts of interest with other class members; and (2) prosecute the action vigorously on behalf of the class. *Id.*; *see also In re Wireless Facilities*, 253 F.R.D. at 611 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003)). Here, Plaintiff and his counsel do not have any known conflicts of interest with other Settlement Class Members. (Kazerounian Decl. ¶ 19; Odom Decl. ¶ 12.)

Furthermore, Plaintiff and his counsel have been vigorously litigating this matter since its inception, overcoming the Motion to Dismiss filed by the ECA. (Kazerounian Decl. ¶ 8; Odom Decl. ¶ 14.) Plaintiff has actively participated in the case, providing his declaration in this matter and continuing to cooperate with counsel to vigorously prosecute his claims. (Kazerounian Decl. ¶ 5; Odom Decl. ¶ 14.)

Plaintiff was willing to move forward with this lawsuit and to represent the interests of other consumers, notwithstanding the risks of litigation. (Odom Decl. ¶ 10.)

Lastly, Class Counsel are experienced in prosecuting consumer actions, especially under the TCPA. (Kazerounian Decl. ¶¶ 20-28.); *See, e.g., Silver v. Pa. Higher Educ. Assist. Agency*, 2020 LEXIS 22857, at *21-22 (N.D. Cal. Feb. 7, 2020) ("[Kazerouni Law Group] has experience litigating various consumer related class actions . . . Counsel has also performed well in this action, including succeeding in plaintiff's appeal of this court's prior order granting defendant's motion for summary judgment."); *Morrison v. Clear Mgmt. Sols*., No. 1:17-cv-51, 2019 U.S. Dist. LEXIS 3070, at *2 (D. Utah Jan. 4, 2019) (FDCPA matter: appointing among class counsel attorneys at Kazerouni Law Group, APC); *McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 171 (S.D. Cal. 2019) (certifying by contested motion class in TCPA class action on behalf of over 2 million class members and appointing Kazerouni Law Group as co-counsel); *Ahmed*, No. ED CV 15-2057 FMO (SPx), 2019 U.S. Dist. LEXIS 104401, at *19 (appointing Kazerouni Law Group, APC as a co-class counsel and approving a large class settlement); *Cotter v. Checkers Drive-In Rests., Inc*., No. 8:19-cv-01386-VMC-CPT, 2020 U.S. Dist. LEXIS 121223, at *7 (M.D. Fla. June 30, 2020) (Abbas Kazerounian appointed as co-lead class counsel in nationwide data breach settlement); *Kline v. Dymatize Enters., LLC*, 2016 U.S. Dist. LEXIS 142774 (S.D. Cal. Oct. 13, 2016) (appointing Kazerouni Law Group as co-class counsel and noting their "extensive experience in handling consumer class actions and their training in the area of consumer rights litigation."); *Barani v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 49838, at *8 (S.D. Cal. Apr. 9, 2014) ("Mr. Kazerounian has been appointed class counsel in several class actions . . . ."). Accordingly, Plaintiff and his counsel will adequately represent the interests of the Settlement Class.

### E. **Common Questions Sufficiently Predominate**

Class certification under Rule 23(b)(3) is appropriate where "questions of law or fact common to class members predominate over any questions affecting only

individual members." Fed. R. Civ. P. 23(b)(3). The inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc*., 244 F.3d 1152, 1162 (9th Cir. 2001). Central to this question is "the notion that the adjudication of common issues will help achieve judicial economy." *Zincser v. Accufix Research Institute, Inc*., 253 F.3d 1188, 1189 (9th Cir. 2001) (citation omitted), *amended* 273 F. 3d 1266 (9th Cir. 2001).

