UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 20-851 JGB (SHKx)** | Date | May 27, 2021 |
|---|---|---|---|
| Title | *Ryan Odom v. ECA Marketing, Inc.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Plaintiff's Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 41); and (2) VACATING the June 7, 2021 Hearing (IN CHAMBERS)

    Before the Court is Plaintiff Ryan Odom's Motion for Preliminary Approval of Class Settlement. ("Motion," Dkt. No. 41.) The Court finds the Motion appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court GRANTS the Motion. The Court vacates the hearing set for June 7, 2021.

## I. BACKGROUND

    On April 21, 2020, Plaintiff filed a class action complaint against Defendant. ("Complaint," Dkt. No. 1.) The Complaint alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, arising from an unwanted ringless call voicemail Plaintiff alleges he and others received. (Id.)

    On April 30, 2021, Plaintiff filed the Motion, which seeks preliminary certification of a class and preliminary approval of a settlement. It is unopposed. In support of the Motion, Plaintiff also filed:

- Declaration of Abbas Kazerounian ("Kazerounian Declaration," Dkt. No. 41-2);
- The Proposed Settlement Agreement and Release ("Agreement," Dkt. No. 41-3);
- Exhibits to the Agreement (Dkt. Nos. 41-4 – 41-9);

- Exhibits to the Kazerounian Declaration (Dkt. No. 41-10);
- Declaration of Ryan Odom ("Odom Declaration," Dkt. No. 41-11); and
- Declaration of Julie Green ("Green Declaration," Dkt. No. 41-12).

## II. LEGAL STANDARD

Approval of a class action settlement requires certification of a settlement class. La Fleur v. Med. Mgmt. Int'l, Inc., 2014 WL 2967475, at *2–3 (C.D. Cal. June 25, 2014) (internal quotation marks omitted). A court may certify a class if the plaintiff demonstrates the class meets the requirements of Federal Rules of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b).[1] See Fed. R. Civ. P. 23; see also Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996). Rule 23(a) contains four prerequisites to class certification: (1) the class must be so numerous that joinder is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims of the class representative must be typical of the other class members; and (4) the representative parties must fairly and adequately protect the interests of the class. See Fed. R. Civ. P. 23(a). Rule 23(b) requires one of the following: (1) prosecuting the claims of class members separately would create a risk of inconsistent or prejudicial outcomes; (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive or declaratory relief benefitting the whole class is appropriate; or (3) common questions of law or fact predominate so that a class action is superior to another method of adjudication. Fed. R. Civ. P. 23(b).

Class action settlements must be approved by the court. See Fed. R. Civ. P. 23(e). At the preliminary approval stage, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." Id. "The settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval." Acosta v. Trans Union, LLC, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original). To determine whether a settlement agreement is potentially fair, a court considers the following factors: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003).

## III. CONDITIONAL CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS

Plaintiffs move to conditionally certify a class of: "[a]ll persons within the United States who received any call or ringless voicemail from Defendant or its agent/s and/or employee/s to said person's cellular telephone made through the use of any automatic telephone dialing system

---

[1] All references to "Rule" in this Order refer to the Federal Rules of Civil Procedure unless otherwise noted.

or prerecorded voice between April 21, 2016 through and including April 21, 2020." (Motion 3.) The Court finds that the proposed settlement class meets the requirements of Rule 23.

**A. Requirements of Rule 23(a)**

   1. **Numerosity**

A class satisfies the prerequisite of numerosity if it is so large that joinder of all class members is impracticable. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). To be impracticable, joinder must be difficult or inconvenient, but need not be impossible. Keegan v. Am. Honda Motor Co., 284 F.R.D. 504, 522 (C.D. Cal. 2012). There is no numerical cutoff for sufficient numerosity. Id. However, 40 or more members will generally satisfy the numerosity requirement. Id. A plaintiff has the burden to establish that this requirement is satisfied. United Steel, Paper & Forestry, Rubber, Mfg. Energy v. Conoco Phillips Co., 593 F.3d 802, 806 (9th Cir. 2010). Plaintiff's proposed class includes approximately 182,124 members. (Motion 3.) Accordingly, the Court concludes that the numerosity requirement is satisfied.

