1   **KAZEROUNI LAW GROUP, APC**
    Abbas Kazerounian (SBN: 249203)
2   ak@kazlg.com
    245 Fischer Avenue, Suite D1
3   Costa Mesa, California 92626
    Telephone:   (800) 400-6808
4   Facsimile:   (800) 520-5523

5   **KAZEROUNI LAW GROUP, APC**
    Alan Gudino (SBN: 326738)
6   alan@kazlg.com
    2221 Camino Del Rio South, Suite 101
7   San Diego, California 92108July 26
    Telephone:   (619) 233-7770
8   Facsimile:   (800) 520-5523

9   Attorneys for Plaintiff
    RYAN ODOM

10

11              **UNITED STATES DISTRICT COURT**

12            **CENTRAL DISTRICT OF CALIFORNIA**

13                  **EASTERN DIVISION**

14

15  RYAN ODOM, on behalf of himself and         Case No. 5:20-cv-00851-JGB
    others similarly situated,
16                                               **NOTICE OF MOTION AND**
                   Plaintiff,                    **MOTION FOR ATTORNEYS'**
17                                               **FEES, COSTS, AND INCENTIVE**
            v.                                   **AWARD; MEMORANDUM OF**
18                                               **POINTS AND AUTHORITIES IN**
    ECA MARKETING, INC.,                         **SUPPORT**
19
                   Defendant.                    Date:        December 6, 2021
20                                               Time:        9:00 a.m.
                                                 Ctrm.:       1
21                                               Judge:       Hon. Jesus G. Bernal

22                                               [Filed currently with the Declarations of
                                                 Abbas Kazerounian, Alan Gudino, and
23                                               Ryan Odom, and Exhibits attached
                                                 thereto]
24

25

26

27

28

---

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD

1  TO THE HONORABLE COURT AND TO ALL PARTIES AND THEIR
2  ATTORNEYS OF RECORD:
3  PLEASE TAKE NOTICE that on December 6, 2021 at 9:00 a.m. PST, at the
4  U.S. District Courthouse, 3470 Twelfth Street, Riverside, California, 92501, in
5  Courtroom 1, plaintiff Ryan Odom ("Plaintiff") will and hereby does move this Court
6  for an order approving Plaintiff's request for attorneys' fees, costs, and incentive
7  award pursuant to the parties' Settlement Agreement and the Court's Preliminary
8  Approval Order (ECF No. 44).

This Motion is based on this Notice, the Memorandum of Points and
Authorities, the Declarations and exhibits filed concurrently with this Motion, the
complete file and records in this action, and any evidence that may be presented at the
hearing.

Dated: July 27, 2021          KAZEROUNI LAW GROUP, APC

                              By:  *s/ Abbas Kazerounian*
                              ABBAS KAZEROUNIAN
                              ALAN GUDINO

                              Attorneys for Plaintiff
                              RYAN ODOM

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................1

II.  PLAINTIFF'S COUNSEL'S ATTORNEYS' FEES.......................................2

   A. Class Counsel's Attorneys' Fees Are Reasonable ...................................2

      1. Summary Chart ...................................................................................2

      2. Detailed Time Records ........................................................................2

      3. Reasonableness of Hourly Rates .........................................................3

         a. Experience of Counsel and Hourly Rates Approved In Other Cases .....3

            i.  Abbas Kazerounian—Partner .............................................3

            ii. Yana A. Hart—Managing Associate ...................................4

            iii. Alan Gudino—Associate ....................................................4

      4. Attorneys' Fees Surveys and Supporting Case Law ................................5

   B. Percentage of the Fund .............................................................................7

      1. Class Counsel Have Obtained Great Results for the Class In Comparison to Awards Made in Similar Cases................................................................9

      2. The Risk of Litigation Supports the Requested Fees...............................11

      3. The Skill Required and Quality of Work Performed Support The Requested Fees ....................................................................................................13

      4. Class Counsel's Undertaking of this Action on a Contingency-Fee Basis Supports the Requested Fees ..................................................................14

   C. Lodestar..................................................................................................15

      1. Results Obtained ...............................................................................17

      2. Contingency Fee ...............................................................................17

      3. Complexity of the Issues....................................................................17

      4. Class Counsel's Experience, Reputation, and Ability .............................18

      5. Arm's-Length Negotiations ................................................................18

III. CLASS COUNSEL'S LITIGATION COSTS OF $7,104.46 ARE REASONABLE ..................................................................................................20

i

IV.   AN INCENTIVE PAYMENT OF $2,500 TO NAMED PLAINTIFF IS
       REASONABLE ............................................................................21

V.    CONCLUSION .............................................................................23

ii

**TABLE OF AUTHORITIES**

**Cases**

*Aarons v. BMW of N. Am., LLC,*
  2014 U.S. Dist. LEXIS 118442 (C.D. Cal. Apr. 29, 2014) ....................................6

*Abante Rooter & Plumbing v. Pivotal Payments,*
  No. 3:16-cv-05486-JCS, 2018 U.S. Dist. LEXIS 232054
  (N.D. Cal. Oct. 15, 2018)....................................................................................22

*Barani v. Wells Fargo Bank, N.A.,*
  2014 WL 1389329 (S.D. Cal. Apr. 9, 2014)........................................................12

*Barbosa v. Cargill Meat Solutions Corp.,*
  297 F.R.D. 431 (E.D. Cal. 2013) ..........................................................................7

*Bayat v. Bank of the W.,*
  No. C-13-2376 EMC, 2015 U.S. Dist. LEXIS 50416
  (N.D. Cal. Apr. 15, 2015) ..............................................................................10, 22

*Blackhawk Pine Retail v. V.,*
  2016 Pa. Dist. & Cnty. Dec. LEXIS 17408 (Pa. C.P. June 22, 2016) .....................5

*Blum v. Stevenson,*
  465 U.S. 886 (1994).............................................................................................3

*Buccellato v. AT&T Operations, Inc.,*
  No. C10-00463-LHK, 2011 U.S. Dist. LEXIS 111361 (N.D. Cal. June 30, 2011) .6

*Cabiness v. Educ. Fin. Sols., LLC,*
  No. 16-cv-01109-JST, 2019 U.S. Dist. LEXIS 50817
  (N.D. Cal. Mar. 26, 2019).............................................................................10, 22

*Carrie Couser v. Comenity Bank, et al.,*
  12 CV 08484 MMA BGS ...................................................................................10

*Chambers v. Whirlpool Corp.,*
  214 F. Supp. 3d 877, 2016 WL 5922456 (C.D. Cal. 2016) ...................................6

*Connelly v. Hilton Grand Vacations Co., LLC*,

294 F.R.D. 574 (S.D. Cal. 2013) ........................................................12

*D'Amato v. Deutsche Bank*,

236 F.3d 78 (2d Cir. 2001) ..................................................................19

*Davis v. City and County of San Francisco*,

976 F.3d 1536 (9th Cir. 1992) ...............................................................3

*Davis v. Hollins Law*,

25 F. Supp. 3d 1292 (E.D. Cal. 2014) ...................................................5

*Dennis v. Kellogg Co.*,

2010 WL 4285011 (S.D. Cal. Oct. 14, 2010) .....................................19

*Dibish v. Ameriprise Fin. Servs.*,

2015 Pa. Dist. & Cnty. Dec. LEXIS 432 (Pa. C.P. 2015) ....................6

*Fischel v. Equit. Life Assurance Soc'y*,

307 F.3d 997 (9th Cir. 2002) .........................................................16, 17

*Gergetz v. Telenav, Inc.*,

No. 16-cv-04261-BLF, 2018 U.S. Dist. LEXIS 167206

(N.D. Cal. Sept. 27, 2018) ..................................................................22

*Glass v. UBS Fin. Servs., Inc.*,

2007 WL 221862 (N.D. Cal. 2007) ...............................................16, 17

*Hanlon v. Chrysler Corp.*,

150 F.3d 1011 (9th Cir. 1998) ...........................................1, 16, 18, 19

*Hartranft v. TVI, Inc.*,

No. SACV 15-01081-CJC-DFM, 2019 U.S. Dist. LEXIS 222619 (C.D. Cal. Oct.

