**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian (SBN: 249203)
ak@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**KAZEROUNI LAW GROUP, APC**
Alan Gudino (SBN: 326738)
alan@kazlg.com
2221 Camino Del Rio South, Suite 101
San Diego, California 92108
Telephone: (619) 233-7770
Facsimile: (800) 520-5523

Attorneys for Plaintiff
RYAN ODOM

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| RYAN ODOM, on behalf of himself and others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>ECA MARKETING, INC.,<br><br>        Defendant. | Case No. 5:20-cv-00851-JGB<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        December 6, 2021<br>Time:       9:00 a.m.<br>Ctrm.:      1<br>Judge:     Hon. Jesus G. Bernal<br><br>[Filed currently with the Declarations of Ryan Odom, Abbas Kazerounian, Katie Tran, and Exhibits attached thereto] |

TO THE HONORABLE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 6, 2021, at 9:00 a.m. PST, at the U.S. District Courthouse, 3470 Twelfth Street, Riverside, California, 92501, in Courtroom 1, plaintiff Ryan Odom, on behalf of himself and others similarly situated, will and hereby does move this Court for final approval of the proposed class action settlement agreement with defendant ECA Marketing, Inc.

This Motion is based on this Notice, the Memorandum of Points and Authorities, the Declarations and exhibits filed concurrently with this Motion, the complete file and records in this action, and any evidence that may be presented at the final approval hearing.

Dated: October 20, 2021      Respectfully submitted,

KAZEROUNI LAW GROUP, APC

By:   *s/ Abbas Kazerounian*
      ABBAS KAZEROUNIAN
      ALAN GUDINO

      Attorneys for Plaintiff
      RYAN ODOM

# TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ................................................................1

II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...................2

III. THE SETTLEMENT ..........................................................4

    A. Significant Class Action Settlement Terms ...............................4

        1. The Settlement Class ............................................5

        2. Proposed Settlement Relief .....................................6

        3. Class Notice ...................................................7

        4. Settlement Administration ......................................8

        5. Scope of Release ...............................................9

        6. Termination of Settlement ......................................9

        7. Payment of Notice and Administrative Costs......................9

        8. Class Representative's Application for Service Award.............9

        9. Class Counsel's Application for Attorneys' Fees and Costs ...............10

IV.  ACTIVITY IN THE CASE AFTER PRELIMINARY APPROVAL ............10

    A. CAFA Notice ...........................................................11

    B. Mail & Email Notices ..................................................11

    C. Settlement Procedure ..................................................12

        1. Opt-Outs and Objections .......................................12

V.   THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE, AND SHOULD THEREFORE BE APPROVED ...............................................................13

    A. The Settlement Satisfies the Rule 23 Requirements .....................14

        1. Numerosity is Satisfied ........................................14

        2. Commonality is Satisfied .......................................14

        3. Typicality is Satisfied ........................................15

        4. Adequate Representation is Satisfied ...........................16

5. Rule 23(b) Requirements are Satisfied ...................................................17

B. The Court Should Approve the Settlement ...............................................18

   1. The Strength of the Lawsuit and the Risks, Expense, Complexity, and Likely Duration of Further Litigation ...................................................20

   2. The Amount Offered in Settlement Is An Excellent Result ................22

   3. Class Members Were Provided with the Best Notice Possible, which Afforded Them an Opportunity to Choose Whether to Participate in the Settlement ............................................................................................24

   4. The Extent of Discovery Completed and the State of the Proceedings Was Sufficient ...................................................................................25

   5. The Experience and Views of Class Counsel Support Final Approval 26

   6. The Reaction of Class Members to the Settlement Was Excellent ......27

C. Attorneys' Fees and Costs ........................................................................27

VI.    CONCLUSION ..............................................................................................28



# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Abdeljalil v. Gen. Elec. Capital Corp.*,
306 F.R.D. 303 (S.D. Cal. 2015) ...................................................................5, 15

*Acosta v. Trans Union, LLC*,
243 F.R.D. 377 (C.D. Cal. 2007) ........................................................................25

*Ades v. Omni Hotels Mgmt. Corp.*,
No. 2:13-cv-02468, 2014 U.S. Dist. LEXIS 129689
(C.D. Cal. Sept. 8, 2014) ...........................................................................15, 16

*Ahmed v. HSBC Bank USA*,
No. ED CV 15-2057 FMO (SPx), 2019 U.S. Dist. LEXIS 104401
(C.D. Cal. June 21, 2019) ............................................................................7, 16

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997) ...................................................................................14, 17

*Amini, et al. v. Heart Savers, LLC*,
2016 WL 10621698 ( C.D. Cal. Oct. 17, 2016) .................................................15

*Arthur v. SLM Corp.*,
No. C10-0198 JLR (W.D. Wash. Aug. 8, 2012) ................................................22

*Barani v. Wells Fargo Bank, N.A.*,
2014 U.S. Dist. LEXIS 49838 (S.D. Cal. Apr. 9, 2014) ....................................17

*Bayat v. Bank of the W.*,
No. C-13-2376 EMC, 2015 U.S. Dist. LEXIS 50416
(N.D. Cal. Apr. 15, 2015) ...........................................................................22, 23

*Bellows v. NCO Fin. Sys.*,
No. 3:07-cv-01413-W-AJB, 2008 U.S. Dist. LEXIS 103525
(S.D. Cal. Dec. 2, 2008) ...............................................................................19

*Boyd v. Bechtel Corp.*,
485 F. Supp. 610 (N.D. Cal. 1979) ....................................................................25

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ...............................................................17

*Cabiness v. Educ. Fin. Sols., LLC*,
  No. 16-cv-01109-JST, 2019 U.S. Dist. LEXIS 50817
  (N.D. Cal. Mar. 26, 2019) ....................................................................23

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*,
  917 F.2d 1171 (9th Cir. 1990) ...............................................................15

*Caldera v. American Medical Collection Agency*,
  320 F.R.D. 513 (C.D. Cal. 2017) ..........................................................15

*Caplan v. Budget Van Lines*,
  No. 2:20-CV-130 JCM (VCF), 2020 U.S. Dist. LEXIS 136865
  (D. Nev. July 31, 2020) ...........................................................................5

*Celano v. Marriott Int'l, Inc.*,
  242 F.R.D. 544 (N.D. Cal. 2007) ..........................................................14

*Ching v. Siemens Industry, Inc.*,
  No. 11-CV-04838-MEJ, 2014 WL 2926210 (N.D. Cal. June 27, 2014) .........10, 13

*Churchill Village, L.L.C. v. General Electric*,
  361 F.3d 566 (9th Cir. 2004) .................................................................24

*Costelo v. Chertoff*,
  258 F.R.D. 600 (C.D. Cal. 2009) ............................................................5

*Cotter v. Checkers Drive-In Rests., Inc.*,
  No. 8:19-cv-01386-VMC-CPT, 2020 U.S. Dist. LEXIS 121223
  (M.D. Fla. June 30, 2020) .....................................................................17

*Couser v. Comenity Bank*,
  125 F. Supp. 3d 1034 (S.D. Cal. 2015) .................................................27

*Denning, Inc. v. Capital Alliance Grp.*,
  310 F.R.D. 614 (S.D. Cal. 2015)..............................................................5

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Ebarle v. Lifelock, Inc.*,
  No. 15-cv-00258-HSG, 2016 U.S. Dist. LEXIS 128279
  (N.D. Cal. Sep. 20, 2016) ...................................................................21

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ...................................................................7, 8

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ...........................................................17

*Ellis v. Naval Air Rework Facility*,
  87 F.R.D. 15 (N.D. Cal. 1980) ....................................................19, 26

*Fischel v. Equit. Life Assurance Soc'y*,
  307 F.3d 997 (9th Cir. 2002) ...........................................................28

*Fraley v. Facebook, Inc.*,
  966 F. Supp. 939 (N.D. Cal. 2013) ...................................................22

*General Tel. Co. v. Falcon*,
  457 U.S. 147 (1982) ......................................................................17

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. Cal. 1998) ...............................14, 15, 17, 18

*Harper v. Credit Control Services, Inc.*,
  863 F. Supp. 2d 125 (D. Mass., 2012) ...............................................20

*Harris v. Palm Springs Alpine Estates, Inc.*,
  329 F.2d 909 (9th Cir. 1964) ...........................................................14

