JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 20-851 JGB (SHKx)** | Date | December 22, 2021 |
|---|---|---|---|
| Title | ***Ryan Odom v. ECA Marketing, Inc.*** | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    Order (1) GRANTING Plaintiff's Motion for Final Approval of Class Action Settlement (Dkt. No. 50); and GRANTING Plaintiff's Motion for Attorney's Fees (Dkt. No. 47)**

Before the Court is Ryan Odom's ("Plaintiff") unopposed motion for final approval of class action settlement ("Motion," Dkt. No. 50) and motion for attorney's fees ("MFA," Dkt. No. 47). The Court held a final approval hearing on December 6, 2021. Upon consideration of the papers filed in support of the Motion, as well as oral argument, the Court GRANTS the Motion and GRANTS the MFA.

## I.    BACKGROUND

On April 21, 2020, Plaintiff filed a class action complaint against Defendant. ("Complaint," Dkt. No. 1.) The Complaint alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, arising from an unwanted ringless call voicemail Plaintiff alleges he and others received. (Id.)

Plaintiff asserts the claim on behalf of the following putative class:

> All persons within the United States who received any call or ringless voicemail from Defendant or its agent/s and/or employee/s to said person's cellular telephone made through the use of any automatic telephone dialing system or

prerecorded voice between April 21, 2016 through and
including April 21, 2020.

(Motion at 5.)  On April 21, 2021, Plaintiff moved for preliminary certification of a class and
preliminary approval of class settlement.  (Dkt. No. 41.)  The Court granted the motion on May
27, 2021.  (Dkt. No. 44.)

On July 27, 2021, Plaintiff filed an unopposed motion for attorneys' fees, costs, and
incentive award, unaccompanied by the requisite final approval motion.  ("MFA," Dkt. No 47.)
In support of the MFA, Plaintiff attached two court orders which approved counsel's requested
fees and a 2018-2019 national survey of consumer attorney billing rates.  (Id. at Ex. 1-3.)

On October 20, 2021, Plaintiff filed the unopposed Motion, and included in support the
following documents:

- Declaration of Abbas Kazerounian, ("Kazerounian Decl.," Dkt. No. 50-1);
- A copy of the Settlement Agreement, ("Settlement," Dkt. No. 50-2)
- A copy of the CPT Report, ("CPT Report," Dkt. No. 50-3);
- A copy of the Supplemental Settlement Agreement regarding requests for exclusion, ("Supplemental Settlement Agreement," Dkt. No. 50-4);
- Declaration of Ryan Odom, ("Odom Decl.," Dkt. No. 50-5);
- Declaration of Katie Tran, ("Tran Decl.," Dkt. No. 50-6);
- A copy of the Website Notice and Electronic Claim Form available to Class Members ("Website," Dkt. No. 50-7);
- A copy of the email notice sent to Class Members, ("Email Notice," Dkt. No. 50-8);
- A copy of the mail notice sent to Class Members, ("Mail Notice," Dkt. No. 50-9); and
- A list of opt-outs from the Class, ("Opt-Out List," Dkt. No. 50-10).

## II.  THE SETTLEMENT AGREEMENT

The parties reached the core of the settlement in November 2020 and negotiated the
terms of the long form settlement in the subsequent months.  ("Settlement," Dkt. No. 50-2, at 1;
MFA at 10.)  The Settlement defines the settlement class ("Class") as follows:

> All persons within the United States who received any call
> or ringless voicemail from Defendant or its agent/s and/or
> employee/s to said person's cellular telephone made
> through the use of any automatic telephone dialing system or
> prerecorded voice during the Settlement Class Period.

(Settlement § 3.3.1; Motion at 5.)  The Settlement defines the Class Period as "April 21, 2016
and shall continue through and including April 21, 2020."  (Settlement § 2.2.34.)