Here, the central inquiry is whether ECA placed a telemarketing call to 182,124 individuals with a pre-recorded voice message without the individuals' *written* consent.[5] (*See* Compl. ¶ 42.); *see also Barani,* 2014 WL 1389329, at *4 (holding that predominance requirement was met because "[t]he central inquiry is whether Wells Fargo violated the TCPA by sending text messages to the Class Members."). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. Here, all calls to the 182,124 consumers were placed with the same method of placing a ringless voice call with a prerecorded message. (Spillman Dep. 9:24–10:6.) And Defendant has not produced any evidence of consent. Therefore, common questions predominate this matter.

### F. <u>Superiority of Class Action</u>

Resolution of the dispute under the class action mechanism of redress for settlement purposes makes sense because it is superior to all other available means for the fair and efficient adjudication of this controversy involving persons called in California. *See Local Joint*

---

[5] Written consent is an affirmative defense for which the defense carries the burden of proof. *Moser v*. *Health Ins*. *Innovations, Inc*., No. 17-cv-1127-WQH-KSC, 2019 U.S. Dist. LEXIS 132790, at *47 n.4 (S.D. Cal. Aug. 2, 2019).

*Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (finding that "if a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied."); *see also Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists"). As explained in *Hanlon*, the Ninth Circuit held that the superiority prong was met because "[f]rom either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions." 150 F.3d at 1023. In fact, pursuing individual settlements would provide "less litigation or settlement leverage, significantly reduce[] resources [providing] no greater prospect for recovery." *Id.*

In the present case, individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts regarding ECA's calling practices. Individualized litigation would also cause significant delay and expense to the parties, and it would require that the Court spend its limited judicial resources to adjudicate hundreds of individual actions. *See Van Patten v. Vertical Fitness Grp., LLC*, No. 12cv1614-LAB (MDD), 2013 U.S. Dist. LEXIS 189845, at *32 (S.D. Cal. Nov. 8, 2013) ("[T]he Court has to conclude that a single lawsuit adjudicating the question whether [defendant's] texts violated the TCPA is superior to countless identical and individual lawsuits pressing that same question."); *Knutson v. Schwan's Home Serv.*, No. 3:12-cv-0964-GPC-DHB, 2013 U.S. Dist. LEXIS 127032, at *28 (S.D. Cal. Sep. 5, 2013).

A class action here would avoid a multiplicity of actions, it would preserve the Court's time and resources; and it would prevent the possibility of inconsistent judgments. *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund*, 244 F.3d at 1163 ("If plaintiffs cannot proceed as a class, some—perhaps most, will be unable to proceed as individuals because of the disparity between their costs and what they hope to recover.") Furthermore, the damages or other financial detriment suffered by individual Settlement Class Members may be relatively small compared to the burden and expense that would be required of them in pursuing individual litigation. *See, e.g., Barrett v. Wesley Fin. Grp., LLC*, 2015 U.S. Dist. LEXIS 189410, at *19 (S.D. Cal. 2015) (finding that a potential award of $500 is insufficient to motivate a consumer to pursue a TCPA claim). Resolution of the dispute under the class action mechanism of redress here is superior to hundreds of individual actions for statutory damages where there is no provision of recovery of attorneys' fees in the statute.

By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court, resolving the claims against ECA, and providing vindication to the class members, even if they were unaware that their rights were violated. A class action here is therefore superior for settlement purposes.

## G. Standard For Preliminary Approval of Class Action Settlement

A class action may not be dismissed, compromised, or settled without the approval of the Court. *See* Fed. R. Civ. P. 23(e). To preliminarily approve a class action settlement, the Court must simply determine whether the class settlement is within the "range of reasonableness," and hence whether disseminating notice to the class and scheduling a formal fairness hearing are merited. *See* 4 Herbert B. Newberg, Newberg on Class Actions § 11.25 et seq., and § 13.64 (4th ed. 2002 and Supp. 2004). The Court is not required to make an in-depth and final determination that a settlement is fair, reasonable, and adequate; instead, the "judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the

settlement terms." Manual for Complex Litigation (Fourth) (Fed. Judicial Center 2004) ("Manual") § 21.632.