   2. **Commonality**

The commonality requirement is satisfied when plaintiffs assert claims that "depend upon a common contention . . . capable of classwide resolution—which means that a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). All class members' claims flow from the same alleged injury—that Defendant used robocall software to leave ringless voicemail telemarketing calls. Plaintiff argues that resolution of this case on the merits would require assessment of: "(i) whether ECA placed a telemarketing call (via a ringless voicemail) to the putative class members on their cellular telephones; (ii) whether said calls contained a pre-recorded voice message; and (ii) whether ECA failed to obtain written consent from the putative class members prior to making such calls." (Motion 12.) These questions are obviously common.

   3. **Typicality**

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff, and whether other class members have been injured by the same course of conduct." Wolin v. Jaguar Land Rover No. Am., 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting Hanon, 976 F.2d at 508). Because typicality is a permissive standard, the claims of the named plaintiff need not be identical to those of the other class members. Hanlon, 150 F.3d at 1020. Here, Plaintiff's claims are identical to those of the class. The voicemail he received was prerecorded. Accordingly, the Court is satisfied that Plaintiff has met the typicality requirement.

### 4. Adequacy

In determining whether a proposed class representative will adequately protect the interests of the class, the court should ask whether the proposed class representative and her counsel have any conflicts of interest with any class member and whether the proposed class representative and her counsel will prosecute the action vigorously on behalf of the class. Johnson v. General Mills, Inc., 275 F.R.D. 282, 288 (C.D. Cal. 2011). Plaintiff has submitted a declaration indicating he understands and will continue to uphold his responsibility as a class representative. (Odom Declaration ¶ 10.) Additionally, Plaintiff's counsel has submitted a declaration detailing his extensive experience with class action litigation. (Kazerounian Declaration ¶¶ 20-28.) Neither Plaintiff nor his counsel are aware of conflicts of interest with other class members. (Odom Declaration ¶ 12; Kazerounian Declaration ¶ 19.) The Court is satisfied that the adequacy requirement has been met.

### B. Requirements of Rule 23(b)

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 614 (1997). Plaintiffs seek conditional certification under Rule 23(b)(3). (Motion p. 21.) Rule 23(b)(3) requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The "central inquiry" here is whether Defendant "placed a telemarketing call to 182,124 individuals with a pre-recorded voice message without the individuals' written consent." (Motion 15.) Imagining 182,124 individual TCPA cases concerning whether individuals received the same pre-recorded voice message from Defendant without prior written consent is a unique horror. Predominance is easily satisfied; a class action is obviously superior. Accordingly, Plaintiff's request to conditionally certify a class under Rule 23(b)(3) is granted.

## IV. SETTLEMENT AGREEMENT

### A. Settlement Summary

Subject to approval from the Court, the Agreement creates a $990,000.00 common fund Settlement Fund for the class of 182,124 people who received robocalls from Defendant. (Agreement § 4.2.) All class relief, attorneys' fees and expenses, notice and administrative costs, and incentive awards will be paid out of the Settlement Fund. (Id.)

//
//
//
//

**B. Settlement Terms**

    **1. Financial Terms**

The financial terms of the settlement are as follows: After administrative costs, attorneys' fees and expenses, and the incentive award are paid, each settlement class member who has submitted an "Approved Claim" shall be entitled to a distribution amount from the settlement fund equal to the amount remaining divided by the total number of approved claims. (Agreement § 4.2.3.) If any amount remains in the Settlement Fund after such payments issue, the settlement administrator will provide an estimate of conducting a second distribution to the class. (Id. § 4.2.6.) If the second distribution is feasible and cost efficient, the settlement administrator will distribute a second round of checks to the class members. (Id.) If there is money remaining after a second distribution to class members, the settlement administrator is to make a cy pres distribution of unclaimed funds to the Public Law Center. (Id.) The Motion estimates payment per class member to be around $35.00. (Motion 24.)

    **2. Settlement Class Members**

As addressed above, the settlement class is defined as: "[a]ll persons within the United States who received any call or ringless voicemail from Defendant or its agent/s and/or employee/s to said person's cellular telephone made through the use of any automatic telephone dialing system or prerecorded voice between April 21, 2016 through and including April 21, 2020." (Motion 3.)