21, 2019).............................................................................................10

*Hensley v. Eckerhart*,

461 U.S. 424 (1983)...............................................................................9

*Hofstader, et al. v. Providence Health and Services, et al.*,

No. 2:18-cv-00062-SMJ (E.D. WA, Feb. 19, 2021)............................4

iv

*In re Bluetooth Headset Products Liability Litigation,*

  654 F.3d 935 (9th Cir. 2011) ........................................................................7

*In Re Equity Funding Corp. Sec. Litig.,*

  438 F. Supp. 1303 (C.D. Cal. 1977) ..........................................................13

*In re Heritage Bond Litig.,*

  No. 02-ML-1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ........................8, 13

*In re Immune Response Sec. Litig.,*

  497 F. Supp. 2d 1166 (S.D. Cal. 2007)..................................................3, 20

*In re Linerboard Antitrust Litig.,*

  2004 U.S. Dist. LEXIS 10532, 2004 WL 1221350 ....................................16

*In re Media Vision Tech. Sec. Litig.,*

  913 F. Supp. 1362 (N.D. Cal. 1996) ..........................................................20

*In re Omnivision Techs.,*

  559 F. Supp. 2d 1036 (N.D. Cal. 2007) ...............................................passim

*In re Rite Aid Corp. Sec. Litig.,*

  396 F.3d 294 (3d Cir. Pa. 2005) ..................................................................3

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,*

  19 F.3d 1291 (9th Cir. 1994) .....................................................................14

*In re Washington Public Power Supply Sys. Sec. Litig.,*

  19 F.3d 1291 (9th Cir. 1994) .......................................................................7

*Jairam v. Colourpop Cosmetics, LLC,*

  2020 WL 5848620, (S.D. Fla. Oct. 1, 2020) ...........................................10

*Kearney v. Hyundai Motor Am.,*

  No. SACV 09-1298-JST, 2013 WL 3287996 (C.D. Cal. June 28, 2013)................6

*Kerr v, Screen Extras Guild, Inc.,*

  526 F.2d 67 (9th Cir. 1975) .......................................................................16

*Klee v. Nissan N. Am., Inc.*,
  No. CV 12-08238 AWT (PJWx), 2015 U.S. Dist. LEXIS 88270 (C.D. Cal. July 7, 2015)..................................................................................................20

*Knutson v. Schwan's Home Service, Inc.*,
  Case No. 12-CV-00964-GPC-DHB (S.D. Cal. Jul. 14, 2012)...............................12

*Lindenbaum v. NCO Fin. Sys.*,
  2011 U.S. Dist. LEXIS 78069, 2011 WL 2848748 (E.D. Pa. July 18, 2011) ..........6

*Louie v. Kaiser Found. Health Plan, Inc.*,
  2008 U.S. Dist. LEXIS 78314 (S.D. Cal. 2008) ....................................................21

*Lu v. United States*,
  No. CV 01-01758 CBM (Ex), 2014 U.S. Dist. LEXIS 77789 (C.D. Cal. May 23, 2014)...........................................................................................................6

*Lundell v. Dell, Inc.*,
  CIVA C05-3970 JWRS, 2006 WL 3507938 (N.D. Cal. Dec. 5, 2006).................19

*Malta v. Fed. Home Loan Mortgage Corp.*,
  2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ...........................................................12

*Marks v. Crunch San Diego, LLC*,
  904 F.3d 1041 (9th Cir. 2018) ...............................................................................3

*Marr v. National Credit Systems, Inc.*, 5:17-cv-02208-GW-GJS (C.D. Cal. Jan. 9, 2019)..........................................................................................................4

*McCurley v. Royal Sea Cruises, Inc.*,
  U.S. Dist. LEXIS 227110 (S.D. Cal. 2020) ...........................................................4

*Milliron v. T-Mobile USA, Inc.*,
  2009 WL 3345762 (D.N.J. Sept. 14, 2009) ..........................................................19

*Nat'l Rural Tele. Coop v. DIRECTV, Inc.*,
  221 F.R.D 523 (C.D. Cal. 2004) ............................................................................11

*Nguyen v. HOVG, LLC*,
  2015 U.S. Dist. LEXIS 124019 (S.D. Cal. Sept. 15, 2015) ....................................5

*Ontiveros Ontiveros v. Zamora*,

   303 F.R.D. 356 (E.D. Cal. Oct. 8, 2014) ...................................................21

*Pierce v. County of Orange*,

   905 F. Supp. 2d 1017 (C.D. Cal. 2012) ....................................................6

*Pimental v. Google Inc.*,

   Case No. 4:11-cv-02585-YGR, 2013 WL 12177158 (N.D. Cal. June 26, 2013).......8

*POM Wonderful, LLC v. Purely Juice, Inc.*,

   No. CV 07-2633, 2008 U.S. Dist. LEXIS 110460, 2008 WL 4351842 (C.D. Cal.

   Sept. 22, 2008) .........................................................................6

*Rodriguez v. Disner*,

   688 F.3d 645 (9th Cir. 2012) .............................................................20

*Rodriguez v. Kraft Foods Grp., Inc.*,

   Case No. 1:14-cv-1137-LJO-EPG (E.D. Cal. Oct. 4, 2016)................................17

*Rodriguez v. West Publishing Corp.*,

   563 F.3d 948 (9th Cir. 2009) .............................................................21

*Sanchez v. Frito-Lay, Inc.*,

   2015 U.S. Dist. LEXIS 102771 (E.D. Cal. Aug. 5, 2015)...................................21

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*,

   2010 WL 2486346 (C.D. Cal. June 15, 2010) ........................................19

*Serrano v. Unruh*,

   32 Cal. 3d 621 (1982) ...................................................................3

*Smith v. Microsoft Corp.*,

   2014 U.S. Dist. LEXIS 12799 (S.D. Cal. Jan. 28, 2014)...................................12

*Staton v. Boeing Co.*,

   327 F.3d 938 (9th Cir. 2003) .............................................................21

*Steiner v. American Broadcasting Co.*,

   248 Fed. Appx. 780 (9th Cir. 2007)......................................................16

*Stemple v. QC Holdings, Inc.*,
  No. 12-cv-01997-BAS (WVG), 2016 U.S. Dist. LEXIS 157244 (S.D. Cal. Nov. 7, 2016) ................................................................................................8
*Twerdok v Secretary of Health and Human Services*,
  2016 U.S. Claims LEXIS 1853, 2016 WL 7048036, U.S. Court of Federal Claims, Office of Special Masters, Aug. 4, 2016 ................................5
*Uhl v. Colvin*,
  2016 U.S. Dist. LEXIS 78779 (E.D. Cal. June 16, 2016) ........................5
*Van Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) .....................................................21
*Vandervort v. Balboa Capital Corp.*,
  F. Supp. 3d 1200 (C.D. Cal. 2014) ........................................................8
*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ......................................................passim
*Wershba v. Apple Computer, Inc.*,
  91 Cal.App.4th 224 (2001) ...............................................................16
*West v. Cal. Serv. Bureau, Inc.*,
  Case No. 4:16-cv-03124-YGR (N.D. Cal. Jan. 23, 2019) ........................8
*West v. Circle K Stores, Inc.*,
  2006 U.S. Dist. LEXIS 76558 (E.D. Cal. Oct. 19, 2006) .......................23
*Williams v. Bluestem Brands, Inc.*,
  2019 WL 1450090 (M.D. Fla. Apr. 2, 2019).........................................10
*Williams v. MGM-Pathe Communications* Co.,
  129 F.3d 1026 (9th Cir. 1997) ..............................................................7