*Hartranft v. TVI, Inc.*,
  No. SACV 15-01081-CJC-DFM, 2019 U.S. Dist. LEXIS 222619
  (C.D. Cal. Oct. 21, 2019) ...............................................................23

*In re Chicken Antitrust Litig.*,
  560 F. Supp. 957 (N.D. Cal. 1980) ...................................................19

*In re Wireless Facilities, Inc. Sec. Litig. II*,
  253 F.R.D. 607 (S.D. Cal. 2008) ...............................13, 16, 19

*Jairam v. Colourpop Cosmetics, LLC*,
  2020 WL 5848620 (S.D. Fla. Oct. 1, 2020) ........................................23

*Klein v. Commerce Energy, Inc.*,
  256 F. Supp. 3d 563 (W.D. Pa. 2017)........................................21

*Kline v. Dymatize Enters., LLC*,
  2016 U.S. Dist. LEXIS 142774 (S.D. Cal. Oct. 13, 2016) ....................17

*Knap v. Art.com*,
  283 F. Supp. 3d 823 (N.D. Cal. 2017)............................................10, 13

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ........................................22

*M. Berenson Co. v. Faneuil Hall Marketplace*,
  671 F. Supp. 819 (D. Mass. 1987)........................................26

*Makaron v. Enagic USA, Inc.*,
  324 F.R.D. 228 (C.D. Cal. 2018) ........................................15

*Manuel v. Wells Fargo Bank, N.A.*,
  No. 3:14-cv-238 (DJN), 2016 U.S. Dist. LEXIS 33708
  (E.D. Va. Mar. 15, 2016)........................................7

*McCown v. City of Fontana*,
  565 F.3d 1097 (9th Cir. 2009) ........................................27

*McCurley v. Royal Seas Cruises, Inc.*,
  331 F.R.D. 142 (S.D. Cal. 2019) ........................................16

*Medeiros v. HSBC Card Servs.*,
  No. CV 15-09093 JVS (AFMx), 2017 U.S. Dist. LEXIS 178484
  (C.D. Cal. Oct. 23, 2017)........................................25

*Medeiros v. HSBC Card Servs.*,
  No. CV 15-09093 JVS (AFMx), 2017 U.S. Dist. LEXIS 178484
  (C.D. Cal. Oct. 23, 2017) ........................................28

*Mego Fin. Corp. Sec. Litig.*,
  213 F. 3d 454 (9th Cir. 2000). ........................................22

vi

*Molski v. Gleich,*
    318 F.3d 937 (9th Cir. 2003) ...................................................................13

*Morrison v. Clear Mgmt. Sols.,*
    No. 1:17-cv-51, 2019 U.S. Dist. LEXIS 3070 (D. Utah Jan. 4, 2019)....................16

*Mullane v. Central Anover Bank & Trust Co.,*
    339 U.S. 306 (1950) .......................................................................23, 24

*Nat'l Rural Telecoms Corp. v. DirectTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004)...........................................................20

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004) .................................................10, 13, 19

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco,*
    688 F.2d 615, 623 (9th Cir. 1982).......................................................18, 19, 21

*Omnivision Technologies, Inc.,*
    559 F.Supp.2d 1036 (N.D. Cal. 2008) ...................................................27

*Parsons v. Ryan,*
    754 F.3d 657 (9th Cir. 2014) ...............................................................15

*Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.,*
    323 F. Supp. 364 (E.D. Pa. 1970)...........................................................25

*Rodriguez v. West Publishing Corp.,*
    563 F.3d 948 (9th Cir. 2009) ...........................................................19, 21

*Romero v. Producers Dairy Foods, Inc.,*
    235 F.R.D. 474 (E.D. Cal. 2006)...............................................................7

*Satterfield v. Simon & Schuster, Inc.,*
    569 F.3d 946 (9th Cir. 2009) .................................................................5

*Saunders v. Dyck O'Neal, Inc.,*
    319 F. Supp. 3d 907 (W.D. Mich. 2018) ...................................................5

*Silber v. Mabon*,
  18 F.3d 1449 (9th Cir. 1994) ..................................................24

*Silver v. Pa. Higher Educ. Assist. Agency*,
  2020 LEXIS 22857 (N.D. Cal. Feb. 7, 2020) ...........................16

*Staton v. Boeing Co.*,
  327 F.3d 938, 958 (9th Cir. 2003) .....................................16, 18

*Steinfeld v. Discover Fin. Servs.*,
  2014 U.S. Dist. LEXIS 44855 (N.D. Cal. Mar. 31, 2014) .....................27

*Stemple v. QC Holdings, Inc.*,
  No. 12-cv-01997-BAS(WVG), 2016 U.S. Dist. LEXIS 157207
  (S.D. Cal. Nov. 7, 2016) ..................................................27

*Stern v. DoCircle, Inc.*,
  2014 WL 486262 (C.D. Cal. Jan. 29, 2014) ................................15

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ..............................................19

*Vasquez v. Coast Valley Roofing, Inc.*,
  266 F.R.D. 482 (E.D. Cal. 2010) .......................................20, 26

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ................................................14, 18

*Warner Communications Sec. Litig.*,
  618 F. Supp. 735 (S.D. N.Y. 1985) ......................................19

*Williams v. Bluestem Brands, Inc.*,
  2019 WL 1450090 (M.D. Fla. Apr. 2, 2019) ...............................23

*Wilson v. Airborne, Inc.*,
  No. EDCV 07-770-VAP (OPx), 2008 U.S. Dist. LEXIS 110411
  (C.D. Cal. Aug. 13, 2008) ...............................................24

**OTHER AUTHORITIES**

2 Newberg on Class Actions § 11.24 (4th Ed. & Supp. 2002);
  Manual for Complex Lit., Fourth § 30.42 ................................26

Fed. Judicial Ctr., Manual for Complex Litigation ("Manual"), § 21.633 ...............13

**RULES**

Fed. R. Civ. P. 23 .................................................................................................14
Fed. R. Civ. P. 23(a) and (b) ...............................................................7, 13, 16, 17
Fed. R. Civ. P. 23(a)(2) .......................................................................................14
Fed. R. Civ. P. 23(a)(3) ...............................................................................15, 16
Fed. R. Civ. P. 23(a)(4) .......................................................................................16
Fed. R. Civ. P. 23(c)(2)(B) .....................................................................7, 23, 24
Fed. R. Civ. P. 23(e)(1)(C) ..................................................................................18

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## I.    INTRODUCTION

Plaintiff Ryan Odom ("Plaintiff"), on behalf of himself and others similarly situated, requests final approval of the proposed class action settlement (the "Action") with defendant ECA Marketing, Inc. ("Defendant" or "ECA") (together with Plaintiff, the "Parties"). The terms of the proposed class action settlement are set forth in the Settlement Agreement ("Agreement"), which is filed concurrently with this motion as Exhibit 1 to the Declaration of Abbas Kazerounian. ECA does not oppose this motion. And this settlement was supported by the Class, as approximately 97% of the Class Members were notified of the settlement via mail or email, and only one person opted-out or objected. (Tran Decl. ¶¶ 7-10, 20, 21; CPT Report, Ex. 2 to Kazerounian Decl.)

The Parties reached an agreement after a successful mediation before the Honorable Suzanne H. Segal (Ret.), and the Agreement provides for a total financial benefit of $990,000 to the Class in compensation for ECA's alleged violations of the Telephone Consumer Protection Act (TCPA). Under the Agreement, the funds were placed in a non-reversionary Common Fund to settle the Action. (Agreement § 4.2; Tran Decl. ¶ 5.) Of the Class Members who received notices of this settlement, approximately 2.22% filed valid claims before the September 6, 2021 objections deadline. (Tran Decl. ¶ 22; CPT Report.) After payment of notice and claims administration expenses, attorneys' fees and litigation costs, and any service award to the Plaintiff, each Class Member who submitted a valid claim is expected to receive approximately $159 through this settlement.