**CIVIL MINUTES—GENERAL**          Initials of Deputy Clerk MG

## A. Settlement Summary

Below is an overview of the financial terms of the Settlement:

- Gross settlement amount:                          $990,000.00
- Attorneys' fees:                                  $240,000.00
- Costs:                                            $7,104.46
- Total service award for class representative:     $2,500.00
- Notice and Claims Administration costs:           $99,500.00

(Motion at 6; Settlement § 4.4.2.)  The $990,000 Gross Settlement Amount is non-reversionary, so no amount will be returned to Defendant.  (Settlement § 4.2)  Any checks issues to participating class members shall remain valid and negotiable for 180 days from the date of issuance.  (Id. § 4.2.5.)  If any amount remains in the Net Settlement Fund after payment of the aforementioned items, and after the 180 day period to cash checks has lapsed, the Settlement Administrator will provide the estimate of conducting a second distribution to Class Members. (Motion at 6; Settlement § 4.2.6.)  If a second distribution is feasible and cost efficient, the Settlement Administrator will distribute a second round of checks to Class Members.  (Id.)  After the second distribution, or if it is not feasible, the Settlement Administrator will make a cy pres distribution of unclaimed funds to the Public Law Center.  (Motion at 7; Settlement § 4.2.6.)

## B. Financial Terms

### 1. Settlement Class Members

The Class consists of 181,604 Class Members, a difference of 520 individuals from the 182,124 individuals Plaintiff identified in the Motion for Preliminary Approval.  (Motion at 5.) Class Members who submitted a valid claim form will receive a pro rata distribution from the Fund.  (Settlement § 4.2.3.)  As of the September 6, 2021 opt-out or objection deadline, 4,029 individuals submitted valid claims, which amounts to 2.22% of the Class Members.  (Motion at 6.)  Class Members will receive a pro rata share of approximately $159.  (Id.)

### 2. Payment and Distribution of Funds

Upon counsel's approval, the Settlement Administrator will mail each Class Member who submitted a valid claim form a check.  (Motion at 12; Settlement § 4.2.5).  Class Members will have 180 days to cash the checks.  (Id.)  On the 30th and 90th day after the checks are mailed, the Settlement Administrator may mail or e-mail the Class Members to remind them to cash the checks.  (Id.)  As noted above, if a second distribution is feasible and cost efficient, the Settlement Administrator will distribute a second round of checks to the Class Members.  (Motion at 12; Settlement § 4.2.6.)  If any funds remain, the Settlement Administrator will make a cy pres distribution of unclaimed funds to the Public Law Center.  (Motion at 12.)

### 3. Class Representative

The Settlement provides for an incentive award of up to $2,500.00 to Plaintiff Ryan Odom for his participation in the litigation. (Motion at 9; Settlement § 16.2.)

### 4. Settlement Administration Costs

The Court appointed CPT as the Settlement administrator. Dkt. No. 44 at 5. The Settlement allocates approximately $100,000.00 to CPT for notice and claim administration. (Motion at 9.) The costs are to be paid out of the settlement common fund. (Id.) CPT mailed notice packets to the class and has kept track of opt-out requests and objections to the Settlement. (Tran Decl. ¶ 3.)

### 5. Attorneys' Fees and Costs

The Settlement provides that Class Counsel may apply for attorneys' fees that amount to 25% of the Gross Settlement Amount, or $247,500, which includes actual litigation costs incurred. (Settlement § 16.1; Motion at 10.) Class Counsel seeks $247,500.00 in attorneys' fees and costs. (MFA at 2.)

## C. Injunctive Relief

The Settlement does not appear to include any injunctive relief.

## D. Release

Under the Settlement, Settlement Class Members who do not request exclusion agree to release Defendant from:

> All class claims against the Released Parties, including any and all claims relating to the intercepting, monitoring and/or recording of telephone calls or other communications, and any and all claims to the fullest extent that the law permits, as long as they "relate to or arise out of ECA's use of equipment or methods to contact or attempt to contact Settlement Class Members by telephone during the Settlement Class Period."

(Settlement § 10.) Class Members also waive the provisions of Section 1542 of the California Civil Code. (Id. § 10.3.)

## E. CAFA Notice

ECA timely served a CAFA notice package on May 10, 2021. (Motion at 11.) The CAFA notice package was sent to 53 officials, including the Attorney General of the United States, and

the state insurance commissioner of all 50 states, the District of Columbia, and Puerto Rico.  (Id.)
There were no objections in response to the CAFA notice.  (Id.)

## F.  Notice

The Settlement Administrator established a website and notified Class Members via mail
and email.  (Id. at 2.)  ECA provided the Settlement Administrator with a list of 181,604
individuals (Class Members.)  (Id. at 11.)  The list included the names, telephone numbers, and
either mail or email addresses of the persons contacted by ECA.  (Id.)

On June 29, 2021, the Settlement Administrator sent 109,248 email notices and 72,356
mail notices.  (Id.)  9,975 email notices bounced or were undeliverable.  (Id.) 6,224 mail notices
were returned.  (Id.)