### 1. *Public Policy Favors Settlement*

There is an overriding public interest in settling class action lawsuits, and there is also a strong judicial policy favoring such settlements. *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) (citing *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976)); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, expenses, and rigors of prolonged litigation. *Van Bronkhorst*, 529 F.2d at 950. Accordingly, courts should exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims." *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995).

### 2. *Conclusion of Fact and Law Are Not Necessary at This Stage*

At the preliminary approval stage, the Court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute, *West Va. v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1086 (2d Cir. 1971), and need not engage in a trial on the merits, *Officers for Justice v. Civil Serv. Comm'n of the City and City of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Preliminary approval is merely a prerequisite to giving notice so that "the proposed settlement . . . may be submitted to members of the prospective class for their acceptance or rejection." *Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970).

### 3. *Counsels' Judgment Should Hold Considerable Weight*

Although the decision to approve or reject a proposed settlement "is committed to the sound discretion of the trial judge," *see Hanlon*, 150 F.3d at 1026, the opinion of experienced counsel supporting the settlement is also entitled to considerable weight. *See, e.g.*, *Kirkorian v. Borelli*, 695 F. Supp. 446 (N.D. Cal. 1988) (opinion of

experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiffs' counsel should be given a presumption of reasonableness). Here, Plaintiff's counsel believe that the settlement is a fair compromise that avoids the risks of further litigation and trial, while also providing a significant monetary recovery to the Settlement Class as well as bringing about changes to ECA's business practices with regards to its ringless calls for advertisement purposes. (Kazerounian Decl. ¶ 17.)

### 4. The Court Should Preliminarily Approve the Settlement

#### i.    The Agreement is entitled to a presumption of fairness

A presumption of fairness exists where: (1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small. Newberg & Conte, Newberg on Class Actions § 11.41; *see also Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1802 (1996). The proposed settlement here satisfies the above requirements, and the number of expected objections, if any, is small.

A presumption of fairness exists where a settlement is reached through arm's-length bargaining. *See In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. at 610; *see also National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004); *In re Chicken Antitrust Litig.*, 560 F. Supp. 957, 962 (N.D. Cal. 1980); Newberg on Class Actions § 11.51. In this instance, the Settlement was reached after the parties: (i) investigated and researched their respective claims and defenses; (ii) engaged in extensive informal discussions regarding the merits of this case and their respective positions supported by case law; (iii) exchanged relevant confidential class information during informal discovery, which, among other things, helped determine the putative class and appropriate notice; (iv) participated in arm's-length negotiations in the form of a full-day mediation with one of the most respected

and experienced mediators in California, Judge Segal; and (v) continued discussions, including conducting a confirmatory declaration of ECA, in an attempt to finalize the settlement. (Kazerounian Decl. ¶¶ 4-19.)

ii.   *The Settlement Should Be Preliminarily Approved, As It Is Within the Range of Reasonableness Based on The Relevant Factors*

In making the fairness determination for final approval purposes (*i.e.*, not preliminary approval, like here), courts consider a number of factors, including the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the ability to maintain a class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; and the reaction of the class members to the proposed settlement. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (quoting *Hanlon*, 150 F.3d at 1026). However, "[n]ot all factors will apply . . . [and], [u]nder certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telcoms. Coop. v. Directv, Inc.*, 2003 U.S. Dist. LEXIS 25375, at *6 (C.D. Cal. Jan. 5, 2003); *see, e.g.*, *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). While the Court need not and should not at this stage determine whether the proposed settlement is fair and adequate for purposes of final approval, there is ample evidence that the proposed settlement falls well "within the range" of fairness and adequacy for preliminary approval. *See, e.g.*, *Larson v. Harman-Mgmt Corp.*, No. 1:16-cv-219-DAD-SKO, 2019 WL 7038399 (E.D. Cal. Dec. 20, 2019) (approving preliminary settlement proposal of $4 million notwithstanding 13.5 million messages). Furthermore, even if Plaintiff were to prevail in this Action with a verdict resulting in a substantial judgment,[6] some courts have reduced a multi-million TCPA award to

---

[6] *Wakefield v. Visalus, Inc.*, No. 3:15-cv-1857- SI, 2020 U.S. Dist. LEXIS 146959 (D. Or. Aug. 14, 2020) (awarding a verdict of $925 million for 1.8 million calls);

a less substantial award based on the defendant's ability to pay. *See, e.g.*, *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892, 894 (W.D. Tex. 2001) (lowering the award of $2.3 billion to $459,375).