    **3. Class Notice**

The Agreement provides for multiple methods of notice, facilitated by CPT as settlement administrator. (Motion 5.) Upon approval from this Court, CPT is to: (1) set up a website where class members can fill out a claim and view the Agreement; (2) set up a toll-free number to receive calls related to the settlement; (3) implement notice via email and/or mail; (4) determine valid claims; (5) distribute awards; (6) maintain records; (7) provide information to counsel; and (8) send out notices. (Agreement §§ 5.3, 6.1-6.7, 7.1-7.6.)

Upon entry of this Order, Defendant is to provide a list to the settlement administrator with all available names, addresses, and/or email addresses for class members. (Id. § 6.2.) Defendant has telephone numbers for all class members, the last known email addresses for approximately 60% of the Class, and the last known physical addresses for the remaining 40% (except five potential class members). (Id. §§ 6.1, 6.2; Motion 6.) Plaintiff has also submitted proposed language for both email and mail notice, both of which seem reasonable. (Motion 7.)

    **4. Class Representative**

The Agreement entitles Plaintiff to a $2,500.00 service award. (Agreement § 16.2.)

### 5. Settlement Administration Costs

All costs of settlement administration are to be paid out of the Common Fund. (Id. § 4.2.) The parties' proposed settlement administrator estimates that such costs will be approximately $100,000.00. (Green Declaration ¶ 19.)

### 6. Attorneys' Fees and Costs

The Agreement contemplates that class counsel is entitled to apply to the Court for an award of attorneys' fees and costs to be paid from the Common Fund. (Agreement § 16.1.) Plaintiff's counsel will not request more than 25% of the Common Fund as attorneys' fees and costs combined. (Id.)

### 7. Release

The Agreement contains a release which encompasses all claims from all persons—"to the fullest extent that the law permits"—arising out of "ECA's use of equipment or methods to contact or attempt to contact Settlement Class Members by telephone during the Settlement Class Period[.]" (Agreement § 10.1.)

### V. PRELIMINARY APPROVAL OF THE SETTLEMENT

"[Rule 23] requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Hanlon, 150 F.3d at 1026. To determine whether a settlement agreement meets these standards, the court considers a number of factors, including "the strength of the Plaintiffs' case, the risk, expense, complexity, and likely duration of further litigation, the risk of maintaining class action status throughout trial, the amount offered in settlement, the extent of discovery completed, and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement." Stanton, 327 F.3d at 959 (internal citations omitted). The settlement may not be a product of collusion among the negotiating parties. In re Mego Fin, Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)).

"At the preliminary approval stage, some of the factors cannot be fully assessed. Accordingly, a full fairness analysis is unnecessary." Litty v. Merrill Lynch & Co., 2015 WL 4698475, *8 (C.D. Cal. Apr. 27, 2015). Rather, the court need only decide whether the settlement is potentially fair, Acosta, 243 F.R.D. at 386, in light of the strong judicial policy in favor of settlement of class actions. Class Plaintiffs, 955 F.2d 1276. "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Hanlon, 15 F.3d at 1027.

### A. Extent of Discovery and Stage of the Proceedings

For a court to approve a proposed settlement, "[t]he parties must . . . have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement." Acosta, 243 F.R.D. at 396 (internal quotation marks omitted). This case is in an early stage. The parties have exchanged "informal discovery," and attended a mediation, but no more. (Motion 25.) However, the Court notes that Plaintiff's claims are not likely to require significantly more discovery than what has already occurred. This factor is accordingly neutral.

### B. Strength of Case and Risk, Expense, Complexity, and Likely Duration of Litigation

Plaintiff has brought a strong case that his counsel believes would prevail at trial. (Kazerounian Declaration ¶ 17.) Defendants still contest liability and maintains that "its policies and procedures were and are in compliance with all applicable laws, including obtaining consent." (Motion 21.) If this litigation were prolonged, both sides would need to brief questions of class certification and hire experts to assess Defendant's consent argument. This would undoubtedly be expensive, complex, and risky for both parties. This factor supports approval.