**RULES**
Fed. R. Civ. P. 23 ................................................................................1
Fed. R. Civ. P. 23(h).....................................................................2, 21

**OTHER AUTHORITIES**

2 McLaughlin on Class Actions, § 6:7 (8th ed.) .......................................................19

Federal Judicial Center, Manual for Complex Litigation, § 27.71, p. 336 (4th Ed. 2004) .........................................................................................................................9

Ronald L. Bruge, Esq., *United States Consumer Law Attorney Fee Survey Report, 2017-2018*, p. 228 (published Sept. 10, 2019) ........................................................5

# I.     INTRODUCTION

Plaintiff Ryan Odom ("Plaintiff") submits this Motion for Attorneys' Fees, Costs, and Incentive Award pursuant to this Court's Preliminary Approval Order (ECF No. 44) over Plaintiff and defendant ECA Marketing, Inc.'s ("ECA") proposed settlement.

Federal Rule of Civil Procedure 23 provides that "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23. As noted in Plaintiff's Motion for Preliminary Approval of Class Action Settlement (ECF No. 41), the Settlement Agreement in this action resulted from extensive arm's-length negotiations, including a full-day mediation before the Honorable Suzanne H. Segal (Ret.). The arm's-length negotiations, especially those before a seasoned mediator, help to serve as "independent confirmation" of the reasonableness of the settlement's terms, including the attorneys' fees, costs, and incentive award sought in this Motion. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Under these circumstances, the Court may give deference to the parties' judgment over the reasonableness of the requested fees.

In the Settlement Agreement ("Agreement," ECF No. 41-3), the parties agreed that Class Counsel would not seek more than 25% of the $990,000 Common Fund (representing $247,500) as combined attorneys' fees and litigation costs. (Agreement § 16.) Through this fee petition, Plaintiff seeks the Court's approval of: (1) combined attorneys' fees and litigation costs of $247,500; and (2) a service award to Plaintiff of $2,500. These amounts are to be paid by ECA from the Common Fund. (Agreement §4.2.) The reasonableness of the requested attorneys' fees is supported by both the percentage-of-the-fund and the lodestar approaches. Additionally, Plaintiff's Class Counsel still need to draft a final approval motion, answer any inquiries from putative class members, and prepare for and attend the final approval hearing scheduled for December 6, 2021.

As stated more thoroughly below and in the supporting declarations, these sums are fair and reasonable as they resulted from extensive arm's-length negotiations and are further supported by both the percentage-of-the-fund and the lodestar methodologies. (*See* Declaration of Abbas Kazerounian ("Kazerounian Decl.") ¶¶ 9, 23 & 27; Declaration of Alan Gudino ("Gudino Decl.") ¶ 6.)

## II.    PLAINTIFF'S COUNSEL'S ATTORNEYS' FEES

Rule 23(h) of the Federal Rules of Civil Procedure provides that "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

### A. Class Counsel's Attorneys' Fees Are Reasonable

#### 1. <u>Summary Chart</u>

Below is a chart summarizing the time Plaintiff's counsel worked on the case, and it also includes the hours counsel believe they will expend through the final approval and distribution of any contingent *cy pres* award.

| Attorney | Rate | Hours | Total |
|---|---|---|---|
| Abbas Kazerounian (Partner) | $725 | 66.50 (20 anticipated hrs) | $48,212.50 |
| Yana A. Hart (Managing Associate) | $350 | 47.70 | $16,695 |
| Alan Gudino (Associate) | $295 | 119.80 (15 anticipated hrs) | $35,341 |
| **Totals** | - | - | - |
| Total Combined Lodestar | - | 234 | $100,248.50 |
| Total Costs | - | - | $7,104.46 |
| **Total Fees & Costs:** | - | - | **$107,352.96** |

Plaintiff's counsel seek Court approval of $247,500 for attorneys' fees and costs, including the hours and costs counsel will need to expend to draft a final approval motion and prepare for and attend the final approval hearing. Consequently, Plaintiff's counsel seek a multiplier of 2.39. (Kazerounian Decl. ¶ 18.)

#### 2. <u>Detailed Time Records</u>

Class Counsel have categorized major tasks in their respective declarations by the amount of attorney hours incurred in this litigation. (*See id.* ¶ 21; Gudino Decl. ¶

2

5.) Courts may "rely on summaries submitted by the attorneys and [the court] need not review actual billings," *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 307 (3d Cir. Pa. 2005), cited approvingly in *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1176 (S.D. Cal. 2007) ("Here, counsel have provided sworn declarations from attorneys attesting to the experience and qualifications of the attorneys who worked on the case, the hourly rates, and the hours expended.").

### 3. Reasonableness of Hourly Rates

Plaintiff's attorneys' hourly rates are also reasonable. In assessing the reasonableness of an attorney's hourly rate, courts consider whether the claimed rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stevenson*, 465 U.S. 886, 895, n.11 (1994); *see also Davis v. City and County of San Francisco*, 976 F.3d 1536, 1546 (9th Cir. 1992); *Serrano v. Unruh*, 32 Cal. 3d 621, 643 (1982).

a. Experience of Counsel and Hourly Rates Approved In Other Cases

Plaintiff's counsel here are experienced, highly regarded members of the bar with extensive expertise in class actions and complex litigation involving consumer claims like those at issue here under the Telephone Consumer Protection Act (TCPA).

i. *Abbas Kazerounian—Partner*

Mr. Kazerounian has considerable experience litigating consumer class actions. (Kazerounian Decl. ¶¶ 34-42.) Mr. Kazerounian has lectured on consumer litigation and is an adjunct professor of law at California Western School of Law where he teaches a three-credit consumer law course, including the TCPA. (*Id.* ¶ 43.) Throughout his career, Mr. Kazerounian has litigated numerous TCPA cases in federal court, and he has successfully argued numerous appeals before the Ninth Circuit Court of Appeals in various consumer cases, such as the seminal case of *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018). (*Id.* ¶¶ 34-42.)