Although Plaintiff believes in the merits of his claims, Plaintiff and his counsel have determined that the settlement is in the best interest of the Class Members, because this settlement creates an incentive for ECA and other businesses to comply with the TCPA, which benefits the Class Members and consumers in general, and it provides an adequate remedy for those harmed by ECA's alleged conduct. Therefore, Plaintiff respectfully requests that the Court approves the proposed settlement, enters a final judgment, and dismisses this case with prejudice.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On March 8, 2020, ECA called[1] Plaintiff's cell phone using a ringless call to advertise its financial products. (Compl. ¶ 17, ECF No. 1.) Even though it did not connect with Plaintiff, ECA left a pre-recorded voice message on Plaintiff's cell phone directing him to http://pozfaststart.com, a website where Plaintiff could download a copy of David McKnight's, "The Power of Zero." (*Id*.) ECA's message to Plaintiff was not for an emergency purpose (*id*. ¶ 20); Plaintiff never asked ECA about its services (*id*. ¶ 16); and Plaintiff never authorized ECA to place pre-recorded calls to his cell phone (*id*.).

As a result, on April 21, 2020, Plaintiff filed a class action complaint against ECA, alleging violations of the TCPA, 47 U.S.C. §§ 227 et seq. (*Id*. ¶¶ 1-56.) More specifically, Plaintiff asserted two causes of action against ECA for its placing advertising calls to Plaintiff and others like him without their prior express consent, including: 1) negligently violating the TCPA; and 2) willfully and/or knowingly violating the TCPA. (*Id*. ¶¶ 47-54.) ECA had never obtained any type of prior express consent from Plaintiff to call him on his cell phone, a cell phone for which Plaintiff is the sole user. (*Id*. ¶¶ 15, 19.) And given that the generic message consisted of a robotic advertisement, Plaintiff alleged that ECA had a policy and regular practice of placing calls to consumers' cell phones using a pre-recorded voice without any prior express consent—written or otherwise. (*Id*. ¶ 21.)

Shortly after Plaintiff filed the Complaint, ECA filed a Motion to Dismiss (ECF No. 16), which the Court denied after being fully brief on the matter (ECF No. 26). Afterward, the Parties agreed that having informal discussions in an attempt to resolve this matter could benefit all sides. (Kazerounian Decl. ¶¶ 6-8.) The Parties therefore began actively discussing this case informally, exchanging confidential information, and addressing the merits and the risks on both sides should this case proceed to trial.

---

[1] ECA contends that the call was placed by leaving a ringless voicemail with a pre-recorded voice message. (*See* Agreement § 2.31.)

(*Id*.) After their initial discussions, the Parties scheduled and attended an arm's-length, full-day mediation with the Honorable Suzanne H. Segal (Ret.), an experienced mediator who dedicated an entire day on October 22, 2020 to help the Parties resolve the matter. (*Id*. ¶ 8-10.) Thereafter, the Parties spent five months extensively negotiating the terms of the Agreement, and they fully executed the Agreement on April 28, 2021. (*Id*. ¶ 11; *see also* Agreement.)

Two days after the Parties executed the Agreement, Plaintiff filed a motion with this Court, requesting preliminary approval of the Parties' proposed settlement. (ECF No. 41.) The next month, on May 27, 2021, the Court issued an order granting Plaintiff's motion and preliminarily approving the settlement. (ECF No. 44.) Following the Court's order, the Settlement Administrator emailed all counsel the proposed notices it intended to send to the Class Members. (Kazerounian Decl. ¶ 17.) The notices, however, did not contain a final hearing date and neither did the Court's order granting the preliminary approval motion, and so the Parties agreed to request a hearing date from the Court before the Settlement Administrator sent out the notices. (*Id*. ¶ 18.) On June 23, 2021, the Parties filed a Joint Stipulation to request a final fairness hearing date to include in the notices to the Class Members. (ECF No. 45.) Five days later, the Court granted the stipulation and set the final hearing date for December 6, 2021, at 9:00 a.m., as requested by the Parties. (ECF No. 46.) The next day, on June 29, 2021, the Settlement Administrator sent out the notices to the Class Members. (Tran Decl. ¶¶ 7, 9.)

The notices were sent by mail and email to 181,604 Class Members. (*Id*.; CPT Report.) Of those notices, 4,511 were undelivered even after the Settlement Administrator skip-traced some addresses and redeliver returned notices. (Tran Decl. ¶ 10) The Class Members were permitted to object or opt-out of the settlement by September 6, 2021. (*Id*. ¶¶ 20, 21.) On July 27, 2021, as required under the Agreement, Plaintiff filed a Motion for Attorneys' Fees, Costs, and Incentive Award, to be heard at the final approval hearing. (ECF No. 47.) By the September 6, 2021 objections

deadline, 4,029 Class Members (or 2.22%) submitted valid claims, and only one Class Member opted-out of the settlement. (Tran Decl. ¶ 20-22; CPT Report.)

As a result of the favorable response to the settlement, and pursuant to the Parties' Agreement, Plaintiff now submits this timely Motion for Final Approval of Class Action Settlement. Pursuant to Fed. R. Civ. P. 23(e), Plaintiff seeks final certification and approval of the proposed settlement, as well as approval of Plaintiff's requests for attorneys' fees, costs, and incentive award. Specifically, Plaintiff respectfully requests that the Court enter a final judgment and order of dismissal with prejudice, as outlined in the proposed order submitted with this unopposed motion.

## III. THE SETTLEMENT

The Parties understood the risks associated with continuing to litigate this case, and they recognized that any one of them could potentially lose at trial. As a result, the Parties agreed to participate in a mediation before Judge Segal (Ret.), whom the Parties chose because of her extensive experience. The mediation occurred on October 22, 2020, and the Parties agreed to settle the matter after a full day of mediation. (Kazerounian Decl. ¶¶ 9, 10.) After a few months of negotiations, the Parties finalized Agreement and then signed it on April 28, 2021. (*Id.* ¶ 11; *see also* Agreement.)

As noted in Plaintiff's Motion for Preliminary Approval, the Agreement resulted from extensive arm's-length negotiations before Judge Segal (Ret.). (*See* ECF No. 41.) The Parties also conducted substantial research into Plaintiff's claims, including but not limited to pre-litigation research and motion practice. (Kazerounian Decl. ¶ 5.)

In short, the time and effort spent on settlement negotiations, the time spent with Judge Segal (Ret.) in the mediation session, and the time and research conducted by the Parties during their motion practice warrant a final approval of the proposed settlement, as the Parties' actions strongly show an absence of collusion.

### A. <u>Significant Class Action Settlement Terms</u>

The significant terms of the settlement are as follows:

///

### 1. The Settlement Class

For purposes of the proposed settlement only, the Parties seek certification of the following class:

> All persons within the United States who received any call or ringless voicemail from Defendant or its agent/s and/or employee/s to said person's cellular telephone made through the use of any automatic telephone dialing system or prerecorded voice between April 21, 2016 through and including April 21, 2020.

The class consists of 181,604 Class Members (Tran Decl. ¶ 4), a difference of only 520 persons from the 182,124 Plaintiff believed existed when he filed the Preliminary Approval Motion (*see* ECF No. 41). Generally, "[t]he Court is bound to class definitions provided in the complaint and, absent an amended complaint, will not consider certification beyond it." *Costelo v. Chertoff*, 258 F.R.D. 600, 604-05 (C.D. Cal. 2009). "The primary exception to this principle is when a plaintiff proposes a new class definition that is narrower than the class definition originally proposed, and does not involve a new claim for relief." *Bee, Denning, Inc. v. Capital Alliance Grp.*, 310 F.R.D. 614, 621 (S.D. Cal. 2015) (citing *Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 306 (S.D. Cal. 2015)).

Here, the proposed class definition differs only in the sense that it now includes "ringless voicemail," which does not change the scope of the class sought in the Complaint. This alteration simply clarifies that the calls placed by ECA resulted in a ringless voicemail with the same pre-recorded message Plaintiff received. *See, e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (text messages and calls are "calls" for the purposes of the TCPA); *Caplan v. Budget Van Lines*, No. 2:20-CV-130 JCM (VCF), 2020 U.S. Dist. LEXIS 136865, at *7 (D. Nev. July 31, 2020) (holding that ringless voicemails are calls under the TCPA); *Saunders v. Dyck O'Neal, Inc.*, 319 F. Supp. 3d 907, 911 (W.D. Mich. 2018) (holding that ringless voicemails are "calls" for the purposes of the TCPA). Therefore, although this defined

class differs slightly from the one in the Complaint, the definition merely clarifies the nature of the calls made by ECA (*i.e.*, ringless voicemails), and so the class definition does not differ from the definition included in the Complaint and does not include a new claim for relief. (*See* Compl. ¶ 38.)