The Settlement Administrator then sent 9,970 mail notices to those whose emails
bounced.  (Id.)  The Settlement Administrator obtained new addresses for 6,023 individuals
whose mail notices were returned, then mailed the notices to the new addresses.  (Id.)  The U.S.
Post Office forwarded 505 of those notices.  (Id.)

On August 3, 17, 25, 31, and September 3, 2021, the Settlement Administrator sent email
notices to the Class Members who had not yet filed a claim form.  (Id.)  In total, 4,511 notices
were undelivered because they were returned a second time or new addresses could not be found.
(Id.)

To receive compensation for the settlement, Class Members needed to submit a valid
claim to the Settlement Administrator.  (Id. at 8.)  Class members were required to submit either:
(i) an online Claim Form on the Settlement Website; or (ii) mail the Claim Form to the
Settlement Administrator no later than September 6, 2021.  (Id.)  In the Claim Form, each Class
Member had to certify that (i) they received a call from ECA on the number they provided; (ii)
they were the subscriber/user of the cell phone number; and (iii) they did not consent to receive
such calls.  (Id.)  Only Class Members who submitted valid claims were entitled to compensation.
(Id.)  The Settlement Administrator was solely responsible in determination of the Claims'
validity.  (Id.)

Through the notices, Class Members were notified of their right to opt-out or object to
the settlement by September 6, 2021.  (Id.)  To opt-out, the Class Members had to mail a
personally signed letter that stated their wish to be excluded from the Settlement by U.S. mail to
the Settlement Administrator.  (Id.)  To object, Class Members needed to mail their objections to
the Settlement Administrator.  (Id.)  The written objection needed to include: (a) the name,
address, and telephone number of the Class Member objector and, if different, the cell phone
number at which the Class Member was called by ECA during the Settlement Class Period; (b) a
statement of each objection; (c) if represented by counsel, a written brief detailing the specific
reasons, if any, for each objection, including any legal and factual support the objector wished to
bring to the Court's attention and any evidence the objector wished to introduce in support of the

objection(s); and (d) a statement of whether the Class Member objector intended to appear at the Final Approval Hearing, either with or without counsel.  (Id.)

One Class Member opted out of the Settlement and no objections were submitted.  (Id. at 9.)

## G. Administration

CPT serves as the settlement administrator.  (Tran Decl. ¶ 3.)  Settlement administration duties include dissemination of the Class Notice by direct mail and email; creation and maintenance of the Settlement Website; research and maintenance of correct addresses through skip-traces and similar means; receipt and validation of claims and requests for additional information from Class Members if warranted; receipt and validation of opt-out Class Members; distribution of settlement checks to Class Member claimants; disbursement of funds from the Settlement; and report and summary preparation.  (Id.)

The Settlement Administrator has the final authority to resolve disputes concerning the eligibility and amount of settlement payments.  (Settlement § 2.2.)

## III.  LEGAL STANDARD

### A. Class Action Settlement

Class action settlements must be approved by the Court.  See Fed. R. Civ. P. 23(e). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge."  Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  A strong judicial policy favors settlement of class actions.  Id.  Nevertheless, the Court must examine the settlement as a whole for overall fairness.  Cheng Jiangchen v. Rentech, Inc., 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)).  Neither district courts nor appellate courts have the power to delete, modify, or substitute provisions in the negotiated settlement agreement.  Hanlon, 150 F.3d at 1026.  "The settlement must stand or fall in its entirety."  Id.

In order to approve a class action settlement, the Court must conduct a three-step inquiry.  See Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012).  First, it assesses whether the parties have met notice requirements under the Class Action Fairness Act. Id.  Next, it determines whether the notice requirements of Federal Rule of Civil Procedure 23(c)(2)(B) have been satisfied.  Id.  Finally, the Court must find that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(2).  Id. .

### B. Attorneys' Fees

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).