### iii. The Strength of Plaintiff's TCPA Case

Liability is here highly contested. After investigating Plaintiff's claims and discussing them with ECA, Plaintiff's counsel believes this is a strong case which would prevail at trial. (Kazerounian Decl. ¶ 17.) But the outcome of the case is by no means certain absent a settlement. (*Id.* ¶ 18.) It is Class Counsels' opinion that the proposed Settlement of $990,000, is in part due to the strength of Plaintiff's claims. (*Id.* ¶ 19.) On the other hand, ECA denies all of Plaintiff's allegations, maintains that its policies and procedures were and are in compliance with all applicable laws, including obtaining consent. (Agreement § 1.4.) ECA further believes that it has meritorious defenses to all of the claims asserted in the Action. (*Id.*) This settlement avoids risks and continued expense to both sides in continuing the Action.

### iv. The Risk, Expense, Complexity, and Likely Duration of Further Litigation, Including the Risks of Obtaining and Maintaining Class Action Status

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Nat'l Rural Telecoms Corp. v. DirectV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted). However, "a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class." *Id.*; *see also Officers for Justice*, 688 F.2d at 625 ("Neither the trial court nor [the appellate court] is to reach any ultimate conclusions on the contested issues of fact and law which underlie merits of the dispute, for it is the very uncertainty of

*Perez v. Rash Curtis & Assocs.*, No. 16-cv- 03396-YGR (N.D. Cal. Apr. 4, 2019), *affirmed in* No. 4:16-cv-03396-YGR, 2020 U.S. Dist. LEXIS 68161 (N.D. Cal. Apr. 17, 2020) (awarding 267 million verdict where defendants made approximately 534,000 calls).

outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."). Also considered "is the risk of continued litigation balanced against the certainty and immediacy of recovery from the settlement." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010).

Given the parties' legal and factual positions and aggressive litigation since the inception of this matter, continued litigation would be protracted, unduly burdensome, and expensive. Most importantly, if the Action were to continue, ECA would undoubtedly continue to vigorously defend the Action. (*See* Agreement § 1.4.) Prior to settlement, ECA intended to challenge the merits of the Action in an attempt to distinguish the ringless voicemails from standard calls. (*See* Spillman Dep. 9:24–10:6.) ECA contends that a "ringless" dial is analogous to placing a call to a landline, and forwarding it to a cell phone, or a "google voice" call. *See, e.g., Harper v. Credit Control Services, Inc.*, 863 F. Supp. 2d 125, 126 (D. Mass., 2012) (finding no TCPA claim where a call was forwarded from landline to a cellphone); *Klein v. Commerce Energy, Inc.*, 256 F. Supp. 3d 563, 582 (W.D. Pa. 2017) (no TCPA claim for a Google voice call). ECA further does not believe that its calls were "willful." (*See generally* Def.'s Mot. to Dismiss, ECF No. 16.) Lastly, ECA does not preclude a possibility of establishing a defense of consent. (Def.'s Answer, ECF No. 27, at 7:26–8:4.) All of these issues would be highly contested, and although Plaintiff does not believe ECA would prevail, Plaintiff and his counsel understand the risk and burden of continued litigation. (Kazerounian Decl. ¶ 18; Odom Decl. ¶ 8.)