### C. Amount Offered in Settlement

"Even a fractional recovery of the possible maximum recovery amount may be fair and adequate in light of the uncertainties of trial and difficulties in proving the case." Millan v. Cascade Water Servs., 310 F.R.D. 593, 611 (E.D. Cal. 2015). Here, the recovery amount is consistent with amounts found to be fair and reasonable. See, e.g., In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (permitting settlement amount that was one-sixth of potential recovery); Deaver v. Compass Bank, 2015 WL 8526982, at *7 (N.D. Cal. Dec. 11, 2015) (approving a settlement that was 10.7% of the total potential liability).

The gross settlement amount is $990,000.00 for a class of under 200,000, which is squarely within a normal range for similar cases. See, e.g., Larson v. Harman-Mgmt Corp., 2019 WL 7038399 (E.D. Cal. Dec. 20, 2019) (approving preliminary settlement of $4 million for 13.5 million messages); Wakefield v. Visalus, Inc., 2020 U.S. Dist. LEXIS 146959 (D. Or. Aug. 14, 2020) ($925 million for 1.8 million calls). Accordingly, this factor supports approval.

### D. Experience and Views of Counsel

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal citation and quotation marks omitted). Class Counsel has substantial experience with cases of this kind and believes this settlement will provide significant monetary recovery to the class. (Kazerounian Declaration ¶¶ 13, 24-31.) This factor supports approval.

### E. Collusion Between the Parties

"To determine whether there has been any collusion between the parties, courts must evaluate whether 'fees and relief provisions clearly suggest the possibility that class interests gave way to self interests,' thereby raising the possibility that the settlement agreement is the result of overt misconduct by the negotiators or improper incentives for certain class members at the expense of others." Litty, 2015 WL 4698475, at *10 (quoting Staton, 327 F.3d at 961). Based on a review of the evidence presented, it does not appear that there was collusion between the parties. First, the settlement negotiations were conducted at arms-length and occurred during a mediation. (Kazerounian Declaration ¶¶ 9-11.)

However, the Motion contains a concerning footnote. It reads: "The parties have also entered into a Supplemental Agreement with regards to ECA's right to terminate the Settlement Agreement. The Supplemental Agreement will not be filed with the Court, but the parties have agreed to disclose the terms of the Supplemental Agreement, should the Court require it, in camera." (Motion 10 n.4.) Any agreement which affects the terms of classwide settlement but remains unavailable to the class raises serious issues of consent for class members and collusion of parties. The Court will not grant final approval to this settlement without submission of the Supplemental Agreement, which may be filed under seal if the parties so choose.

### F. Attorneys' Fees and Enhancement Awards

Both Plaintiff's proposed incentive award and attorneys' fees appear potentially reasonable. A court may grant a modest incentive award to class representatives, both as an inducement to participate in the suit and as compensation for the time spent in litigation activities. See In re Mego Fin. Corp., 213 F.3d at 463 (finding the district court did not abuse its discretion in awarding an incentive award to the class representatives). An incentive award of $2,500.00 is appropriate for Plaintiff. See Clesceri v. Beach City Investigations & Protective Servs., Inc., 2011 WL 320998, at *2, 9, 12 (C.D. Cal. Jan. 27, 2011) (preliminarily approving an incentive award of $3,000 each to the two named plaintiffs when the gross settlement amount was $100,000); Vanwagoner v. Siemens Indus., Inc., 2014 WL 1922731, at *2 (E.D. Cal. May 14, 2014) (preliminarily approving $5,000 as an incentive award when the maximum settlement amount was $225,000).

Finally, the Agreement contemplates that class counsel shall be entitled to apply to the Court for an award of attorneys' fees and litigation costs to be paid from the common fund. (Agreement § 16.1.) Plaintiff's counsel has agreed not to request more than 25% of the common fund for attorneys' fees and costs combined. (Id.) Though the Court will assess counsel's fee motion on its merits when it is filed, fees and costs equivalent to twenty-five percent are the "benchmark award that should be given in common fund cases" within the Ninth Circuit. See Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990).

## VI.  CONCLUSION

For the reasons above, the Court GRANTS Plaintiff's Motion.  The June 7, 2021 hearing is VACATED.

**IT IS SO ORDERED.**