Mr. Kazerounian has incurred 46.50 hours in this litigation, and he anticipates incurring an additional 20 hours through the final approval hearing, as indicated in his

3

KAZEROUNI
LAW GROUP, APC

accompanying declaration. (*Id.* ¶¶ 21 & 22.) Mr. Kazerounian has been approved for an hourly rate of $710 in a number of cases. *See, e.g.*, *Hofstader, et al. v. Providence Health and Services, et al.*, No. 2:18-cv-00062-SMJ (E.D. WA, Feb. 19, 2021) (approving Mr. Kazerounian's hourly rate at $710 per hour); *see also McCurley v. Royal Sea Cruises, Inc.*, U.S. Dist. LEXIS 227110 (S.D. Cal. 2020) (same).

### ii.   Yana A. Hart—Managing Associate

Ms. Hart contributed much to this litigation, and she supervised the case until she left Kazerouni Law Group, APC (KLG) in April 2021. (*Id.* ¶¶ 29-33.) Ms. Hart was a managing associate at KLG's San Diego office, where she focused on litigating consumer class actions. (*Id.* ¶¶ 30 & 31.) Ms. Hart's hourly rate is calculated at a rate of $350 per hour due to her experience and her position as a managing associate. (*Id.* ¶ 32.)

During her time at KLG, Ms. Hart predominantly practiced in the Central and Southern Districts of California. She had extensively litigated numerous cases on behalf of consumers on an individual and class action basis. (*Id.* ¶ 31.) Ms. Hart practiced almost exclusively in the area of consumer law, dedicating over 95% of her practice to complex class actions and individual matters in consumer related areas of law. (*Id.* ¶ 30.) In 2019, Ms. Hart was approved for an hourly fee of $275 in the matter *Marr v. National Credit Systems, Inc.*, 5:17-cv-02208-GW-GJS, Dkt. 55 (C.D. Cal. January 9, 2019). Since then, Ms. Hart has litigated numerous other consumer class actions, and she was promoted to managing associate. (*Id.* ¶ 31.)

Ms. Hart incurred 47.70 hours litigating this case before she left KLG, as indicated in the Summary Chart and accompanying declaration of Abbas Kazerounian. (*Id.* ¶ 29.)

### iii.   Alan Gudino—Associate

Mr. Gudino has also contributed to this litigation and seeks approval of an hourly rate of $295. Since his admission to the California Bar in January 2019, Mr. Gudino has practiced exclusively in the area of consumer law. (Gudino Decl. ¶ 10.)

Mr. Gudino has been admitted to practice in the Southern, Central, and Northern Districts of California as well as the Ninth Circuit Court of Appeals (*id*. ¶ 2); has taken multiple depositions of corporate representatives (*id*. ¶ 2); has substantially contributed to briefing various consumer law cases (*id*. ¶ 11); and has made numerous court appearances since joining KLG (*id*. ¶ 12). Mr. Gudino has incurred 104.8 hours in this litigation, and he anticipates that he will incur an additional 15 hours through the final approval hearing. (*Id*. ¶ 5.)

### 4. <u>Attorneys' Fees Surveys and Supporting Case Law</u>

In a United States Consumer Law Attorney Fee Survey Report for 2017–2018, the average market rate for Los Angeles attorneys was $547. *See* Ronald L. Bruge, Esq., *United States Consumer Law Attorney Fee Survey Report, 2017-2018*, p. 228 (published Sept. 10, 2019)[1] The survey supports the billing rates requested herein, as the average billing rate data in the survey, grouped by both region and years in practice, is consistent with Plaintiff's counsel's requested rates.

The survey, including previous versions of it, has been accepted by various courts across the country to determine reasonable billing rates. *See, e.g.*, *Uhl v. Colvin*, 2016 U.S. Dist. LEXIS 78779 (E.D. Cal. June 16, 2016); *Nguyen v. HOVG, LLC*, 2015 U.S. Dist. LEXIS 124019, at *5 (S.D. Cal. Sept. 15, 2015); *Davis v. Hollins Law*, 25 F. Supp. 3d 1292, 1299 (E.D. Cal. 2014); *Blackhawk Pine Retail v. V.*, 2016 Pa. Dist. & Cnty. Dec. LEXIS 17408 (Pa. C.P. June 22, 2016); *Twerdok v Secretary of Health and Human Services*, 2016 U.S. Claims LEXIS 1853, 2016 WL 7048036, U.S. Court of Federal Claims, Office of Special Masters, Aug. 4, 2016 (Survey Report held helpful in determining Erie, PA, hourly rate for attorney fee award under National Vaccine Injury Compensation Program, the Vaccine Act, and comparing Erie and Hershey, PA, hourly rates); *Dibish v. Ameriprise Fin. Servs.*, 2015 Pa. Dist.

---

[1] The survey report can be found at: https://burdgelaw.com/wp-content/uploads/2019/10/US-Consumer-Law-Attorney-Fee-Survey-Report-2017-2018.pdf.

& Cnty. Dec. LEXIS 432, at *17-18 (Pa. C.P. 2015); *Lindenbaum v. NCO Fin. Sys.*, 2011 U.S. Dist. LEXIS 78069, 2011 WL 2848748 (E.D. Pa. July 18, 2011).

Moreover, page 228 of this Survey shows that consumer attorneys in the Los Angeles area bill between $383 and $787 per hour. (*See* Exhibit 3 to Kazerounian Decl.) This range is in line with those rates sought by Class Counsel and constitutes further justification for their requested hourly rates.

Case law also support the hourly rates class counsel present here. *See, e.g.*, *Aarons v. BMW of N. Am., LLC*, 2014 U.S. Dist. LEXIS 118442 (C.D. Cal. Apr. 29, 2014) (supporting hourly rates for partners up to $775 in consumer class action); *see also Kearney v. Hyundai Motor Am.*, No. SACV 09-1298-JST, 2013 WL 3287996, at *8 (C.D. Cal. June 28, 2013) (authorizing hourly rates for attorneys ranging from $650–$800 in consumer class action); *Pierce v. County of Orange*, 905 F. Supp. 2d 1017 (C.D. Cal. 2012) (approving hourly rates ranging from $450 to $825 per hour in ADA litigation); *Buccellato v. AT&T Operations, Inc.*, No. C10-00463-LHK, 2011 U.S. Dist. LEXIS 111361 (N.D. Cal. June 30, 2011) (approving rates of $740 per hour for attorneys); *POM Wonderful, LLC v. Purely Juice, Inc.*, No. CV 07-2633, 2008 U.S. Dist. LEXIS 110460, 2008 WL 4351842, *4 (C.D. Cal. Sept. 22, 2008) (finding rates of $475 to $750 for partners and $275 to $425 for associates reasonable); *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 2016 WL 5922456, at *14 (C.D. Cal. 2016) (approving hourly rates between $485 and $750 per hour); *Lu v. United States*, No. CV 01-01758 CBM (Ex), 2014 U.S. Dist. LEXIS 77789, at *14 (C.D. Cal. May 23, 2014)[2] (finding that an hourly rate of $725 was appropriate for a partner who successfully litigated numerous cases at the trial and appellate levels, wrote various articles, spoke at bar association events, and finished a finalist for Trial Lawyer of the Year for the Consumer Attorneys Association of Los Angeles).

---

[2] The court in this matter approved an hourly rate of $725 in 2014 for a partner with credentials comparable to Mr. Kazerounian's.

The hourly rates for Class Counsel are therefore reasonable because they are commensurate with the average hourly rates charged by similarly experienced attorneys, practicing the same area of law in the same general geographical region.