## 2. Proposed Settlement Relief

ECA has paid $990,000 as full and complete consideration for the Settlement. (Tran Decl. ¶ 5.) As explained in the Agreement, these funds will be used to pay: (i) settlement checks; (ii) a service award to Plaintiff; (iii) the attorneys' fees and litigation costs; (iv) administrative costs; and (v) taxes due in connection with the Settlement— prior to the distribution to the Class. (Agreement § 4.2.3.) The amount remaining after deducting (ii) through (v) above (the "Net Settlement Fund") will be used to pay valid claims submitted by the Class Members. (*Id*.)

Class Members who submitted a valid claim form will receive a *pro rata* distribution. (*Id*.) As of the September 6, 2021 opt-out or objection deadline, 4,029, or 2.22 %, of the Class Members submitted valid claims. (Tran Decl. ¶ 22; CPT Report.) These Class Members will therefore receive a pro rata share of approximately $159.[2] Additionally, ECA discontinued its practice of making similar ringless calls with a prerecorded message as part of the settlement.

If any amount remains in the Net Settlement Fund after payment of items (i) through (v) above, and if a 180-day period for cashing checks has lapsed, the Settlement Administrator will provide the estimate of conducting a second distribution to the Class Members. (Agreement § 4.2.6.) If the second distribution is feasible and cost efficient, the Settlement Administrator will distribute a second round of checks to the Class Members. (*Id*.) After this second distribution (or if such distribution is not feasible), the Settlement Administrator will make a *cy pres* distribution of unclaimed

_____

[2] $990,000 (Common Fund) - $247,500 (attorneys' fees and litigation costs) - $99,500 (notice and claims administration costs) - $2,500 (service award) = $640,500/4,029 (valid claims) = ~$158.97.

funds to a nonprofit organization, as approved by the Court, with a total value that equals the amount remaining in the Net Settlement Fund. (*Id*.) The Parties recommend that the Public Law Center be the potential *cy pres* recipient of any unclaimed funds. (*Id*.)

### 3. Class Notice

In class actions based on Rule 23(b)(3), class members must be furnished with "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jaquelin*, 417 U.S. 156, 173 (1974). Rule 23(e)(1) further provides that "[t]he Court must direct notice in a reasonable manner to all class members who would be bound by the proposal" and Rule 23(c)(2)(B) sets out the minimum contents of the notice. As Plaintiff's Motion for Preliminary Approval explains in detail, the Settlement Agreement establishes procedures in compliance with both rules. (*See* ECF No. 41.)

Here, the Settlement Administrator established a website and notified the class members via mail and email, executing the notice plan as required under the Agreement. (*See* Tran Decl. ¶¶ 6-14) This notice plan satisfies due process for the settlement because it was designed to notify all putative class members through mail, email, a website, and a toll-free number. *See Ahmed v. HSBC Bank USA*, No. ED CV 15-2057 FMO (SPx), 2019 U.S. Dist. LEXIS 104401, at *41 (C.D. Cal. June 21, 2019) (approving mail and email notice because they sufficiently comply with due process); *Manuel v. Wells Fargo Bank, N.A.*, No. 3:14-cv-238 (DJN), 2016 U.S. Dist. LEXIS 33708, at *13 (E.D. Va. Mar. 15, 2016) (approving notice by direct mail and email, notice on the settlement website, and a toll-free phone number for inquiries); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 492-93 (E.D. Cal. 2006) ("First class mail is ordinarily sufficient to notify class members who have been identified").[3]

---

[3] Rule 23(c)(2) of the Federal Rules of Civil Procedure provides that "individual notice must be sent to all class members whose names and addresses may be ascertained through

7

#### 4. Settlement Administration

To receive monetary compensation for this settlement, Class Members needed to submit a valid claim to the Settlement Administrator. (Agreement §§ 2.2, 4.2.4.) More specifically, a Class Member needed to submit either: (i) an online Claim Form within the Settlement Website; or (ii) by mailing the Claim Form to the Settlement Administrator no later than September 6, 2021. (*Id*. § 7.1.) In the Claim Form, each Class Member needed to certify that (i) they received a call from ECA on the number they provided; (ii) they were the subscriber/user of the cell phone number; and (c) they did not consent to receive such calls. (*Id*. §§ 2.11.5, 7.2.) Only Class Members who submitted valid claims were entitled to any monetary compensation. (*Id*. § 2.4.) And the Settlement Administrator was solely responsible for determining the validity of all Claims. (*Id*. § 2.2; Tran Decl. ¶ 3.)

Through the notices, the Class Members were notified of their right to opt-out or object to the settlement by September 6, 2021. (Tran Decl. ¶¶ 20, 21.) To opt-out, the Class Members needed to mail a personally signed letter by U.S. mail to the Settlement Administrator, stating unequivocally that he/she wished to be excluded from the Settlement. (Agreement § 11.1.) To object, Class members needed to mail their objections to the Settlement Administrator. (*Id*. § 12.) The written objection needed to include: (a) the name, address, and telephone number of the Class Member objecting and, if different, the cell phone number at which the Class Member was called by ECA during the Settlement Class Period; (b) a statement of each objection; (c) if represented by counsel, a written brief detailing the specific reasons, if any, for each objection, including any legal and factual support the objector wished to bring to the Court's attention and any evidence the objector wished to introduce in support of the objection(s); and (d) a statement of whether the Class Member objecting intended to appear at the Final Approval Hearing, either with or without counsel. (*Id*. § 12.2.1.) As

reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (quoting Fed. R. Civ. P. 23(c)(2)).

of the objections/opt-out deadline, only one Class Member opted-out of the Settlement, and no objections were submitted. (Tran Decl. ¶¶ 20, 21; CPT Report.)

### 5. Scope of Release

As explained in the Motion for Preliminary Approval, Plaintiff seeks Court approval of the proposed settlement and a final judgment and order dismissing Plaintiff's claims with prejudice. In exchange for the relief described above, all Class Members—other than those who excluded themselves from the settlement—relinquish all class claims against the Released Parties, including any and all claims relating to the intercepting, monitoring and/or recording of telephone calls or other communications, and any and all claims to the fullest extent that the law permits, as long as they "relate to or arise out of ECA's use of equipment or methods to contact or attempt to contact Settlement Class Members by telephone during the Settlement Class Period." (Agreement § 10.) Class Members also waive the provisions of Section 1542 of the California Civil Code. (*Id*. § 10.3.)

### 6. Termination of Settlement

The Agreement is terminable in the event of various occurrences, including but not limited to the receipt of more than 3,642 requests for exclusion. (*Id*. § 11.4; Supplemental Agreement, Ex. 3 to Kazerounian Decl.)[4]

### 7. Payment of Notice and Administrative Costs

The Agreement provides that all costs of the Notice Program and Claims Program are to be paid out of the Common Fund. (Agreement § 4.2). The total cost for the Settlement Administrator's services will be $99,500 (Tran Decl. ¶ 24.)

### 8. Class Representative's Application for Service Award

The Agreement directed Plaintiff to apply to the Court for a service award of up to $2,500 for his involvement as a class representative in this Action. (Agreement §

---

[4] The Parties entered into a Supplemental Agreement with regard to ECA's right to terminate the Settlement Agreement. As required by the Court, the Supplemental Agreement is filed with this motion.

16.2.) Any service award approved by the Court will eventually be paid by the Settlement Administrator out of the Common Fund before payments to other Class Members are made. (*Id*. §§ 5.3, 6.1-6.7, 7.1-7.6.)

### 9. Class Counsel's Application for Attorneys' Fees and Costs

The Agreement also directs Class Counsel to move the Court for an award of attorneys' fees and costs. (*Id*. § 16.1.) On July 27, 2021, Class Counsel submitted their Motion for Attorneys' Fees, Costs, and Incentive Payments. (ECF No. 47.) Under the Agreement, Plaintiff's counsel was not allowed to request more than 25% of the Common Fund as attorneys' fees and costs combined. (Agreement § 16.1.) As a result, and in compliance with the Agreement, Plaintiff's counsel requested $247,500 in attorneys' fees and costs. (ECF No. 47.) This request, however, did not include the time Plaintiff's counsel spent preparing for this motion and the work that will be required to prepare for the final fairness hearing scheduled for December 6, 2021. (*Id*.)