---

The Court has discretion in a common fund case to choose either (1) the lodestar method or (2) the percentage-of-the-fund in the calculation of reasonable attorneys' fees. <u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1047 (9th Cir. 2002).  Whether to use one method over the other is in the court's discretion, however, the use of the percentage method in common fund cases appears to be dominant.  <u>Id.</u>

Under the percentage-of-recovery method, twenty-five percent of a common fund is the benchmark for attorneys' fees awards.  <u>In re Bluetooth</u>, 654 F.3d 935, 942 (9th Cir. 2011) ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.)  Under the lodestar method, a "a lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer."  <u>Id.</u> at 941 (citing <u>Stanton v. Boeing Co.</u>, 327 F.3d 938, 965 (9th Cir. 2003)).  Whether the court awards the benchmark amount or some other rate, the award must be supported "by findings that take into account all of the circumstances of the case."  <u>Vizcaino</u>, 290 F.3d at 1048.  To guard against an unreasonable result, the Ninth Circuit has encouraged district courts to cross-check any calculations done in one method against those of another method.  <u>Id.</u> at 1050-51.

## IV.  DISCUSSION

### A.  Class Action Settlement Final Approval

Defendants provided the CAFA Notice pursuant to 28 U.S.C. § 1715.  The Motion confirms that there have been no objections to the settlement from the state and federal officials who received CAFA notice.  (Motion at 11.)  Thus, the parties have satisfied CAFA notice requirements.

#### 1.  Rule 23(c) Notice Requirements

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2) and, upon settlement of a class action, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  Rule 23(c)(2) requires that "the best notice that is practicable under the circumstances, including individual notice" of particular information.  See Fed. R. Civ. P. 23 (c)(2)(B).

The Court previously approved the form of the proposed class notice.  (Dkt. No. 44.)  As discussed above, the Settlement Administrator implemented the notice procedure.  (<u>See</u> Tran Decl.; CPT Report.)  Based on Ms. Tran's Declaration and the CPT Report, the Court finds that the class notice and notice procedure fairly and adequately informed the Class Members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, the Class Members right to exclude themselves from settlement, and their right to object to the proposed settlement.

### 2.   Whether the Class Settlement is Fair, Adequate, and Reasonable

#### a.   The Strength of Plaintiffs' Case, and Risk, Expense, Complexity, and Duration of Further Litigation

In evaluating the strength of the case, the court should assess "objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach [a settlement]." Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 975 (internal quotation marks omitted). "In assessing the risk, expense, complexity, and likely duration of further litigation, the court evaluates the time and cost required." (Id. at 976.)

Under the circumstances, the Court finds it significant that the class members will receive "immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks omitted). The Court finds that this factor supports a finding that the settlement is fair, adequate, and reasonable.

#### b.   The Risk of Maintaining Class Action Status Through Trial

In its order granting preliminary approval, the Court certified the class pursuant to Rule 23(b)(3). (See Dkt. No. 44 at 4.)  The Court determined that the requirements of Rule 23 have been met in determination of whether to certify the class for settlement purposes. (See id.); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems[.]").  Nothing has been put forth to challenge or otherwise undermine the court's previous order certifying the class for settlement purposes under Rule 23(e). See In re Apollo Grp. Inc. Sec. Litig., 2012 WL 1378677, *4 (D. Ariz. 2012) ("The Court has previously certified, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and hereby reconfirms its order certifying a class.").  This factor weighs in favor of approving the settlement.

#### c.   The Amount Offered in Settlement

The Court previously found this factor supports approval.  (Dkt. No. 44 at 7.) The gross settlement amount is $990,000.00 for a class of under 200,000 members, which is squarely within a normal range for similar cases. See, e.g., Larson v. Harman-Mgmt Corp., 2019 WL 7038399 (E.D. Cal. Dec. 20, 2019) (approving preliminary settlement of $4 million for 13.5 million messages); Wakefield v. Visalus, Inc., 2020 U.S. Dist. LEXIS 146959 (D. Or. Aug. 14, 2020) ($925 million for 1.8 million calls).  At the preliminary approval stage, the anticipated recovery was about $35.00 per Class Member claimant.  (Id. at 5.)  After Class Members have received Notice, the total recovery for each claimant is now over $100.  (Motion at 6.)  Thus, this factor weights in favor of approval.

### d.  The Extent of Discovery Completed and the Stage of Proceedings

On April 21, 2021, Plaintiff filed the action after investigation of his claims.  (Motion at 25.)  After the initial motion practice, the Parties engaged in informal discovery to understand their respective positions.  (Id.)  During that period, ECA identified the total number of cell phone numbers to whom it sent ringless voicemails including any failed attempts.  (Id.)  The parties attended a full day mediation, shared their mediation briefs, and had a successful resolution.  (Id.)  After that, the parties spent several months in negotiation of the material terms of the settlement.  (Id.)