If litigation were to continue, Plaintiff would take a more thorough Rule 30(b)(6) deposition of ECA pertaining to its defenses, a deposition of ECA's vendors, and would likely subpoena agents and brokers from whom ECA believes consent documents could be obtained. Both parties would also need to obtain written discovery from each other. And if ECA were to establish consent for some of the class members, then the class would be narrowed. But settlement avoids these risks to both sides.

Moreover, to fully prosecute this case through trial, the parties would need to:

(1) continue litigating this matter and engage in motion practice on the pleadings and merits; (2) undertake substantial discovery from each other and third parties; and (3) undertake the arduous task of certifying or opposing a class action, which could significantly impact both parties (*i.e.*, the class may not be certified thereby eliminating any class relief, or the class may be certified thereby significantly increasing ECA's liability). Lastly, any decision on the merits is likely to be appealed, resulting in further delays, uncertainties, and greater expense.

In considering the Settlement, Plaintiff, Class Counsel, and ECA carefully balanced the risks of continuing to engage in protracted and contentious litigation against the benefits to the Class, including the significant settlement and payout laid out by the Agreement. The Agreement avoids these risks for both sides.

### v.    The Benefits Conferred by Settlement

The benefits conferred by the Settlement for the Class substantially and clearly outweigh the risks of proceeding with the class action. They include both a monetary payment and a change in ECA's business practice. (*See* Agreement.) Courts have stated that the fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

Here, each Settlement Class Members will receive a *pro rata* share of the Net Settlement Amount, depending on the number of opt outs. (Agreement § 4.2.3.) In Plaintiff's counsel's experience in settling claims of this type, however, a claim rate above 10% is unlikely. (Kazerounian Decl. ¶ 20); *see also Forcellati v. Hyland's Inc.*, No. 12-cv-1983, 2014 U.S. Dist. LEXIS 50600, at *17 (C.D. Cal. Apr. 9, 2014) ("[T]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3-5 percent."); *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 U.S. Dist. LEXIS 50416, at *3 (N.D. Cal. Apr. 15, 2015) (approving the claim rate of 1.9%); *In re Capital One Tel. Consumer Prot. Act Litig. (In re Capital One)*, No.

12 C 10064, 80 F. Supp. 3d 781, 2015 U.S. Dist. LEXIS 17120, at *22 (N.D. Ill. Feb 12, 2015) (7.87% claims rate); *Arthur v. SLM Corp.*, No. C10-0198 JLR, at *2-3 (W.D. Wash. Aug. 8, 2012) (claims rate of approximately 2%). The estimated claims rate here is likely to be greater than 5% on account of ECA having email addresses for 60% of the class members, and at least 40% of physical addresses of the Settlement Class. (Green Decl. ¶ 17.)

The estimated payout here is $35—assuming a *higher* 10% claim rate—which is an excellent result for the Settlement Class Members, as (1) the value offered is a compromise of the maximum statutory damages each class member could receive in this matter, which would otherwise be highly contested and require vigorous litigation efforts, and (2) the value offered is substantially better when compared to other similarly approved settlements, most of which estimate a similar or at times even lower recovery.[7] Thus, the Settlement here provides for a significant monetary payment that is even higher than some other TCPA settlements, without the risks and inherent delays of an adverse jury verdict, trial decision, or potential appeal.