**B. Percentage of the Fund**

The Ninth Circuit recognizes two methods to determine the amount of attorneys' fees that should be awarded from a common fund generated through class action litigation: the percentage-of-recovery method and the lodestar/multiplier method. *In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994). Courts have discretion to use either method. *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997). Courts may also crosscheck one method against the other to ensure that the fee award is reasonable. *In re Bluetooth Headset Products Liability Litigation,* 654 F.3d 935, 944 (9th Cir. 2011).

In a percentage of the fund analysis, courts consider a number of factors to determine the appropriate percentage of the fund to award as attorneys' fees in a common fund case including: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; and (5) awards made in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047, 1048-50 (9th Cir. 2002).

The "benchmark" percentage for attorneys' fees in the Ninth Circuit is 25% of the common fund with costs and expenses awarded in addition to this amount. *Vizcaino*, 290 F.3d at 1047. "However, in most common fund cases, the award exceeds that [25%] benchmark." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007) (citing *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1998)); *see also Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value"). "[A]bsent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%." *Omnivision*, 559 F. Supp. 2d at 1048 (citing *In re Activision Sec. Litig.*,

723 F. Supp. at 1378); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) (affirming award of over $27 million in attorneys' fees and costs, which was 28% of the settlement amount, where the district court found the 28% rate to be at or below the market rate).

Courts have awarded 25% or more in attorneys' fees in similar class action settlements. *See, e.g., Pimental v. Google Inc.*, Case No. 4:11-cv-02585-YGR, 2013 WL 12177158, at *3 (N.D. Cal. June 26, 2013) (awarding attorneys' fees of 25% of the "common fund" in TCPA class settlement); *West v. Cal. Serv. Bureau, Inc.*, Case No. 4:16-cv-03124-YGR, Dkt. No. 128 (N.D. Cal. Jan. 23, 2019) (awarding attorneys' fees of 33.33% of the common fund in TCPA class settlement); *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 WL 1594403, at *19 & n.14 (C.D. Cal. June 10, 2005) ("[C]ourts in this circuit, as well as other circuits, have awarded attorneys' fees of 30% or more in complex class actions.") (collecting cases); *Vandervort v. Balboa Capital Corp.*, F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (awarding 33.33% as attorneys' fees in a TCPA claims-made settlement); *Stemple v. QC Holdings, Inc.*, No. 12-cv-01997-BAS (WVG), 2016 U.S. Dist. LEXIS 157244, *8 (S.D. Cal. Nov. 7, 2016) (awarding attorneys' fees of 30% of the fund in a TCPA settlement).

Attorneys' fees are often paid from the common fund, thereby reducing class members' recovery, as is the case here. Class Counsel's request amounts to $247,500, taking into consideration the current litigation costs incurred of $7,104.46, the current attorneys' fees, and those costs and attorneys' fees that Class Counsel will inevitably incur through the final approval. Class counsel's request for attorneys' fees therefore amounts to 24.28% of the Common Fund.[3] This request is reasonable considering the Ninth Circuit's benchmark of 25% and the risks and results obtained in this Settlement. Moreover, the parties' Settlement Agreement permits Class Counsel to request up to 25% of the common fund, including a combined request for attorneys' fees and costs.

---

[3] $247,500 (25% of Common Fund) - $7,104.46 (current costs) = $240,395.54 (attorneys' fees requested).

1   (Agreement § 16.1.) Additionally, the Settlement Class Members were adequately
2   apprised that Class Counsel would be seeking up to 25% of the Settlement Fund in
3   attorneys' fees and costs in the class notices. (*See* Website Notice, ECF No. 41-6; Email
4   Notice, ECF No. 41-5.) As of July 27, 2021, no class member has objected to the
5   potential attorneys' fee request. (Kazerounian Decl. ¶ 16.)  And the deadline to submit
6   an objection is September 6, 2021.

7        In addition, the fee request is fully supported by the factors enunciated in
8   *Vizcaino* including: (1) the results achieved; (2) the risk of litigation; (3) the skill
9   required and the quality of work; (4) the contingent nature of the fee; and (5) awards
10  made in similar cases.

### 1. Class Counsel Have Obtained Great Results for the Class In Comparison to Awards Made in Similar Cases

13       The results obtained for the class are generally considered the most important
14  factor in determining the appropriate fee award in a common fund case. *See Hensley*
15  *v. Eckerhart*, 461 U.S. 424, 435 (1983); *Omnivision*, 559 F. Supp. 2d at 1046; *see also*
16  Federal Judicial Center, Manual for Complex Litigation, § 27.71, p. 336 (4th Ed.
17  2004) (the "fundamental focus is on the result actually achieved for class members")
18  (citing Fed. R. Civ. P. 23(h) committee note).  Standing alone, this factor supports
19  Class Counsel's fee request of 25% of the Common Fund.

20       Shortly after Plaintiff filed the Complaint on April 21, 2020 (ECF No. 1), the
21  parties engaged in motion practice following ECA's attempt to dismiss the case. After
22  Class Counsel successfully defended against ECA's motion, the parties began
23  actively discussing this case informally, exchanging confidential information, and
24  addressing the merits and the risks on both sides should this case proceed to trial.
25  After their initial discussions, the parties scheduled and attended an arm's-length full-
26  day mediation with the Honorable Suzanne H. Segal (Ret.), an experienced mediator
27  who dedicated an entire day on October 22, 2020 to help the parties resolve the matter.
28  During mediation, the parties were able to reach an agreement in principle to settle

9

the action. (Agreement § 1.2.)  Thereafter, the parties spent five months extensively negotiating the terms of the long form settlement agreement. (Kazerounian Decl. ¶ 10.)

The Settlement secured by Class Counsel provides a great recovery for Settlement Class Members compared to similar TCPA cases, despite the uncertainty of recovery in similar class actions. *See, e.g.*, *Jairam v. Colourpop Cosmetics, LLC*, 2020 WL 5848620, at *6 (S.D. Fla. Oct. 1, 2020) (approving settlement that awarded $11.25 to each class member who opted in); *Williams v. Bluestem Brands, Inc.*, 2019 WL 1450090, at *2 (M.D. Fla. Apr. 2, 2019) (collecting cases about typical awards in TCPA cases, finding potential awards between $25-$75 to be typical); *Hartranft v. TVI, Inc.*, No. SACV 15-01081-CJC-DFM, 2019 U.S. Dist. LEXIS 222619, at *10 (C.D. Cal. Oct. 21, 2019) (approving a TCPA settlement where defendant would provide either $25 cash to individuals who submitted a claim, or offer a $75 discount at defendant's stores); *Cabiness v. Educ. Fin. Sols., LLC*, No. 16-cv-01109-JST, 2019 U.S. Dist. LEXIS 50817, at *12 (N.D. Cal. Mar. 26, 2019) (granting final approval where the actual pro rata share to the class members was $33.36); *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 U.S. Dist. LEXIS 50416, at *3 (N.D. Cal. Apr. 15, 2015) (approving a TCPA settlement where the class would be entitled to approximately $2.486 million net fund, and if all 871,836 members opted in, the recovery would have been $2.85); *Carrie Couser v. Comenity Bank, et al.*, 12 CV 08484 MMA BGS ($8.475 million approval, which after fees and costs approximated in $1.11/per a class member).

The Settlement Agreement here provides for $990,000 in recovery for the approximately 184,000 Settlement Class Members. (Agreement §§ 2.31 & 4.2.) After deducting attorneys' fees and costs, a service award to Plaintiffs, and costs of notice and claims administration, every Settlement Class Member who makes a timely and valid claim will be entitled to a pro rata distribution of the Settlement Fund. (*Id.* § 4.2.2.)