## IV.  ACTIVITY IN THE CASE AFTER PRELIMINARY APPROVAL

The absence of objections and the lone opt-out indicate that the Class Members understood the terms of the settlement. *See Knap v. Art.com*, 283 F. Supp. 3d 823, 833-34 (N.D. Cal. 2017) ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members. [citation omitted]" (internal quotation marks omitted)); *Ching v. Siemens Industry, Inc.*, No. 11-CV-04838-MEJ, 2014 WL 2926210, at *6 (N.D. Cal. June 27, 2014) ("The participation rate represents a solid approval of the settlement. . . . the fact that some members opted out also indicates that the Class Members read the Notice and understood the settlement . . . ."); *National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("The complete absence of Class member objections to the Proposed Settlement speaks volumes with respect to the overwhelming degree of support for the proposed Settlement among the Class Members. That unanimous, positive reaction to the Proposed Settlement is compelling evidence that the Proposed

Settlement is fair, just, reasonable, and adequate."). As explained above, there were zero objections and only one opt-out by the Class Members (*see* Tran Decl. ¶ 20), which indicates that the Class Members understood the notice, and that the proposed settlement is fair, just, reasonable, and adequate.

**A. CAFA Notice**

In accordance with the Agreement, ECA timely served a CAFA notice package on May 10, 2021. (ECF No. 43.) At the direction of ECA, the CAFA notice package was sent to 53 officials, including the Attorney General of the United States, and the state insurance commissioner of each of the 50 states, the District of Columbia, and Puerto Rico. (*Id*.) There were no objections in response to the CAFA notice, which further demonstrates that the settlement was fair, reasonable, and adequate.

**B. Mail & Email Notices**

The Settlement Administrator complied with the notice procedure set forth in the Agreement. (*See* Tran Decl. ¶¶ 6-12.) ECA provided the Settlement Administrator with a list of 181,604 persons. (*Id*. ¶ 4.) The list included the names, telephone numbers, and either mail or email addresses for those persons contacted by ECA. (*Id*.)

On June 29, 2021, the Settlement Administrator sent 109,248 email notices and 72,356 mail notices. (*Id*. ¶¶ 7, 9.) Of the email notices, 9,975 bounced or were undeliverable, and 6,224 mail notices were returned. (*Id*. ¶¶ 8, 11.) The Settlement Administrator then sent 9,970 mail notices to those whose emails bounced. (*Id*. ¶ 8.) And for the returned mailed notices, the Settlement Administrator obtained new addresses for 6,023 individuals and mailed them the notices, with the U.S. Post Office forwarding 505 notices. (*Id*. ¶ 10.) On August 3, 17, 25, 31 and September 3, 2021, the Settlement Administrator sent reminder email notices to the Class Members who had not yet filed a claim form. (*Id*. ¶¶ 13, 14.) In total, 4,511 notices were undelivered because they were returned a second time or because new addresses could not be found. (*Id*.)

///

## C. Settlement Procedure

Class Members were given 100 days after the Court's Preliminary Approval Order to opt-out or object to the Settlement. (Agreement §§ 2.11.5, 7.2; Tran Decl. ¶¶ 20, 21.) Class Members who submitted valid claims are now eligible to receive their respective pro rata share of the distribution. (Agreement § 4.2.3.)

As explained above, Class Member needed to submit either an online claim form through the settlement website or to mail the claim form with the required information to the Settlement Administrator by September 6, 2021 to participate. (*Id*. § 7.1.) To opt-out, the Class Members needed to mail a personally signed letter by U.S. mail to the Settlement Administrator. (*Id*. § 11.1.) And to object, the Class Members needed to mail their objections to the Settlement Administrator. (*Id*. § 12.) As of the objections/opt-out deadline, only one Class Member opted-out of the settlement, and no objections were submitted. (Tran Decl. ¶¶ 20, 21.)

After receiving approval from the Parties' counsel, the Settlement Administrator will mail to each Class Member who submitted an approved claim a check. (*Id*. ¶ 23; Agreement § 4.2.5.) Class Members will have 180 days to cash the checks, and on the 30th and 90th days following mailing of all checks, the Settlement Administrator may mail or e-mail the Class Members to remind them to cash the checks. (Agreement § 4.2.5.) If a second distribution is feasible and cost efficient, the Settlement Administrator will distribute a second round of checks to the Class Members. (*Id*. § 4.2.6.) And if any funds remain, the Settlement Administrator will make a *cy pres* distribution of unclaimed funds to a nonprofit organization, as approved by the Court, with a total value that equals the amount remaining in the Net Settlement Fund. (*Id*.)

### 1. Opt-Outs and Objections

Class members were permitted to opt-out or to submit an objection. (*Id*. §§ 11.1, 12; Tran Decl. ¶¶ 20, 21.) As of the September 6, 2021 deadline, the Settlement Administrator has received one opt-out request and no objections to the settlement.

(*Id*.) Class Counsel is also unaware of any objections to the settlement from any Attorney General. (Kazerounian Decl. ¶ 23.)

The adequacy of the proposed settlement is supported by the fact that only one person opted out and no objections were filed out of the 181,604 Class Members (with 177,093 delivered notices). *See Knap*, 283 F. Supp. 3d at 834 (approving a class settlement when 452 class members, or .03 percent of the class, opted out and there were only 14 objections); *Ching*, 2014 WL 2926210, at *6 ("[A] total of 68 Class Members have submitted claim forms, 5 have opted out, and none have objected. . . . Class members have claimed [an] equivalent to 74.04% of the total available work weeks. . . . The participation rate represents a solid approval of the settlement.")*; National Rural Telecommunications Cooperative*, 221 F.R.D. at 529 (no opt-outs and no objections demonstrated unanimous support for and adequacy of settlement).

## V. THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE, AND SHOULD THEREFORE BE APPROVED

"Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes." *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008); *see also Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003). Like any other class certification decision, certification of a class for settlement purposes requires a determination that the requirements of Rule 23(a) and at least one of the subsections of Rule 23(b) are met. *Id*.; Fed. Judicial Ctr., Manual for Complex Litigation ("Manual"), § 21.633.

Certification of a settlement class is appropriate here because the Action meets the requirements of Rule 23(a) and Rule 23(b)(3). And as the Court noted in its preliminary approval order, the settlement is potentially fair and adequate. (*See* ECF No. 44, p. 7.)

///

///

## A. <u>The Settlement Satisfies the Rule 23 Requirements</u>

In the Preliminary Approval Motion, Plaintiff analyzed and applied the Fed. R. Civ. P. 23(a) and (b) factors. Accordingly, Plaintiff briefly reiterates and discusses each factor here.

### 1. Numerosity is Satisfied

Class certification under Rule 23(a)(1) is appropriate where a class is so "numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23; *see also Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019 (9th Cir. Cal. 1998). "Impracticability does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class.'" *Harris v. Palm Springs Alpine Estates, Inc*., 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted). The numerosity requirement is generally satisfied when the class is comprised of 40 or more members. *Celano v. Marriott Int'l, Inc*., 242 F.R.D. 544, 549 (N.D. Cal. 2007). In this case, the class is made up of 181,604 persons, 177,093 of which received either a mail or email notice. (Tran Decl. ¶¶ 6-12.) Therefore, this class exceeds the numerosity threshold and meets the first prerequisite of Rule 23 for settlement purposes.

### 2. Commonality is Satisfied

A class has sufficient commonality "if there are questions of fact and law which are common to the class." Fed. R. Civ. P. 23(a)(2); *see also Hanlon*, 150 F.3d at 1019. ("The existence of shared legal issues with divergent legal factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). This means that the class members' claims "must depend on a common contention . . . of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. This requirement is satisfied here.

In this case, common questions of law and fact include: (i) whether ECA placed a telemarketing call (via a ringless voicemail) to the putative class members on their cellular telephones; (ii) whether said calls contained a pre-recorded voice message; and (ii) whether ECA failed to obtain written consent from the putative class members prior to making such calls. (Compl. ¶ 42.) Based upon ECA's alleged conduct, Class Members all seek the same remedies available under the TCPA, and the truth or falsity of these questions will affect all Class Members equally. *See, e.g.*, *Ades v. Omni Hotels Mgmt. Corp.*, No. 2:13-cv-02468, 2014 U.S. Dist. LEXIS 129689, at \*35 (C.D. Cal. Sept. 8, 2014) (finding commonality present and stating, "there is no indication that individual consent issues will overwhelm issues plaintiffs have shown to be resolvable through class-wide proof."). These circumstances indicate that the commonality requirement is satisfied for purposes of certifying the settlement class.[5]

### 3. Typicality is Satisfied

The third prerequisite for class certification is that claims be typical of the class. Fed. R. Civ. P. 23(a)(3). Courts consistently find that the typicality prerequisite is met if the claims arise from a common course of conduct, though "they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014); *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990) (citation omitted), *amended in* 937 F.2d 465 (9th Cir. 1991) (holding that typicality is shown where claims "share common issues of law or fact . . . and are 'sufficiently parallel to insure a vigorous and full presentation of all claims for relief.'").