The Court previously determined that this factor was neutral.  (Dkt. No. 44 at 7.)  It remains so.

### e.  The Experience and Views of Counsel

The Court has previously determined that Class Counsel's substantial experience supported approval.  (Id.)  The factor remains unchanged.

### f.  The Reaction of Class Members to the Proposed Settlement

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  Nat'l Rural Telecoms., 221 F.R.D. at 529.  Here, the reaction of the class has been positive.  There was only one request for exclusion and no objections.  (Motion at 27; Tran Decl. ¶¶ 20, 21.)  The lack of objections and single request for exclusion support approval of the settlement.  See, e.g., Franco v. Ruiz Food Prods., Inc., 2012 WL 5941801, at *14 (E.D. Cal. 2012) (factor weighed in favor of approval when two out of 2,055 class members opted out with no objections to the settlement).

## B.  Attorneys' Fees

The Settlement stipulates that class counsel may request attorney's fees (and litigation costs) up to 25% of the total settlement amount.  (Motion at 10; Settlement § 16.1)  The Court finds no reason to depart from the 25% benchmark as requested by class counsel.  As the Court previously noted, the settlement amount is reasonable given the issue of consent.  (Dkt. No. 44 at 7.)  Also as previously discussed, the risks of continued litigation were significant.  (Id.; see Vizcaino, 290 F.3d at 1048 (risk of dismissal or loss on class certification is relevant to evaluation of a requested fee).  Finally, class counsel took this case on a contingent basis.  (MFA at 25.)  The Court finds no issue that would require further inquiry to determine whether a percentage below 25% would be a more appropriate award to counsel.  Consideration of the foregoing factors supports class counsel's request for attorney's fees and costs in the amount of 25% of the settlement fund, or $247,500.  The court is satisfied that a lodestar "cross-check" is not required.  See Craft v. City of San Bernardino, 624 F. Supp. 2d 1113, 1122 (C.D. Cal. 2008) ("A

lodestar cross-check is not required in this circuit, and in some cases is not a useful reference point.")

The Court previously preliminarily approved an incentive award of $2,500 Plaintiff. (Dkt. No. 44 at 8.) Given that there have been no developments to change the Court's decision on this matter, the Court finds that this award is remains appropriate.

## V. CONCLUSION

The Court determines that:

1. Plaintiff's Motion for Final Approval of Class Action Settlement (Dkt. No. 50) is GRANTED.

2. The Court GRANTS final approval to the parties' Settlement Agreement. (Dkt. No. 50-2.) The Court finds that the Settlement Agreement is fair, adequate, and reasonable, appears to be the product of arm's-length and informed negotiations, and treats all members of the class fairly. The parties shall perform their obligations pursuant to the terms of this Settlement Agreement and this Order.

3. Plaintiff's Motion for Attorneys' Fees and Costs (Dkt. No. 47) is GRANTED.

4. The following class is certified under Federal Rule of Civil Procedure 23(c) for settlement purposes:

> All persons within the United States who received any call or ringless voicemail from Defendant or its agent/s and/or employee/s to said person's cellular telephone made through the use of any automatic telephone dialing system or prerecorded voice between April 21, 2016 through and including April 21, 2020.

5. The form, manner, and content of the Class Notice meet the requirements of Federal Rules of Civil Procedure 23(c)(2).

6. Plaintiff Ryan Odom will be paid a service award of $2,500.00 in accordance with the terms of the Settlement Agreement and this Order.

7. Class counsel shall be paid $247,500 in attorneys' fees and costs in accordance with the terms of the Settlement Agreement.

8. The Settlement Administrator, CPT, shall be paid for its litigation costs of $99,500.00 in accordance with the terms of the Settlement Agreement.

9.  All class members who did not validly and timely request exclusion from the Settlement have released their claims, as set forth in the Settlement Agreement, against any of the released parties (as defined in the Settlement Agreement).

10. Except as to any class members who have validly and timely requested exclusion, this action is DISMISSED WITH PREJUDICE, with all parties to bear their own fees and costs except as set forth herein and in the prior orders of this Court.

11. Without affecting the finality of this Order, the Court retains jurisdiction over the parties, including Class Members, for the purposes of construing, enforcing, and administering the Order and Judgment, as well as the Settlement Agreement itself.

12. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

**CIVIL MINUTES—GENERAL**    Initials of Deputy Clerk <u>MG</u>