---

[7] *See Jairam v. Colourpop Cosmetics, LLC*, 2020 WL 5848620, at *6 (S.D. Fla. Oct. 1, 2020) (approving settlement that awarded $11.25 to each class member who opted in); *Williams v. Bluestem Brands, Inc.*, 2019 WL 1450090, at *2 (M.D. Fla. Apr. 2, 2019) (collecting cases about typical awards in TCPA cases, finding potential awards between $25-$75 to be typical); *Hartranft v. TVI, Inc.*, No. SACV 15-01081-CJC-DFM, 2019 U.S. Dist. LEXIS 222619, at *10 (C.D. Cal. Oct. 21, 2019) (approving a TCPA settlement where defendant would provide either $25 cash to individuals who submitted a claim, *or* offer a $75 discount at defendant's stores); *Cabiness v. Educ. Fin. Sols., LLC*, No. 16-cv-01109-JST, 2019 U.S. Dist. LEXIS 50817, at *12 (N.D. Cal. Mar. 26, 2019) (granting final approval where the *actual* pro rata share to the class members was $33.36); *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 U.S. Dist. LEXIS 50416, at *3 (N.D. Cal. Apr. 15, 2015) (approving a TCPA settlement where the class would be entitled to approximately $2.486 million net fund, and if all 871,836 members opted in, the recovery would have been $2.85); *Carrie Couser v. Comenity Bank, et al.*, 12 CV 08484 MMA BGS ($8.475 mil approval, which after fees and costs approximated in $1.11/per a class member).

###### vi.    The Extent of Discovery Completed and The State of the Proceedings

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Nat'l Rural Telecoms Corp.*, 221 F.R.D. at 528 (citation omitted). "Absent evidence of fraud or collusion, courts also should accord 'great weight' to the recommendations of counsel." *Medeiros v. HSBC Card Servs.*, No. CV 15-09093 JVS (AFMx), 2017 U.S. Dist. LEXIS 178484, at *10 (C.D. Cal. Oct. 23, 2017) (citing *Nat'l Rural Telecomms.,* 221 F.R.D. at 528).

On April 21, 2020, Plaintiff, after investigating his claims, instituted this instant Action. (Compl.) After the initial motion practice, this case moved forward, and the parties engaged in informal discovery to fully understand their respective positions. During informal discovery, ECA identified the total number of unique cell phone numbers to whom it sent ringless voicemails, including failed attempts. (Spillman Dep. 10:7-19.) The parties then attended a mediation, prior to which they shared their mediation briefs to further exchange information. (Kazerounian Decl. ¶ 14.) At the mediation, the parties were able to discuss settlement while knowing the approximate class size and estimates of class information that ECA maintains in its files (*i.e.*, email addresses, physical addresses, etc.). After the prolonged mediation, the parties spent several months discussing and negotiating material terms of the Settlement. (*Id.*) ECA also provided a confirmatory declaration post-mediation. (*Id.* ¶ 20.) Plaintiff's counsel are fully aware of the potential benefits and risks of this case, and are confident that this Settlement is in the best interests of the Class. (*Id.* ¶ 17.)

###### vii.    The Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Here, Class Counsel are qualified and highly experienced in litigating complex consumer class actions. (*See* Kazerounian Decl. ¶¶ 20-28.) Given Class Counsel's

KAZEROUNI
LAW GROUP, APC

extensive experience in litigating similar type cases, the Class Counsel are well-positioned to assess the risks of continued litigation and benefits obtained by the Settlement.

Similarly, Counsel for ECA have extensive experience based on a long track record in handling complex cases and class actions.[8] ECA's attorneys have vigorously defended ECA throughout this case and during mediation with the Judge Segal. And ECA's counsel have extensively negotiated the terms of the Settlement Agreement.

Class Counsel have also actively researched and litigated this case, prior to reaching settlement. (Kazerounian Decl. ¶ 5.) Counsel for each side are fully aware of the potential benefits of settlement and substantial risks of proceeding with litigation and have determined settlement to be the in the best interest of the Class. (*Id.*); *see also Vasquez,* 266 F.R.D. at 490 ("Here, class counsel understood the complex risks and benefits of any settlement and concluded that the proposed Settlement was a just, fair, and certain result. This factor weighs in favor of approval.").

> viii.   *The Anticipated Reaction of Class Members to the Proposed Settlement*

Class Counsel are confident that the Settlement Class Members will be satisfied with the proposed Settlement. (Kazerounian Decl. ¶ 21.) This benefit offered by the settlement is a substantial portion of the maximum award possible, but without the risks and delay of further litigation and trial.  Settlement Class Members need only submit a claim form online or by mail in order to receive the settlement payment. (Agreement § 7.) Further, any dissenting Settlement Class Member will be permitted to object to the proposed settlement and be heard at the Final Approval Hearing before this Court. (*Id*. § 12.) Consequently, the Court will have an opportunity to judge the class members' reaction to the Settlement before granting final approval.