In the Preliminary Approval Motion, Class Counsel predicted that a final claims rate would be below 10%, but he estimated that a recovery of approximately $35 per claimant would be possible for a claim rate higher or lower than 10%, which is substantially greater than the results obtained in other TCPA class action settlements, where recovery can vary from $1.58 to $75, as explained in the Motion for Preliminary Approval (ECF. No. 41, at 22-23).

It is well-settled that a proposed settlement may be accepted where the recovery represents a fraction of the maximum potential recovery. *See Nat'l Rural Tele. Coop v. DIRECTV, Inc.*, 221 F.R.D 523, 527 (C.D. Cal. 2004) (finding that it is "well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"). Although the total number of claimants will be apparent after the claims filing deadline, the recovery is in line with other TCPA settlements.

In light of the results achieved, this factor weighs in favor of the Court granting the award requested.

### 2. The Risk of Litigation Supports the Requested Fees

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." *Omnivision*, 559 F. Supp. 2d at 1046-47; *see also Vizcaino*, 290 F.3d at 1048 (finding that the risk of dismissal or loss on class certification is relevant to evaluate a requested fee).

In this case, ECA aggressively pursued numerous defenses and still contests liability, creating a significant risk of litigation if this action were to continue. (Agreement § 1.4.) Continued litigation would likely result in further significant discovery, discovery disputes, substantial risks of certifying the class, and proceeding through trial, which would also result in great expense to both parties. And if the class were not certified, no recovery would be achieved to the individual class members. *See Vizcaino*, 290 F.3d at 1048 (addressing importance of the risk of a denial of class

11

certification in evaluating the attorneys' fees request). Accordingly, in prosecuting this case, Class Counsel faced a risk that they would be unable to recover their fees and expenses even if the named plaintiff's individual claims were successful on the merits.

Moreover, "[t]he law interpreting the TCPA and its consent requirement has been in flux, making it difficult for Class Members to prove lack of consent under the TCPA." *Knutson v. Schwan's Home Service, Inc.*, Case No. 12-CV-00964-GPC-DHB, Dkt. No. 139, p. 4 (S.D. Cal. Jul. 14, 2012) (citing *Baird v. Sabre Inc.*, 2014 WL 320250 (C.D. Cal. Jan 28, 2014)). The difficulty of proving lack of consent, the gravamen of a TCPA claim, is reflected in TCPA settlements yielding recoveries that equate to a small fraction of the full $500 statutory recovery. For example, the Southern District of California has approved TCPA settlements which could yield as little as approximately $3 per class member. *See Malta v. Fed. Home Loan Mortgage Corp.*, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013); *see also Barani v. Wells Fargo Bank, N.A.*, 2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) (approving a TCPA settlement where claimants would receive approximately $7 if all class members made a claim). And courts have also refused to certify TCPA class actions, which is an additional risk that is avoided by settlement. *See, e.g., Smith v. Microsoft Corp.*, 2014 U.S. Dist. LEXIS 12799, at *28 (S.D. Cal. Jan. 28, 2014) (class certification denied); *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 579 (S.D. Cal. 2013) (same).

Although Class Counsel and Plaintiff strongly believe that they would prevail on the merits and that class certification would be granted, they recognize that there are significant risks in litigating on behalf of the class. Thus, in considering the Settlement, the parties carefully balanced the risks of continuing to engage in protracted and contentious litigation against the benefits to the Settlement Class, including the deterrent effects it would have. (Agreement § 1.3.) Consequently, the

risks of continued litigation depict the high degree of results obtained for the Class and also further support the reasonableness of the requested fees.

### 3. <u>The Skill Required and Quality of Work Performed Support The Requested Fees</u>

The "prosecution and management of a complex [] class action requires unique legal skills and abilities" that are to be considered when evaluating fees. *Omnivision*, 559 F. Supp. 2d at 1047. The prosecution of any large class action requires unique skills and abilities. *See In Re: Heritage Bond*, 2005 WL 1594403, at *19-20. Here, this litigation required a great degree of skill given the complex legal and factual issues, and the expertise required to evaluate ECA's records, data, and potential liability.

Class Counsel are experienced class action litigators who have been appointed "class counsel" in TCPA and related consumer class actions. Class Counsel have successfully prosecuted numerous TCPA and other complex consumer class actions, and they have secured noteworthy recoveries for those classes. (*See* Kazerounian Decl. ¶¶ 34-42.) Class Counsel's proven track record demonstrates not only the quality of work performed, but also the skill required to successfully prosecute large, complex class actions. Moreover, due to their experience, Plaintiff's counsel were able to successfully withstand an early motion to dismiss in this action and proceed through litigation—leading to the Settlement now before this Court.

The quality of opposing counsel is also important in evaluating the quality of the work done by Class Counsel. *In Re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) (recognizing that "plaintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly.") In this case, ECA is represented by a reputable international law firm (Haynes and Boone, LLP) with attorneys who have significant

class litigation experience.[4] So, Class Counsel's ability to obtain a favorable settlement despite defense counsel's reputation, skill, and work experience further highlights the quality of Class Counsel's work.

Class Counsel's efforts and experience have therefore contributed to the favorable settlement and recovery obtained in this case. In sum, Class Counsel performed factual investigations prior to filing the action, successfully contested ECA's motion to dismiss, participated in arm's-length mediation, and negotiated a favorable settlement for the Class. This factor supports the requested fees.

### 4. Class Counsel's Undertaking of this Action on a Contingency-Fee Basis Supports the Requested Fees

Attorneys are entitled to a larger fee award when their compensation is contingent in nature. *See Vizcaino*, 290 F.3d at 1048-50 (finding that courts reward successful class counsel in contingency cases "for taking risk of nonpayment by paying them a premium over their normal hourly rates"); *see also Omnivision*, 559 F. Supp. 2d at 1047. "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for . . . contingency cases." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994). This ensures competent representation for plaintiffs who may not otherwise be able to afford it. *Id.*

Here, Class Counsel filed this action with the understanding that they would be required to devote numerous hours of work to the case with no guarantee of success. (Kazerounian Decl. ¶ 17.) Class Counsel prosecuted this matter on a purely contingent basis while agreeing to advance all necessary expenses knowing that Class Counsel would only be compensated if there were able to successfully litigate the case. (*Id.*) In pursuing this litigation, Class Counsel have spent considerable outlays of time and money by, among other things: (1) investigating the action; (2) successfully opposing

---

[4] https://www.haynesboone.com/people/e/erickson-mark; https://www.haynesboone.com/people/l/levenson-andrea.

a motion to dismiss; (3) negotiating the Settlement over many months, including an all-day private mediation; and (4) overseeing administration of the Settlement. Class Counsel expended these resources despite the risk that Class Counsel may never be compensated for this case, especially in light of the difficulty in obtaining and maintaining class certification.

Class Counsel have incurred $7,104.46 in litigation costs as of July 27, 2021 and together with their associate attorneys they spent 199 hours litigating this matter, and they believe they will incur an additional 35 hours through the final approval hearing. In total, Class Counsel's time spent in this case amounts to a lodestar of $100,248.50 (which includes the anticipated hours Class Counsel will need to prepare the motion for final approval and to attend the fairness hearing). (Kazerounian Decl. ¶ 22; Gudino Decl. ¶ 5.) Thus, Plaintiff's counsels' "substantial outlay, when there is a risk that none of it will be recovered, further supports the award of the requested fees" in this matter. *See Omnivision*, 559 F. Supp. 2d at 1047.