Here, Plaintiff's claims are typical of the claims of the Class Members because the

---

[5]Almost identical common issues have been certified in several TCPA cases throughout the Ninth Circuit. *See, e.g.*, *Amini, et al. v. Heart Savers, LLC*, 2016 WL 10621698 ( C.D. Cal. Oct. 17, 2016); *Caldera v. American Medical Collection Agency*, 320 F.R.D. 513 (C.D. Cal. 2017); *Makaron v. Enagic USA, Inc.*, 324 F.R.D. 228 (C.D. Cal. 2018); *Stern v. DoCircle, Inc.*, 2014 WL 486262 (C.D. Cal. Jan. 29, 2014); *Abdeljalil v. General Elec. Capital Corp.*, 306 F.R.D. 303, 308-09 (S.D. Cal. 2015).

claims arise from a nearly identical factual basis. As alleged in the Complaint, Plaintiff, like members of the proposed Class, received a pre-recorded voicemail on his cellular telephone number from ECA. (Compl. ¶ 17; Odom Decl. ¶ 3.) Like the other class members, Plaintiff had no prior relationship with ECA. (Odom Decl. ¶ 5.) And ECA did not have written consent from Plaintiff or the putative class to make the calls. (*Id*. ¶ 6.)

Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent Class Members. Plaintiff's claims are therefore typical of the claims of the settlement class. *See Ades*, 2014 U.S. Dist. LEXIS 129689 at *26. And because Plaintiff's claims arise from the same conduct ECA allegedly engaged in, typicality under Rule 23(a)(3) is satisfied.

### 4. Adequate Representation is Satisfied

The final requirement of Rule 23(a) is that the representative Plaintiff will fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a)(4). Adequacy of representation is met when "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To adequately protect the interest of the class, the named plaintiff(s) and their counsel must: (1) not have any conflicts of interest with other class members; and (2) prosecute the action vigorously on behalf of the class. *Id*.; *see also In re Wireless Facilities*, 253 F.R.D. at 611 (quoting *Staton v. Boeing Co*., 327 F.3d 938, 958 (9th Cir. 2003)).

As explained in the Preliminary Approval Motion, Plaintiff and his counsel do not have any known conflicts of interest with other Class Members. (Kazerounian Decl. ¶ 22; Odom Decl. ¶ 13.) Plaintiff and his counsel have been vigorously litigating this matter since its inception. (Kazerounian Decl. ¶ 5; Odom Decl. ¶ 9.) And Plaintiff has actively participated in the case and has continued to cooperate with counsel to vigorously prosecute his claims. (Kazerounian Decl. ¶¶ 19, 20; Odom Decl. ¶¶ 11, 12.) Class Counsel are also experienced in prosecuting consumer actions, especially under

the TCPA. (*See* Kazerounian Decl. ¶¶ 24-32.)[6] And Class Counsel has litigated this case vigorously, including filing the Preliminary Approval Motion, the Fee Petition, and this Motion. Accordingly, Plaintiff and his counsel have and will continue to adequately represent the interests of the Settlement Class.

### 5. Rule 23(b) Requirements are Satisfied

Once the four requirements of Rule 23(a) are met, "[a party] seeking class certification must [also] satisfy . . . at least one of the Requirements of Rule 23(b)." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017) (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011); *see also General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). Rule 23(b)(3) provides that a class may be certified when "questions of law or fact common to class members predominate over any questions affecting only individual members."

The predominance "inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F. 3d at 1022 (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Moreover, "the

---

[6] *See also Silver v. Pa. Higher Educ. Assist. Agency*, 2020 LEXIS 22857, at *21-22 (N.D. Cal. Feb. 7, 2020) ("[Kazerouni Law Group] has experience litigating various consumer related class actions . . . Counsel has also performed well in this action, including succeeding in plaintiff's appeal of this court's prior order granting defendant's motion for summary judgment."); *Morrison v. Clear Mgmt. Sols.*, No. 1:17-cv-51, 2019 U.S. Dist. LEXIS 3070, at *2 (D. Utah Jan. 4, 2019) (FDCPA matter: appointing among class counsel attorneys at Kazerouni Law Group, APC); *McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 171 (S.D. Cal. 2019) (certifying by contested motion class in TCPA class action on behalf of over 2 million class members and appointing Kazerouni Law Group as co-counsel); *Ahmed*, No. ED CV 15-2057 FMO (SPx), 2019 U.S. Dist. LEXIS 104401, at *19 (appointing Kazerouni Law Group, APC as a co-class counsel and approving a large class settlement); *Cotter v. Checkers Drive-In Rests., Inc.*, No. 8:19-cv-01386-VMC-CPT, 2020 U.S. Dist. LEXIS 121223, at *7 (M.D. Fla. June 30, 2020) (Abbas Kazerounian appointed as co-lead class counsel in nationwide data breach settlement); *Kline v. Dymatize Enters., LLC*, 2016 U.S. Dist. LEXIS 142774 (S.D. Cal. Oct. 13, 2016) (appointing Kazerouni Law Group as co-class counsel and noting their "extensive experience in handling consumer class actions and their training in the area of consumer rights litigation."); *Barani v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 49838, at *8 (S.D. Cal. Apr. 9, 2014) ("Mr. Kazerounian has been appointed class counsel in several class actions . . . .").

examination must rest on legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement." *Id*. (internal quotation marks omitted). Certification should not occur if the case's issues require each individual class member's claims to be separately adjudicated. *Id*.

Common issues predominate here because the central inquiry is whether ECA placed telemarketing calls to the Class Members with a pre-recorded voice message without their *written* consent. (*See* Compl. ¶ 42.); *see also Barani*, 2014 WL 1389329, at *4 (holding that predominance requirement was met because "[t]he central inquiry is whether Wells Fargo violated the TCPA by sending text messages to the Class Members."). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. All calls to the Class Members were placed with the same method of placing a ringless voice calls, and ECA did not have consent to place those calls. Therefore, common questions predominate this matter, and so class certification for purposes of this Settlement is appropriate.

**B. <u>The Court Should Approve the Settlement</u>**

"Unlike the settlement of most private civil actions, class actions may be settled only with the approval of the district court." *Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 623 (9th Cir. 1982). "The court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C). The Court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Dukes*, 564 U.S. at 338.

"To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: 'the strength of plaintiffs' case; the

risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.'" *Staton*, 327 F.3d at 959 . "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. The Court must balance against the continuing risks of litigation and the immediacy and certainty of a substantial recovery. *See In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 741 (S.D.N.Y. 1985); *Bellows v. NCO Fin. Sys.*, No. 3:07-cv-01413-W-AJB, 2008 U.S. Dist. LEXIS 103525, at *17 (S.D. Cal. Dec. 2, 2008).

Application of the relevant factors here confirms that the proposed settlement should be approved. This settlement was reached with the assistance of an experienced mediator, Judge Segal (Ret.), which demonstrates a lack of collusion between the parties. Afterall, the Ninth Circuit has long supported settlements reached by capable opponents in arm's-length negotiations. In *Rodriguez v. West Publishing Corp.*, for instance, the Ninth Circuit Court of Appeals expressed the opinion that courts should defer to the "private consensual decision of the [settling] parties." 563 F.3d 948, 965 (9th Cir. 2009) (citing *Hanlon*, 150 F.3d at 1027). A district court must exercise "sound discretion" in approving a settlement. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981). But a presumption of fairness exists where a settlement is reached through arm's-length bargaining. *See In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. at 610; *see also National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004); *In re Chicken Antitrust Litig.*, 560 F. Supp. 957, 962 (N.D. Cal. 1980); Newberg

on Class Actions § 11.51.

Based on the facts of this case, Class Counsel and Plaintiff agree that this Settlement is fair and reasonable because the Settlement will avoid costly and time-consuming litigation and the need for trial, among other things. (Kazerounian Decl. ¶ 12.)