---

[8] https://www.haynesboone.com/people/b/behrens-thad; https://www.haynesboone.com/people/e/erickson-mark (last visited April 26, 2021).

ix.    *The Proposed Notice is Appropriate*

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to class members the "best notice practicable" under the circumstances. Fed. R. Civ. P. 23(b)(3). Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received." *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). Notice need only be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.

Pursuant to Fed. R. Civ. P. 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." The notice must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class; (iii) the class claims, issues, or defenses; (iv) that class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

Here, notice will be provided directly through mail, email, and by establishing a Settlement Website and toll-free number. (Green Decl. ¶¶ 9-14; Agreement § 6.) For only a *few* (five) individuals, the Class Administrator will need to conduct a reverse phone look up to obtain their information. (Green Decl. ¶ 10.) For those Class Members whose mailing addresses ECA has in its files, these persons will be notified through mail. (*Id.*) However, if any emails bounce or mail is return as undeliverable, the Settlement Administrator will perform a reverse phone lookup for such members in an effort to obtain new contact information, and it will then mail those people another notice. (*Id.*) Notice will also be posted on the Settlement Website. (*Id.* § 12.) The class

KAZEROUNI
LAW GROUP, APC

notice will clearly state in plain and easily understood language the requirements outlined above and those required under Rule 23(c)(3). (*See* Email Notice, Ex. B to Agreement.)

Thus, under the circumstances and with the information available, direct mail and email notice will be provided to all consumers for which mail and email addresses are available. The parties estimate that the direct mail notice will reach at least 40% of the Settlement Class Members, and 60% of class members will receive an email notice. (*Id.* §§ 6.1, 6.2; Spillman Dep. 22:14–23:9.) Thus, the notice plan fulfills the requirements of adequate notice for due process purposes.

### x. Class Representatives and Class Counsels Should Be Appointed as Requested

The adequacy of representation requirement is satisfied here, and there are no known conflicts of interest as noted above. For settlement purposes, therefore, Plaintiff requests that he be confirmed as the Class Representative. (*See* Agreement § 3.3.3(a).) Similarly, Plaintiff requests that Abbas Kazerounian be appointed as Class Counsel. (*Id.* § 3.3.3(g).)

### xi. CPT Should Be Appointed as Settlement Administrator

The parties have also agreed upon, and therefore propose, that the Court appoint CPT to serve as the Settlement Administrator. (*Id.* § 2.30.) For over 30 years, CPT has provided court approved notice of class actions and has administered various types of notice programs and settlements. (Green Decl. ¶ 5.) Accordingly, the parties believe CPT will adequately perform the duties necessary to properly administer the settlement.

### xii. The Final Approval Hearing Should Be Scheduled

Lastly, a final approval hearing will allow the Court to determine whether the settlement is fair, adequate, and reasonable. Accordingly, Plaintiff requests that the Court schedule a formal fairness hearing no earlier than 175 days after the Court grants this Preliminary Approval Motion. (*See* Agreement § 14.1.)

## V.    CONCLUSION

In sum, Plaintiff respectfully requests that the Court enter an order: i) preliminarily approving the proposed Settlement; ii) providing for notice to the Settlement class; iii) appointing CPT as the Settlement Administrator; iv) appointing Plaintiff as a Class Representative; v) appointing Abbas Kazerounian as Class Counsel; and vi) setting a fairness hearing at least 175 after this Motion is entered and approved.

Date: April 30, 2021                                 KAZEROUNI LAW GROUP, APC

By: _s/ Abbas Kazerounian_
     Abbas Kazerounian, Esq.
     *Attorneys for Plaintiff*