As articulated above, the percentage-of-the-fund method is the preferred and most widely used method to determine attorneys' fees in a common fund case. The requested fees are fully supported by the factors enunciated by *Vizcaino*, and they are commensurate with the excellent results obtained for the Class, a result comparable or in excess of awards in other TCPA cases.

Although the requested fees are fully supported by the percentage-of-the-fund method, it should again be noted that the application of the percentage-of-the-fund method is optional and may be applied at the Court's discretion. The Court may also apply the lodestar method as another optional means of cross-checking the requested fees.

### C. Lodestar

Plaintiff's counsel's combined lodestar is $100,248.50, which includes the number of hours Class Counsel believe they will incur through final approval and overseeing any contingent *cy pres* distribution of unclaimed funds. (Kazerounian

15

Decl. ¶ 22.) Class Counsel also request a modifier of 2.39, which takes into consideration the future attorneys' fees and costs that Class Counsel will incur to prepare for the final approval hearing, including drafting and filing the motion and appearing at the final approval hearing.

The relevant lodestar factors support the requested award of attorneys' fees of $240,395.54. The first step in the lodestar-multiplier approach is to multiply the number of hours counsel reasonably expended by a reasonable hourly rate. *Hanlon*, 150 F.3d at 1029. Once this raw lodestar figure is determined, the Court may then adjust that figure based upon its consideration of many of the same "enhancement" factors considered in a percentage-of-the-fund analysis, such as: (1) the results obtained; (2) whether fee is fixed or contingent; (3) the complexity of the issues involved; (4) the preclusion of the other employment due to acceptance of the case; and (5) the experience, reputation, and ability of the attorneys. *See Kerr v, Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

As of July 27, 2021, Plaintiff's counsel's lodestar is $100,248.50, which is reasonable in light of the work performed and the work still necessary to finalize the case. California courts routinely enhance lodestar amounts based on multipliers that "range from 2 to 4 or even higher." *Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 255 (2001). Multipliers of 1 to 4 are commonly found to be appropriate, with the majority in the 1.5 to 3 range. *Vizcaino*, 290 F.3d at 1051 n.6; *see also Steiner v. American Broadcasting Co.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (affirming 6.85 multiplier).

The Ninth Circuit stresses that "[i]t is an abuse of discretion to fail to apply a risk multiplier when . . . there is evidence that the case was risky." *Fischel v. Equit. Life Assurance Soc'y*, 307 F.3d 997, 1008 (9th Cir. 2002); *see also Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *16 (N.D. Cal. 2007); *In re Linerboard Antitrust Litig.*, 2004 U.S. Dist. LEXIS 10532, 2004 WL 1221350, at *16 (noting that "during 2001-2003, the average multiplier approved in common fund class actions was 4.35")

16

1  (citation omitted); *Rodriguez v. Kraft Foods Grp., Inc.*, Case No. 1:14-cv-1137-LJO-
2  EPG (E.D. Cal. Oct. 4, 2016).

3  ### 1.  Results Obtained

4  The "results obtained" is an important inquiry. As explained above, Class
5  Counsel were able to negotiate a nationwide settlement to recover damages for
6  approximately 184,000 Settlement Class Members. In light of the risks in this case,
7  Class Counsel have obtained significant relief for the Settlement Class Members with
8  the Common Fund of $990,000 (Agreement § 2.36), which Class Counsel provided
9  in the Preliminary Approval Motion that individuals could recover approximately $35
10  based upon the estimated participation rate of approximately 10%. The result obtained
11  for the class favors approval of the requested fees.

12  ### 2.  Contingency Fee

13  The risk inherent in contingency representation is a critical factor. The Ninth
14  Circuit stresses that "[i]t is an abuse of discretion to fail to apply a risk multiplier
15  when . . . there is evidence that the case was risky." *Fischel v. Equit. Life Assurance*
16  *Soc'y*, 307 F.3d 997, 1008 (9th Cir. 2002); *see also Glass v. UBS Fin. Servs., Inc.*,
17  2007 WL 221862, *16 (N.D. Cal. 2007).

18  Here, Class Counsel took this matter on a contingency fee basis and incurred
19  over $7,104.46 in litigation costs (as of July 27, 2021), and they will incur more
20  expenses through final approval. (Kazerounian Decl. ¶ 22.) This factor therefore
21  supports the fee request, as Class Counsel have incurred numerous hours of work
22  (including the additional time Class Counsel will incur through the final approval
23  hearing and distribution of the settlement fund—if final approval is granted) without
24  the guarantee they would obtain a recovery. This factor favors approval of the
25  requested fees.

26  ### 3.  Complexity of the Issues

27  Like all complex commercial cases and class actions, this case had risks.
28  Although Plaintiff's counsel felt confident in the case against ECA, the defenses

articulated by ECA raised potential obstacles to recovery throughout the litigation, including, the issues of consent, the number of messages to the Plaintiff, etc. Although Plaintiff's counsel believes this case is strong, no case is fool-proof, and all cases (especially class actions) have inherent risks.

Many factors must be considered before reaching a class settlement including the risk of further discovery, depositions, dispositive motions, appeals, certification and potentially decertification motions. Class Counsel were able to navigate through these risks to make a determination and achieve a successful result based on their experience. ECA nevertheless disputed liability and it would have likely argued against class certification on the basis of prior express consent. If litigation were to continue, Plaintiff would have needed to engage in costly discovery. (Kazerounian Decl. ¶ 12.)  Plaintiff would also need to hire experts to evaluate the data. These challenging factors therefore favor the requested fee award.

### 4.  Class Counsel's Experience, Reputation, and Ability

As mentioned above, Plaintiff's counsel are experienced in consumer actions, including TCPA class actions. (*See* Kazerounian Decl. ¶¶ 34-42.) This factor therefore supports approval of the fee request.

### 5.  Arm's-Length Negotiations

Although attorneys' fee provisions included in class action settlements are subject to the determination of whether the provision is fundamentally fair, adequate and reasonable, the Ninth Circuit has opined that "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit *must be limited* to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027 (citing *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir.

1  1982)) (emphasis added); *see also Lundell v. Dell, Inc.*, CIVA C05-3970 JWRS, 2006

2  WL 3507938 (N.D. Cal. Dec. 5, 2006).

3  In *Hanlon*, for instance, the Ninth Circuit stated that where settlement terms,

4  including attorneys' fees, are reached through formal mediation, the court may rely

5  upon the mediation proceedings "as independent confirmation that the fee was not the

6  result of collusion or a sacrifice of the interests of the class." *Hanlon*, 150 F.3d at

7  1029; *see also Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at *5 (D.N.J. Sept.

8  14, 2009) ("[T]he participation of an independent mediator in settlement negotiation

9  virtually insures that the negotiations were conducted at arm's length and without

10  collusion between the parties"); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 WL

11  2486346, at *6 (C.D. Cal. June 15, 2010) ("[T]he assistance of an experienced

12  mediator in the settlement process confirms that the settlement is non-collusive");

13  *Dennis v. Kellogg Co.*, 2010 WL 4285011, at *4 (S.D. Cal. Oct. 14, 2010) (the parties

14  engaged in a "full-day mediation session," which helped to establish that the proposed

15  settlement did not result from collusion); *see also* 2 McLaughlin on Class Actions, §

16  6:7 (8th ed.) ("A settlement reached after a supervised mediation receives a

17  presumption of reasonableness and the absence of collusion").