### 1. The Strength of the Lawsuit and the Risks, Expense, Complexity, and Likely Duration of Further Litigation

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Nat'l Rural Telecoms Corp. v. DirectTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted). However, "a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class." *Id.*; *see also Officers for Justice*, 688 F.2d at 625 ("Neither the trial court nor [the appellate court] is to reach any ultimate conclusions on the contested issues of fact and law which underlie merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."). Also considered "is the risk of continued litigation balanced against the certainty and immediacy of recovery from the settlement." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010).

Although liability here highly contested, Plaintiff's counsel has thoroughly investigated the claims and believes this is a strong case which would prevail at trial. (Kazerounian Decl. ¶ 14.) But the outcome of the case is by no means certain, and so the Parties believe the proposed settlement is appropriate. (*Id.* ¶ 15.) It is Class Counsels' opinion that the proposed Settlement of $990,000, is in part due to the strength of Plaintiff's claims. (*Id.* ¶ 16.) Yet ECA denies all of Plaintiff's allegations, maintains that its policies and procedures follow all applicable laws, including obtaining consent. (Agreement § 1.4.) ECA further believes that it has meritorious defenses to all of the claims asserted in the Action. (*Id.*)

Given the parties' legal and factual positions, continued litigation would be protracted, unduly burdensome, and expensive. If the Action were to continue, ECA would undoubtedly continue to vigorously defend the Action. (*See* Agreement § 1.4.) Before settling, ECA wanted to challenge the merits of the Action, contending that a "ringless" dial is analogous to placing a call to a landline, and forwarding it to a cell phone, or a "Google voice" call. *See, e.g.*, *Harper v. Credit Control Services, Inc.*, 863 F. Supp. 2d 125, 126 (D. Mass., 2012) (finding no TCPA claim where a call was forwarded from landline to a cellphone); *Klein v. Commerce Energy, Inc.*, 256 F. Supp. 3d 563, 582 (W.D. Pa. 2017) (no TCPA claim for a Google voice call). ECA also does not believe that its calls were "willful." (*See generally* Def.'s Mot. to Dismiss.) And ECA may establish the defense of consent. (Def.'s Answer, ECF No. 27, at 7:26–8:4.) All of these issues would be highly contested, and although Plaintiff does not believe ECA would prevail, Plaintiff and his counsel understand the risk and burden of continued litigation. (Kazerounian Decl. ¶ 12; Odom Decl. ¶ 8.)

If litigation were to continue, Plaintiff would take a more thorough Rule 30(b)(6) deposition of ECA pertaining to its defenses, a deposition of ECA's vendors, and would likely subpoena agents and brokers from whom ECA believes consent documents could be obtained. Both parties would also need to obtain written discovery from each other. And if ECA were to establish consent for some of the class members, then the class would be narrowed. This settlement, however, avoids the risk and expense to both sides should the Action continue, and it fairly compensates those Class Members who were contacted by ECA. As the Ninth Circuit has made clear, the very essence of a settlement agreement is compromise, "a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation . . . ." *Id.*

Indeed, courts have approved class settlements where class members would have

incurred significant expenses without settlement. *See, e.g., Ebarle v. Lifelock, Inc.*, No. 15-cv-00258-HSG, 2016 U.S. Dist. LEXIS 128279, at *12-13 (N.D. Cal. Sep. 20, 2016) ("Class would incur significant expenses as the case proceeded through anticipated motions . . . . Given Defendant's willingness to defend this action, there would be no guarantee in a favorable result even if the parties were to proceed through protracted litigation."). Other courts have also approved class settlements where plaintiffs were ensured a favorable outcome through settlement in litigation which would have otherwise taken years to complete. *See Rodriguez*, 563 F.3d at 966 (recognizing that risks in litigating weigh favorably in approving class settlement). These factors therefore weigh in favor of approving the settlement.

For these reasons and those detailed in Plaintiff's Preliminary Approval Motion, the risk, expense, and likely duration of further litigation favor approving this settlement.

**2. The Amount Offered in Settlement Is An Excellent Result**

A court compares the amount reached in settlement to the parties' estimates of maximum damages recoverable in a successful litigation when determining whether the amount offered in settlement is fair. *In re Mego Fin. Corp. Sec. Litig.*, 213 F. 3d 454, 459 (9th Cir. 2000). The range of possible recovery must be considered along with the likelihood of success on the merits. Nonetheless, a court should not evaluate the adequacy of settlement "against some theoretically available judgment, but against what Plaintiffs could reasonably expect to recover." *See Fraley v. Facebook, Inc.*, 966 F. Supp. 939, 944 (N.D. Cal. 2013).

The benefits of the Settlement here substantially and clearly outweigh the risks of proceeding with the Action because they include both a monetary compensation and a change in ECA's business practices. (*See* Agreement.) Courts have noted that even though a proposed settlement may only amount to a fraction of the potential recovery, that alone does not mean that the proposed settlement is grossly inadequate and should be disapproved. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

Here, each Class Members will receive a *pro rata* share of the Net Settlement Amount. (Agreement § 4.2.3.) As of the objection/opt-out deadline, the Settlement claims rate was 2.22%, which is in line with other approved TCPA settlements. (Tran Decl. ¶ 22.); *see also Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 U.S. Dist. LEXIS 50416, at \*3 (N.D. Cal. Apr. 15, 2015) (approving the claim rate of 1.9%); *Arthur v. SLM Corp.*, No. C10-0198 JLR, at \*2-3 (W.D. Wash. Aug. 8, 2012) (approving claims rate of approximately 2%).

The estimated payout here is $159, which is an excellent result for the Class Members who submitted valid claims, as (1) the value offered is a compromise of the maximum statutory damages each class member could receive in this matter, which would otherwise be highly contested and require vigorous litigation efforts, and (2) the value offered is substantially better when compared to other similarly approved settlements, most of which estimate a similar or at times even lower recovery.[7] Thus, the settlement here provides for a significant monetary payment that is even higher than other TCPA settlements, without the risks and inherent delays of an adverse jury verdict, trial decision, or potential appeal. And as the Court recognized in its approval order: "the recovery amount is consistent with amounts found to be fair and reasonable." (ECF No. 44, p. 7.) Accordingly, this factor favors approval of the settlement.

///

///

---

[7] *See Jairam v. Colourpop Cosmetics, LLC*, 2020 WL 5848620, at \*6 (S.D. Fla. Oct. 1, 2020) (approving a settlement payout of $11.25 to each class member); *Williams v. Bluestem Brands, Inc.*, 2019 WL 1450090, at \*2 (M.D. Fla. Apr. 2, 2019) (finding awards between $25-$75 to be typical in TCPA cases); *Hartranft v. TVI, Inc.*, No. SACV 15-01081-CJC-DFM, 2019 U.S. Dist. LEXIS 222619, at \*10 (C.D. Cal. Oct. 21, 2019) (approving a TCPA settlement for either $25 in cash *or* a $75 discount at defendant's stores); *Cabiness v. Educ. Fin. Sols., LLC*, No. 16-cv-01109-JST, 2019 U.S. Dist. LEXIS 50817, at \*12 (N.D. Cal. Mar. 26, 2019) (approving a pro rata payout of $33.36); *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 U.S. Dist. LEXIS 50416, at \*3 (N.D. Cal. Apr. 15, 2015) (approving a TCPA settlement with a potential recovery per member of $2.85); *Carrie Couser v. Comenity Bank, et al.*, 12 CV 08484 MMA BGS (approving a $1.11/per a class member payout).

### 3. Class Members Were Provided with the Best Notice Possible, which Afforded Them an Opportunity to Choose Whether to Participate in the Settlement

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to class members the "best notice practicable" under the circumstances. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested Parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Anover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). But Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received." *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

Nevertheless, the notice must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class; (iii) the class claims, issues, or defenses; (iv) that class member may enter an appearance through counsel; (v) that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

Here, the Settlement Administrator sent mail and email notices to 181,604 Class Members with all relevant information. (Tran Decl. ¶¶ 6-12.) Out of those notices, 4,511 were returned as undeliverable. (*Id.* ¶ 10.) Therefore, over 97% of the class received notice of the settlement, which satisfies due process. *See* Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, at p. 3 (2010) (recognizing that a reach of between 70-95% is reasonable); *see also Wilson v. Airborne, Inc.*, No. EDCV 07-770-VAP (OPx), 2008 U.S. Dist. LEXIS 110411, at *13-14 (C.D. Cal. Aug. 13, 2008) (granting final approval of settlement where approximately 80% of the class were notified).