18  Importantly, this Court recognized that the "settlement negotiations were

19  conducted at arms-length and occurred during a mediation." (ECF No. 44, at 8.) And

20  Class Counsel continue to believe and contend that this settlement was the product of

21  good faith negotiations. This settlement is a result of extensive arm's-length

22  negotiations, including mediation before Hon. Suzzane H. Segal (Ret.). Judge Segal

23  was instrumental in conducting a mediation as an unbiased third-party neutral. *See*

24  *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] . . . mediator's

25  involvement in . . . settlement negotiations helps to ensure that the proceedings were

26  free of collusion and undue pressure."). Therefore, this factor leans in favor of an

27  award of attorneys' fees and costs as requested by Class Counsel.

28

III.   **CLASS COUNSEL'S LITIGATION COSTS OF $7,104.46 ARE REASONABLE**

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970). The significant litigation expenses Class Counsel incurred in this case were necessary to secure the resolution of this litigation. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (finding that costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax costs, computerized legal research fees, and mediation expenses are relevant and necessary expenses in class action litigation). Some courts in this circuit have awarded litigation costs, such as expert witness fees, to be distributed from class action settlement funds. *See, e.g., In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996). Courts may award costs and expenses that are reasonable under the circumstances. *See Rodriguez v. Disner*, 688 F.3d 645, 653, 660 (9th Cir. 2012). Class Counsel believe that the costs incurred in this matter are fair and reasonable. (Kazerounian Decl. ¶ 27.)

The requested expenses of $7,104.46 (as of July 27, 2021) are identified in, and supported by Mr. Kazerounian's Declaration. (*See* Kazerounian Decl. ¶ 26.) Class Counsel respectfully request that the Court approve all litigation expenses incurred in this action because they were reasonably incurred, the costs requested are in the context of settlement rather than a judgment (*see* Fed. R. Civ. P. 54), and the Settlement Agreement approved of such a recovery. *See Klee v. Nissan N. Am., Inc.*, No. CV 12-08238 AWT (PJWx), 2015 U.S. Dist. LEXIS 88270, at *42 (C.D. Cal. July 7, 2015) ("Because the settlement agreement anticipated the recovery of these litigation costs, the court approves the request for reimbursement.").

Class Counsel are entitled to reimbursement of reasonable "*nontaxable costs that are authorized by law or by the parties' agreement*." Fed. R. Civ. P. 23(h) (emphasis added); *see also Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action settlement). "[C]ourts throughout the Ninth Circuit regularly award litigation costs and expenses—including reasonable travel expenses. . . ." *Sanchez v. Frito-Lay, In*c., 2015 U.S. Dist. LEXIS 102771, at \*49 (E.D. Cal. Aug. 5, 2015); *Ontiveros Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. Oct. 8, 2014) (citations omitted). Class Counsel therefore respectfully request that the Court approves the requested litigation costs.

## IV. AN INCENTIVE PAYMENT OF $2,500 TO NAMED PLAINTIFF IS REASONABLE

As the Ninth Circuit has recognized, "named Plaintiffs, as opposed to designated class members who are not named Plaintiffs, are eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (service awards "are fairly typical in class action cases"). Such awards are intended to compensate class representatives for work done on behalf of the class [and] make up for financial or reputational risk undertaken in bringing the action." *Id*. Modest service (or incentive) awards, such as those requested here, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits. A court should order an incentive award when it finds that it is not the product of collusion and does not come at the expense of the remaining class members. *Louie v. Kaiser Found. Health Plan, Inc*., 2008 U.S. Dist. LEXIS 78314, at \*17-18 (S.D. Cal. 2008).

Plaintiff alleges that ECA violated the TCPA by calling his cell phone using a ringless call to advertise its financial products and without Plaintiff's prior express written consent. (Compl. ¶ 17, ECF No. 1). Although ECA disputes the allegations, Plaintiff feels strongly about the case and about pursuing the claims (Declaration of

Ryan Odom, "Odom Decl.," ¶ 7.) By coming forward to prosecute his claims on behalf of the class, Plaintiff placed his reputation on the line.

In addition to lending his name to this matter, and thus subjecting himself to public attention, Plaintiff has actively engaged in this action. Plaintiff has personally spent hours engaged in this action, which includes time spent in pre-litigation investigation, reviewing the complaint, reviewing motions, reviewing and signing settlement documents, and communicating with Plaintiff's counsel throughout the litigation, including being available during the mediation. (Kazerounian Decl. ¶¶ 19 & 20; Odom Decl. ¶¶ 8-11.)

Plaintiff therefore requests a modest incentive award of $2,500 as sole compensation for litigating this action and reaching a nationwide settlement to protect consumers from alleged violations of TCPA. The requested incentive award of $2,500 for Plaintiff is justified. *See, e.g.*, *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 U.S. Dist. LEXIS 50416, at *34 (N.D. Cal. Apr. 15, 2015) (awarding $2,000 incentive awards to named plaintiffs in TCPA action, where based on low claims rate, claimants would receive approximately $151); *Abante Rooter & Plumbing v. Pivotal Payments*, No. 3:16-cv-05486-JCS, 2018 U.S. Dist. LEXIS 232054, at *21 (N.D. Cal. Oct. 15, 2018) (awarding $2,000 incentive award in TCPA action, where claimants expected to receive "an average payment of $161.32"); *Cabiness v. Educ. Fin. Sols., LLC*, No. 16-cv-01109-JST, 2019 U.S. Dist. LEXIS 50817, at *13, 21 (N.D. Cal. Mar. 26, 2019) (awarding $5,000 incentive award in TCPA action, where "because class members will not have to opt in, the majority of the class will receive compensation" of $33.36); *Gergetz v. Telenav, Inc.*, No. 16-cv-04261-BLF, 2018 U.S. Dist. LEXIS 167206, at *15, 22 (N.D. Cal. Sept. 27, 2018) (finding $5,000 incentive award in TCPA case was "proportional to the class members' recoveries, which will range between approximately $800 and $4,800"). This Court even mentioned in the Preliminary Approval Order that such an award was reasonable: "An incentive award of $2,500.00 is appropriate for Plaintiff." (ECF No. 44, at p. 8.) Such compensation, through a

service award, also provides the economic motivation to induce potential plaintiffs to lend their names and support to class actions generally. *West v. Circle K Stores, Inc.*, 2006 U.S. Dist. LEXIS 76558, at *26 (E.D. Cal. Oct. 19, 2006).

In sum, an incentive award of $2,500 should be approved for Plaintiff from the Common Fund.

## V.   CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court enter an order as follows: (i) awarding Class Counsel $247,500 in reasonable attorneys' fees *and* costs (representing 25% of the Common Fund); and (ii) approving a service award for Plaintiff in the amount of $2,500.

Dated: July 27, 2021               KAZEROUNI LAW GROUP, APC

                          By:   *s/ Abbas Kazerounian*
                                ABBAS KAZEROUNIAN
                                ALAN GUDINO

                                Attorneys for Plaintiff
                                RYAN ODOM