Furthermore, and as demonstrated in the Motion for Preliminary Approval, the form of notice met all Rule 23(e) requirements and instructed Class Members on how

to obtain more detailed information about the Settlement. (Tran Decl. ¶¶ 6-12.) In sum, "[the notices] generally describe[d] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *See Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004). And the class notice was also satisfactory because the content and method of delivery was designed to apprise the Class Members of the settlement terms and of the Class Members' rights over the settlement. *See Mullane*, 339 U.S. at 314; *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 378 (E.D. Pa. 1970). Therefore, proper notice was given to all Class Members.

### 4. The Extent of Discovery Completed and the State of the Proceedings Was Sufficient

"The parties must . . . have engaged in sufficient investigation of the facts to enable the court to intelligently make . . . an appraisal of the settlement." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007). "Absent evidence of fraud or collusion, courts also should accord 'great weight' to the recommendations of counsel." *Medeiros v. HSBC Card Servs.*, No. CV 15-09093 JVS (AFMx), 2017 U.S. Dist. LEXIS 178484, at *10 (C.D. Cal. Oct. 23, 2017) (citing *Nat'l Rural Telecomms.*, 221 F.R.D. at 528).

On April 21, 2020, Plaintiff filed this Action after investigating his claims. (Compl.) After the initial motion practice, this case moved forward, and the Parties engaged in informal discovery to fully understand their respective positions. (Kazerounian Decl. ¶ 6.) During informal discovery, ECA identified the total number of unique cell phone numbers to whom it sent ringless voicemails, including any failed attempts. The Parties then attended a mediation, shared their mediation briefs, and ultimately held a successful mediation in which they were able to discuss settlement while knowing the approximate class size and estimates of class information that ECA maintains in its files (*i.e.*, email addresses, physical addresses, etc.). (*Id.* ¶ 7.) After the full-day mediation, the parties spent several months discussing and negotiating material

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

terms of the Settlement. (*Id.* ¶ 11) ECA also provided a confirmatory declaration post-mediation. (*Id.*) As a result, the investigation and the posture of the case warrant approval of the settlement.

### 5. The Experience and Views of Class Counsel Support Final Approval

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). The presumption of reasonableness in this action is fully warranted because the settlement is the product of arm's-length negotiations conducted by capable, experienced counsel. *See M. Berenson Co. v. Faneuil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987); *Ellis*, 87 F.R.D. at 18 ("[T]hat experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); 2 Newberg on Class Actions § 11.24 (4th Ed. & Supp. 2002); Manual for Complex Lit., Fourth § 30.42.

Plaintiff's counsel are well-qualified and highly experienced in litigating complex consumer class actions. (*See* Kazerounian Decl. ¶¶ 24-32.) Given Class Counsel's extensive experience in litigating similar type cases, they are well-positioned to assess the risks of continued litigation and the benefits of the settlement. Counsel for ECA also have extensive experience based on a long track record in handling complex cases and class actions.[8] ECA's attorneys have vigorously defended ECA throughout this case and during mediation with the Judge Segal. And ECA's counsel have extensively negotiated the terms of the Agreement.

This settlement was negotiated without collusion by experienced and capable Class Counsel who now recommend its approval. (*See Id.* ¶ 12.) Given their experience and expertise, Class Counsel are well-qualified to not only assess the prospects of a case but to also negotiate a favorable resolution for the class. Counsel for each side are

---

[8] https://www.haynesboone.com/people/levenson-andrea;
https://www.haynesboone.com/people/e/erickson-mark (last visited Oct. 20, 2021).

fully aware of the potential benefits of settlement and substantial risks of proceeding with litigation and have determined that a settlement is in the best interest of the Class and the Parties involved. (*Id*.); *see also Vasquez*, 266 F.R.D. at 490 ("Here, class counsel understood the complex risks and benefits of any settlement and concluded that the proposed Settlement was a just, fair, and certain result. This factor weighs in favor of approval.").

### 6. The Reaction of Class Members to the Settlement Was Excellent

The Class Members reaction here was favorable, considering no one objected and only one person opted out. (Tran Decl. ¶¶ 20, 21.) This is an important factor in evaluating the fairness, reasonableness, and adequacy of the settlement. *See Steinfeld v. Discover Fin. Servs.*, 2014 U.S. Dist. LEXIS 44855, at *21 (N.D. Cal. Mar. 31, 2014) (only specific objections or comments from 9 class members, and 239 out of the approximately 8 million class members chose to opt out); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) ("Upon considering the high rate of Class Member claims and the relatively low number of requests for exclusion, the Court finds the reaction of the Class to the Settlement favors approval of the Settlement."); *Stemple v. QC Holdings, Inc*., 2016 U.S. Dist. LEXIS 157207, at *7-8 (S.D. Cal. 2016) (finding the lack of objections supported approval of the TCPA settlement). This factor therefore weighs in favor of approving the settlement.

### C. <u>Attorneys' Fees and Costs</u>

Lastly, the Parties agreed that Plaintiff's Counsel could request up to 25% from the Common Fund in attorneys' fees and costs. (Agreement § 16.1.) As explained thoroughly in Plaintiff's Motion for Attorneys' Fees, Costs, and Incentive Award, Plaintiff's Counsel requested a total of $247,500 as attorneys' fees and costs. Plaintiff's Counsel incurred $7,104.46 in costs alone, and the remaining amount was requested as attorneys' fees. Yet the requested amount does not include the time Class Counsel has spent preparing this motion, nor does it include the time Class Counsel will need to prepare for and travel to the final approval hearing.

Furthermore, the reasonableness of Class Counsel's request is supported by the exceptional results obtained. *See McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (finding that the reasonableness of the fee "is determined primarily by reference to the level of success achieved by the plaintiff"); *see also In re Omnivision Technologies, Inc.*, 559 F.Supp.2d 1036, 1046 (N.D. Cal. 2008) ("The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award"). The Ninth Circuit also stresses the importance of applying a risk multiplier when there is evidence that a case is risky. *See Fischel v. Equit. Life Assurance Soc'y*, 307 F.3d 997, 1008 (9th Cir. 2002) ("It is an abuse of discretion to fail to apply a risk multiplier when . . . there is evidence that the case was risky.") This Action was taken on a contingency basis, and Class Counsel have incurred hundreds of hours in work as well as thousands of dollars in costs without the guarantee of recovery. Additionally, and as extensively discussed in the fee petition, Class Counsel are experienced in consumer class actions. *See e.g., Medeiros v. HSBC Card Servs.*, No. CV 15-09093 JVS (AFMx), 2017 U.S. Dist. LEXIS 178484, at *38-39 (C.D. Cal. Oct. 23, 2017) (noting "that several of the attorneys [at Kazerouni] also have extensive experience in class action litigation."). And, just as importantly, this Court recognized in its order preliminarily approving the settlement that "fees and costs equivalent to twenty-five percent are the 'benchmark award that should be given in common fund cases' within the Ninth Circuit." (ECF No. 44, p. 8.)

Given the foregoing, Class Counsel believe that all factors concerning attorneys' fees and costs weigh in favor of granting Plaintiff's request for attorneys' fees and cost.

## VI.   CONCLUSION

To conclude, Plaintiff respectfully requests that the Court approves the proposed settlement. The Parties reached this settlement following extensive arm's-length negotiations, and the settlement is fair and reasonable to the Class Members who were afforded adequate notice. For these reasons, Plaintiff respectfully requests that the Court: 1) grants this motion; 2) orders payment from the settlement proceeds to Class

28

KAZEROUNI LAW GROUP, APC

Members in compliance with the Court's Preliminary Approval Order and the Settlement Agreement; 3) grants the Motion for Attorneys' Fees, Costs, and Incentive Award; 4) enters the proposed final judgment and order of dismissal with prejudice; and 5) retains jurisdiction throughout the implementation, interpretation, administration and consummation of the settlement.

Dated: October 20, 2021

Respectfully submitted,

KAZEROUNI LAW GROUP, APC

By:   *s/ Abbas Kazerounian*

ABBAS KAZEROUNIAN
ALAN GUDINO

Attorneys for Plaintiff
RYAN ODOM